## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JOSEPH BOSSART, RONNIE E. BARKER, STEVEN M. CHOOKAZIAN, ERIC CZAJKA, PHILLIP MIRENDA, CHRISTA ROCHFORD, DERROL TURNER, and TROY WILLIAMS, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>GENERAL MOTORS LLC, a Delaware limited liability company,<br><br>        Defendant. | Civil Action<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

1

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| I. | **INTRODUCTION** | 4 |
| II. | **JURISDICTION AND VENUE** | 6 |
| III. | **PARTIES** | 7 |
| A. | Florida Plaintiff | 7 |
| B. | Illinois Plaintiff | 8 |
| C. | Michigan Plaintiff | 10 |
| D. | New Jersey Plaintiff | 12 |
| E. | New York Plaintiff | 13 |
| F. | Pennsylvania Plaintiff | 14 |
| G. | South Carolina Plaintiff | 16 |
| H. | Texas Plaintiff | 17 |
| I. | Defendant | 18 |
| IV. | **FACTUAL ALLEGATIONS** | 19 |
| A. | The Defect | 19 |
| B. | GM Had Superior Knowledge of the Defect | 21 |
| C. | GM Had Knowledge of the Defect from Other Sources | 22 |
| D. | GM Has Concealed the Defect and Violated Its Warranty | 52 |
| V. | **TOLLING OF THE STATUE OF LIMITATIONS AND ESTOPPEL** | 54 |
| A. | Discovery Rule Tolling | 54 |
| B. | Estoppel | 55 |
| VI. | **CLASS ALLEGATIONS** | 56 |
| VII. | **VIOLATIONS ALLEGED** | 60 |
| A. | Claims Brought on Behalf of the Nationwide Class | 60 |
| B. | Claims Brought on Behalf of the Florida Subclass | 64 |
| C. | Claims Brought on Behalf of the Illinois Subclass | 71 |
| D. | Claims Brought on Behalf of the Michigan Subclass | 79 |

E.      Claims Brought on Behalf of the New Jersey Subclass ...............................88

F.      Claims Brought on Behalf of the New York Subclass ................................97

G.      Claims Brought on Behalf of the Pennsylvania Subclass .........................103

H.      Claims Brought on Behalf of the South Carolina Subclass.......................112

I.      Claims Brought on Behalf of the Texas Subclass ....................................120

**VIII.  REQUEST FOR RELIEF** ......................................................................129

**IX.    DEMAND FOR JURY TRIAL** ............................................................130

The allegations in this Complaint are based on Plaintiffs' personal knowledge as to Plaintiffs' own conduct and on information and belief as to all other matters based on an investigation by Plaintiffs' Counsel[1]:

## I.   INTRODUCTION

1.     Plaintiffs Joseph Bossart, Ronnie E. Barker, Steven M. Chookazian, Christa Rochford, Derrol Turner, Eric Czajka, Troy Williams, and Phillip Mirenda (collectively "Plaintiffs") bring this class action against Defendant General Motors LLC ("GM" or "Defendant") for manufacturing and selling dangerously defective vehicles and concealing and/or intentionally failing to disclose the defect to Plaintiffs and the public and refusing to properly remedy the significant safety hazard.

2.     Plaintiffs bring their claims individually and on behalf of all persons or entities in the United States who own(ed) or lease(d) a 2015-2019 Chevrolet Corvette Z06 or 2017-2019 Chevrolet Corvette Grand Sport (the "Class Vehicles").

3.     The Class Vehicles contain a significant defect in the tire rims that are standard equipment.  The rims are unreasonably prone to bending and cracking

---

[1] Counsel's investigation includes analysis of publicly available information, including consumer complaints to the National Highway Transportation Safety Administration, Bulletins issued by Defendants, and additional analysis. Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

under ordinary use, which necessitates costly repairs and/or replacement (the "Defect" or the "Defective Wheels").  The bending and cracking can lead to a loss of tire pressure, diminished control and handling of the vehicle, or even a puncture of the tire causing dangerous tire blowouts.

4.      Indeed, in October of 2018, Car and Driver magazine, a leading (if not *the* leading) magazine for auto enthusiasts, published a long-term review of the 2017 Corvette Grand Sport in which it detailed multiple bent rims, and thousands of dollars in repair costs during the 14 months and 40,000 miles driven in the test vehicle that was the subject of the article.[2]

5.      GM concealed and/or knowingly failed to disclose information regarding the Defect from the public, despite knowing about it and its potential to cause serious injury or death, in order to protect GM from suffering an economic loss.  Put another way, GM decided to protect its own profits rather than protect the consumers who had purchased its vehicles with a dangerous defect.

6.      GM sells the Class Vehicles with a 36 month/36,000 mile bumper-to-bumper warranty that is supposed to cover all components but when a Class member presents a Class Vehicle to a GM authorized dealership with the Defect, GM refuses to provide coverage under the warranty.  As a result, Class members

---

[2] *See* Exhibit A, https://www.caranddriver.com/reviews/a23705281/2017-chevrolet-corvette-grand-sport-reliability/. (Last accessed April 28, 2020).

are forced to pay expensive repair and replacement costs.

7.     The Defect does not only constitute a safety issue in the Class Vehicles, but it negatively impacts the intrinsic value of the Class Vehicles themselves.  Indeed, Plaintiffs and Class members would not have purchased or leased their vehicles had GM disclosed the Defect or would have paid substantially less for those vehicles.

8.     As a direct result of Defendant's wrongful conduct, Plaintiffs and Class members have been harmed and have suffered actual damages and an ascertainable loss of money and/or property and/or loss in value.

9.     Plaintiffs bring this action to redress GM's wrongful conduct involving violations of state consumer protection statutes, GM's breaches of implied and express warranties, and its unjust enrichment.

## II.     JURISDICTION AND VENUE

10.     This Court has original diversity jurisdiction, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA") because Plaintiffs and many members of the Class are citizens of states different from Defendant's home state, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there are more than 100 members in the proposed Class and Classes.

11.     This Court has specific personal jurisdiction over GM because it

maintains its headquarters and principal place of business in this district.  Thus, Defendant has purposefully availed itself of the benefits and protections of this jurisdiction by continuously and systematically conducting substantial business in and from this judicial district, directing advertising and marketing activities from within this district, and intentionally and purposefully placing Class Vehicles into the stream of commerce within Michigan and throughout the United States. Numerous class vehicles have been sold within Michigan and many within this judicial district.

12.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because GM transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district.  GM has authorized dealers in this district, has advertised in this district and has received substantial profits from its sales and leases of vehicles in this district.  Therefore, a substantial and material part of the events giving rise to these claims occurred in this district.

## III.  PARTIES

### A.  **Plaintiff Christa Rochford**

13.    Plaintiff Christa Rochford is a citizen of Florida, who resides in Brandon, FL.

14.    On or around April 13, 2019, Plaintiff Rochford purchased a new

2019 Corvette Z06 from Regal Chevrolet, an authorized GM car dealer in Lakeland, Florida.

15.    On or around March 25, 2020, when the vehicle had been driven approximately 5050 miles and thus was well within the 36 month/36,000 mile warranty period, Plaintiff Rochford noticed that three of her rims were bent and one was cracked.  Plaintiff took her vehicle to Stingray Chevrolet in Plant City, Florida and, after the dealership inspected the vehicle, told Plaintiff Rochford that the three bent rims would need repair and the fourth rim which was cracked would need to be replaced.  GM refused to cover the rim repairs or replacement under the Class Vehicle's warranty.

16.    Plaintiff Rochford has paid approximately $1,500.00 to fix the bent and cracked rims on her Class Vehicle. At all times Plaintiff Rochford has driven her Class Vehicle in a foreseeable manner and consistent with the manner in which it was intended to be driven.

17.    When making the decision to purchase her Class Vehicle, Plaintiff Rochford relied on GM's representations that it was a safe and reliable vehicle and was covered by a 36 month/36,000 mile bumper-to-bumper warranty.

18.    Plaintiff would not have purchased the vehicle if she was aware of the defect in the vehicle's rims that would not be covered under warranty, or would not have been willing to pay as much for the vehicle.

> **B.** **Plaintiff Phillip Mirenda**

19.     Plaintiff Phillip Mirenda is a citizen of Illinois, who resides in Home Glen, IL.

20.     On or around August 9, 2016, Plaintiff Mirenda purchased a new 2017 Corvette Grand Sport from Castle Chevrolet, an authorized GM car dealer in Villa Park, Illinois.

21.     In or around early spring 2018, Plaintiff Mirenda noticed that the Class Vehicle was vibrating. Plaintiff Mirenda initially took the Class Vehicle to Discount Tire in Homer Glen, Illinois. At that time, it was determined that a rear rim was bent, and the rim was repaired. Subsequently, Plaintiff Mirenda experienced continued vibration and determined that three of the rims (two front and one rear) were bent and the fourth (rear) was now cracked. Plaintiff then purchased two OEM wheels to replace two of the bent wheels. After continued vibration problems, Plaintiff ultimately purchased four after-market wheels and placed the original four other wheels in his garage. Thereafter, on June 4, 2019, Plaintiff Mirenda took the four wheels to Apple Chevrolet in Oreland Park, to seek cost assistance from GM for the defects in the wheels, but GM denied the claim and refused to cover the rim replacement under the vehicle's warranty.

22.     Overall, Plaintiff Mirenda has paid approximately $5,000 to fix

and/or replace the cracked and bent rim(s) on his Class Vehicle.

23.     At all times Plaintiff Mirenda has driven his Class Vehicle in a foreseeable manner and consistent with the manner in which it was intended to be driven.

24.     When making the decision to purchase his Class Vehicle, Plaintiff Mirenda relied on GM's representations that it was a safe and reliable vehicle and was covered by a 36 month/36,000 mile bumper-to-bumper warranty. Plaintiff would not have purchased the vehicle if he was aware of the defect in the vehicle's rims that would not be covered under warranty, or would not have been willing to pay as much for the vehicle.

### C.     Plaintiff Eric Czajka

25.     Plaintiff Eric Czajka is a citizen of Michigan, who resides in Riverview, MI.

26.     On or around May 7, 2018, Plaintiff Czajka purchased a certified pre-owned 2017 Corvette Z06 with approximately 11,581 miles on it from Jeff Schmitt Chevrolet East, an authorized GM car dealer in Dayton, OH.

27.     On or around December 9, 2019, when the vehicle had approximately 23,000 miles on it, Plaintiff Czajka noticed that the rear driver's side tire was losing air and the vehicle had a vibration coming from the rear driver's side. Plaintiff Czajka took his vehicle to Belle Tire in Woodhaven, MI

and, after the tire center investigated the cause, Plaintiff Czajka was informed that the issue was caused by the fact that the driver's side rear rim was cracked and would need to be replaced. Plaintiff then contacted Dick Genthe Chevrolet, an authorized GM car dealer located in Southgate, MI, who informed Plaintiff Czajka that the cracked wheel is not covered by the manufacturer's warranty. GM refused to cover the rim replacement under the vehicle's warranty.

28.   After replacement of the rear driver's side rim, Plaintiff Czajka's Class Vehicle continues to lose air pressure in the recently replaced driver's side rear rim, despite no punctures or imperfections in the driver's side rear tire.

29.   Plaintiff Czajka paid a $184.92 deductible as part of a third-party wheel and tire protection policy he had previously obtained to fix the cracked rim on his Class Vehicle.

30.   At all times Plaintiff Czajka has driven his Class Vehicle in a foreseeable manner and consistent with the manner in which it was intended to be driven.

31.   When making the decision to purchase his Class Vehicle, Plaintiff Czajka relied on GM's representations that it was a safe and reliable vehicle and was covered by a 36 month/36,000 mile bumper-to-bumper warranty. Plaintiff would not have purchased the vehicle if he was aware of the defect in

the vehicle's rims that would not be covered under warranty, or would not have been willing to pay as much for the vehicle

### D.   **Plaintiff Steven M. Chookazian**

32.   Plaintiff Steven M. Chookazian is a citizen of New Jersey, who resides in Ramsey, NJ.

33.   On or around July 18, 2018, Plaintiff Chookazian purchased a certified pre-owned 2017 Corvette Grand Sport with approximately 3,700 miles from David McDermott Chevrolet, an authorized GM car dealer in East Haven, CT.

34.   Beginning in or around February 2020 through March 2020, when the vehicle had approximately 14,000 miles on it, Plaintiff Chookazian noticed that he was having low tire pressure. On March 13, 2020, Plaintiff Chookazian took the Class Vehicle to Economy Tire in Jupiter, Florida where he was advised that his right rear tire was cracked and was not repairable.   Plaintiff then took his vehicle to Wallace Chevrolet in Stuart Florida and, after the dealership investigated the cause, was informed that the issue was caused by the fact that the rear rim was cracked and would need to be replaced.  Although the vehicle was within the warranty period, GM refused to cover the rim replacement under the vehicle's warranty.

35.   On March 26, 2020, Plaintiff Chookazian paid approximately

$1,000.00 to have the cracked rim replaced on his Class Vehicle at Wallace Chevrolet.

36.    At all times Plaintiff Chookazian has driven his Class Vehicle in a foreseeable manner and consistent with the manner in which it was intended to be driven.

37.    When making the decision to purchase his Class Vehicle, Plaintiff Chookazian relied on GM's representations that it was a safe and reliable vehicle and was covered by a 36 month/36,000 mile bumper-to-bumper warranty. Plaintiff would not have purchased the vehicle if he was aware of the defect in the vehicle's rims that would not be covered under warranty, or would not have been willing to pay as much for the vehicle.

**E.    <u>Plaintiff Troy Williams</u>**

38.    Plaintiff Troy Williams is a citizen of New York, who resides in Bronxville, NY.

39.    On or around May 16, 2017, Plaintiff Williams purchased a new 2017 Corvette Z06 from Curry Chevrolet, an authorized GM car dealer in Scarsdale, NY.

40.    On or around October 27, 2019, when the vehicle had approximately 5,000 miles on it, Plaintiff Williams noticed that air was leaking from the tire and the rim was cracked when he went to a flat fix to change the

tire. Plaintiff thereafter took his vehicle to Curry Chevrolet to have the rim replaced and, GM refused to cover the rim replacement under the vehicle's warranty.

41.     At this time, Plaintiff Williams has not been able to have the cracked rim replaced because Curry Chevrolet has no rims available. As a result, Plaintiff Williams has not been able to drive his vehicle for the last few months.

42.     At all times Plaintiff Williams has driven his Class Vehicle in a foreseeable manner and consistent with the manner in which it was intended to be driven.

43.     When making the decision to purchase his Class Vehicle, Plaintiff Williams relied on GM's representations that it was a safe and reliable vehicle and was covered by a 36 month/36,000 mile bumper-to-bumper warranty. Plaintiff would not have purchased the vehicle if he was aware of the defect in the vehicle's rims that would not be covered under warranty, or would not have been willing to pay as much for the vehicle..

   **F.     Plaintiff Joseph Bossart**

44.     Plaintiff Joseph Bossart is a citizen of Pennsylvania, who resides in Erie, PA.

45.     On or around January 29, 2018, Plaintiff Bossart purchased a new

2018 Corvette Grand Sport through MacMulkin Chevrolet, an authorized GM car dealer located in Nashua, NH. The car was delivered to Pennsylvania for pickup by Plaintiff at McQuillen Chevrolet dealership in Girard, PA.

46.     On or around August 22, 2019, when the vehicle had approximately 3,100 miles on it, Plaintiff Bossart noticed a vibration in the steering wheel and dashboard. Plaintiff took his vehicle to McQuillen on August 29, 2019 to investigate the vibration issue and, after the dealership investigated the cause, was informed that the issue was caused by the fact that three of Plaintiff Bossart's rims were bent (the front two and the right rear) and would need repair.  GM refused to cover the rim repair under the vehicle's warranty.

47.     Plaintiff Bossart paid approximately $450.00 to Alloy Wheel Repair located in Berea, Ohio to fix the bent rims on his Class Vehicle.

48.     At all times, Plaintiff Bossart has driven his Class Vehicle in a foreseeable manner and consistent with the manner in which it was intended to be driven.

49.     When making the decision to purchase his Class Vehicle, Plaintiff Bossart relied on GM's representations that it was a safe and reliable vehicle and was covered by a 36 month/36,000 mile bumper-to-bumper warranty. Plaintiff Bossart would not have purchased the vehicle if he was aware of the

defect in the vehicle's rims that would not be covered under warranty, or would not have been willing to pay as much for the vehicle

### G. **Plaintiff Derrol Turner**

50.     Plaintiff Derrol Turner is a citizen of South Carolina, who resides in Goose Creek, SC.

51.     On or around September 2016, Plaintiff Turner purchased a new 2017 Corvette Grand Sport from Crews Chevrolet, an authorized GM car dealer in North Charleston, SC.

52.     On or around January 25, 2020, when the vehicle had approximately 14,436 miles on it, Plaintiff Turner noticed that air was leaking from the tire.  Plaintiff took his vehicle to Crews Chevrolet and, after the dealership investigated the cause, was informed that the issue was caused by the fact that the rear passenger rim was cracked and would need to be replaced.  GM refused to cover the rim replacement under the vehicle's warranty.

53.     Plaintiff Turner has paid approximately $826.00 to fix the cracked rim on his Class Vehicle.

54.     At all times Plaintiff Turner has driven his Class Vehicle in a foreseeable manner and consistent with the manner in which it was intended to be driven.

55.     When making the decision to purchase his Class Vehicle, Plaintiff Turner relied on GM's representations that it was a safe and reliable vehicle and was covered by a 36 month/36,000 mile bumper-to-bumper warranty. Plaintiff would not have purchased the vehicle if he was aware of the defect in the vehicle's rims that would not be covered under warranty, or would not have been willing to pay as much for the vehicle

**H.     Plaintiff Ronnie E. Barker**

56.     Plaintiff Ronnie E. Barker is a citizen of Texas, who resides in Plano, TX.

57.     On or around January 12, 2016, Plaintiff Barker purchased a certified pre-owned 2015 Corvette Z06 with approximately 4,600 miles from Chuck Fairbanks Chevrolet in Desota, Texas.

58.     On or around November 8, 2018, Plaintiff Barker noticed that his tire was leaking air. Plaintiff took his vehicle to Richardson Chevrolet in Richardson, Texas and, after the dealership investigated the cause, was informed that the issue was caused by the fact that the rim was cracked and would need to be replaced.  GM refused to cover the rim replacement under the vehicle's warranty.

59.     Plaintiff Barker ultimately took the Class Vehicle to Wheel Technologies in Dallas, Texas to have the cracked rim replaced.

60.   Plaintiff Barker paid approximately $584.00 to have the cracked rim on his Class Vehicle replaced.

61.   At all times Plaintiff Barker has driven his Class Vehicle in a foreseeable manner and consistent with the manner in which it was intended to be driven.

62.   When making the decision to purchase his Class Vehicle, Plaintiff Barker relied on GM's representations that it was a safe and reliable vehicle and was covered by a 36 month/36,000 mile bumper-to-bumper warranty. Plaintiff would not have purchased the vehicle if he was aware of the defect in the vehicle's rims that would not be covered under warranty, or would not have been willing to pay as much for the vehicle.

## I.   **Defendant**

63.   Defendant General Motors LLC is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan.  The sole member and owner of General Motors LLC is General Motors Holdings LLC, which is a Delaware limited liability company with its principal place of business in Detroit, Michigan.  General Motors Holdings LLC's only member is General Motor Company, a Delaware corporation with its principal place of business in Detroit, Michigan.  General Motors Company has a 100% ownership interest in General Motors Holdings LLC.

64.     General Motors LLC, though various entities, designs, manufactures, markets, distributes, services, repairs, sells and leases vehicles, including the Class Vehicles, both nationwide.  General Motors LLC is the warrantor and distributor of all Class Vehicles in the United States.

## IV.    FACTUAL ALLEGATIONS

### A.    The Defect

65.     GM equipped all of the Class Vehicles with aluminum alloy rims. A representative rim is pictured below:



66.     These factory-installed rims are defective and unreasonably prone to bending and cracking during normal use, which makes them particularly ill-suited for a high performance sports car.

67.     Upon information and belief, GM has notice that the failure rate of the wheels on the Class Vehicles far exceeds that of other vehicles.  Due to a defect in material, workmanship and/or design, the wheels cannot withstand normal and

foreseeable use without failure.

68.     When the rims bend, Class Vehicle owners experience vibrations in the vehicles at high speeds, have diminished handling and control of the vehicles, and also are likely to experience air leakage from their tires.  In addition, the rims can fracture leading to a catastrophic tire blowout.

69.     Some of the pitfalls of owing a Class Vehicle were summarized by Car and Driver magazine, which conducted a long-term test drive of a 2017 Corvette Grand Sport.  In a long-term test drive, writers and/or editors of Car and Driver magazine drive a vehicle for a longer term than normal and report their findings.

70.     In the October 2018 article detailing the magazine's experience with its 2017 Corvette Grand Sport, there is a section entitled "Wheel Woes."  The article notes:

> Shortly after its first trip to the test track, however, the Grand Sport showed signs of an ailment that would dog us throughout our time with the car. At just under 6500 miles we discovered that three of its wheels were bent. Two were repaired, but one was cracked and had to be replaced. In all, that was an $1119 trip to the Corvette cobbler, none of which was covered by warranty.[3]

71.     The article goes on to describe a series of rim repairs and replacements the magazine experienced during its 40,000 mile test drive,

---

[3] Ex. A.

concluding with this summary: "In all, we spent $4098 on wheel repair and replacement—seven repairs and three replacements, for an average failure rate of once every 4000 miles."[4]

72.     In addition to causing substantial unexpected expenses for the Class Vehicle owners, the Defect presents a serious safety hazard as well.  Cracked or bent rims can cause the tire mounted on them to fail and possibly explode while the vehicle is in motion, which causes a sudden loss of control at high speed.  Even without such a catastrophic failure, though, the vibrations and shudders caused by a bent or cracked rim negatively impact the vehicle's handling and stability and, additionally, can distract the driver.  This is particularly dangerous in a high performance sports car.

### B.     GM Had Superior and Exclusive Knowledge of the Defect

73.     GM had superior and exclusive knowledge of the Defect due to the fact the GM designed and extensively tested the Class Vehicles prior to and after their release for sale to the general public.

74.     Like all major car manufacturers, GM conducts extensive pre-release testing of its vehicles, which subjects all key vehicle components, including the wheels, to testing designed to ensure that the vehicle, and its various components, are free from defect and suitable for the purpose for which they will be marketed

---

[4] *Id.*

and sold.

75.     As a result, GM knew, or should have known, about the Defect due to the testing described above as well as early consumer complaints about the Defect to its network of dealerships and to GM, and the high failure rates for rims on the Class Vehicles and replacement part sales data.

76.     In addition, GM should have learned about the Defect from complaints to its network of dealerships and complaints to GM itself.   GM's customer relations department collects and analyzes complaint data including repair requests, technical reports from engineers relating to warranty claims, replacement part data, and other sources.

## C.     GM Had Knowledge of the Defect from Other Sources

77.     A vital source of information regarding automobile defects, both for the consuming public and manufacturers, is the National Highway Traffic Safety Administration ("NHTSA").  NHTSA maintains a Consumer Complaint Database that stores complaints submitted to NHTSA since 2000 regarding virtually every make and model of vehicle sold in the United States.

78.     Federal laws require car manufacturers, like GM to be in close contact with NHTSA regarding potential defects in their vehicles, including a legal requirement that manufacturers disclose defects, customer complaints and other data to NHTSA.   Car manufacturers routinely monitor NHTSA databases for

customer complaints as part of their ongoing, statutory obligation to identify potential defects in their vehicles.

79.    The complaints on the NHTSA website (examples of which are below) demonstrate that GM was made aware of the issue immediately and that GM failed to accept responsibility for the defect when customers complained.

80.    The following representative complaints were submitted to NHTSA regarding the Defect in the Class Vehicles:[5]

July 14, 2019 **NHTSA ID NUMBER: 11231824**
**Components: WHEELS**
**NHTSA ID Number:** 11231824

**Incident Date** July 11, 2019

**Consumer Location** BARTLETT, TN

**Vehicle Identification Number** 1G1YT2D68F5****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**
EXPERIENCED THE EXACT SAME WEIRD CRACKED WHEEL THAT MANY OTHER C7 OWNERS HAVE EXPERIENCED ON 7/11/19. NO SPECIFIC POTHOLE. JUST CRACKED WHEEL WHICH LOOKS LIKE ALL THE OTHERS ON THE CORVETTE FORUM.

**1 Affected Product**
**Vehicle**

---

[5] The following are reproduced verbatim and any typographical or syntax errors occur in the original and are reproduced without correction.

| MAKE | MODEL | YEAR |
|------|-------|------|
| CHEVROLET | CORVETTE | 2015 |

January 10, 2019 **NHTSA ID NUMBER: 11166176**
**Components: WHEELS**

**NHTSA ID Number:** 11166176

**Incident Date** January 8, 2018

**Consumer Location** BAY POINT, CA

**Vehicle Identification Number** 1G1YT2D6XF5****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**
BOTH OF MY OEM REAR WHEELS (SPECTRA GRAY - 10 SPOKE), HAVE DEVELOPED CRACKS REQUIRING REPLACEMENT AT MY EXPENSE. DESPITE MY CORVETTE BEING ON WARRANTY AND A HIGH PERFORMANCE, SPORTS CAR WHICH IS REGULARLY SERVICED, THE CHEVROLET DEALERSHIP REFUSES TO REPLACE THESE WHEELS, EXCEPT AT MY EXPENSE, CITING THAT POOR ROAD CONDITIONS IN CALIFORNIA ARE BLAME FOR THE FRACTURES, RUNNING HORIZONTALLY ON THE RIM LIP. THE FRACTURES CREATE A VERY DANGEROUS SITUATION GIVEN HIGH TORQUE LEVELS, LOW PROFILE TIRES WITH A WIDE STANCE. THE TIRES AND THE SUSPENSION ARE DESIGNED FOR HIGH PERFORMANCE, AND HIGH G FORCE, BUT WHEELS ARE APPARENTLY FLAWED FOR THE DESIGNED TOLERANCES IMPOSED BY DRIVING A HIGH PERFORMANCE CORVETTE. MY CAR RAPIDLY LOSS AIR PRESSURE AT FREEWAY SPEEDS AND THE AIR

PRESSURE WARNING LIGHT ACTIVATED IN BOTH OCCASIONS, WARNING OF THE HAZARDOUS CONDITION.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| CHEVROLET | CORVETTE | 2015 |

September 26, 2018 **NHTSA ID NUMBER: 11131647**
**Components: WHEELS**
**NHTSA ID Number:** 11131647

**Incident Date** September 14, 2018

**Consumer Location** TULSA, OK

**Vehicle Identification Number** 1G1YT2D62F5****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**
WHEN I TOOK THE CAR INTO A DISCOUNT TIRE STORE TO HAVE NEW TIRES PUT ON THE BACK AT ABOUT 15,600 MILES ON THE CAR CRACKS WERE FOUND ON THE INSIDE RIM WHERE TIRE BEAD SEALS OF BOTH BACK WHEELS. PROBLEM WAS IMMEDIATELY REPORTED TO DEALER WHO VERIFIED CRACKS, BUT DEALER AND GM REFUSED TO REPLACE UNLESS I PURCHASE NEW WHEELS FOR DISCOUNTED PRICE OF $1,100.00 FOR REAR WHEELS ONLY. SPOKE WITH REPRESENTATIVES OF GM ENGINEERING AND FOUND PROBLEM IS A KNOWN ISSUE WITH REAR WHEEL CRACKING GOING BACK SEVERAL YEARS WITH CAST CHINA MADE WHEELS ON

CORVETTE Z06 AND ZR1 MODELS. I WAS TOLD GM CORVETTE CHIEF ENGINEER HAS POSTED INFORMATION ON THE WHEEL CRACKING PROBLEM ON CORVETTE FORUM AND ONLY WAY TO NOT HAVE WHEEL CRACKING PROBLEM ON REPLACEMENT WHEELS WOULD BE TO NOT DRIVE ON ROADS WITH BUMPS OR POT HOLES. THEY AGREED THIS WAS NOT REALISTIC BUT GM STANDS FIRM ON PAYMENT FOR NEW WHEELS WITH NO ASSURANCE THIS WILL SOLVE THE PROBLEM. MY COMPLAINT WAS CLOSED AT GM AS CUSTOMER DECLINED REDUCED PRICE OFFER AND IS DISSATISFIED. CRACKING WHEELS SHOULD BE A MAJOR SAFETY CONCERN AND ESPECIALLY WITH CARS THAT HAVE THIS MUCH POWER TO THE WHEELS AND ARE CAPABLE OF THE SPEEDS THESE MODEL CARS CAN OBTAIN. THIS IS TOTALLY IRRESPONSIBLE OF GM TO ALLOW THIS TO HAPPEN AND NOT RECALL THE WHEELS AND REPLACE THEM WITH ONES THAT DO NOT CRACK, ESPECIALLY ON CARS WITH SUCH LOW MILEAGE.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| CHEVROLET | CORVETTE | 2015 |

February 7, 2020 **NHTSA ID NUMBER: 11307795**
**Components: WHEELS**
**NHTSA ID Number:** 11307795

**Incident Date** January 20, 2020

**Consumer Location** SACRAMENTO, CA

**Vehicle Identification Number** 1G1YU2D61G5****

**Summary of Complaint**

**CRASH** No

**FIRENo**

**INJURIES0**

**DEATHS0**

WHEEL, MADE OF ALUMINUM, DEVELOPED A CRACK ON THE INSIDE OF THE RIGHT REAR TIRE, WITHOUT MY NOTICING ANY REASON. ONE DAY I JUST NOTICED THAT THERE WAS A SLOW LEAD IN THE RIGHT REAR. AMERICA'S TIRE WOULDN'T REPAIR THE LEAK AND SAID I HAD TO BUY NEW TIRES. I DID AND THE NEXT DAY THE RIGHT REAR WAS FLAT AGAIN. I TOOK IT BACK TO AMERICA'S TIRE AND THEY FOUND THE CRACK IN THE RIM. THE CAR HAD LESS THAN 26,500 MILES ON IT AT THE TIME. THE CHEVY DEALER TOOK PICTURES TO VERIFY FOR GM THAT THERE WERE NO SIGNS OF THE CAR BEING RACED OR ABUSED, BUT GM DECLINED TO REPLACE THE RIM SAYING IT WASN'T DEFECTIVE. THE CHEVY DEALER ULTIMATELY SOLD ME A NEW RIM ($1,000 ON MY CAR) AND CHARGED ME $50 EXTRA FOR A CORE CHARGE AS I WANTED TO KEEP THE CRACKED RIM SO I CAN SHOW ANYONE WHO WANTS TO SEE IT THAT THERE ISN'T ANY IMPACT MARKS ON THE MEDAL IN THE AREA OF THE CRACK, I.E., THE RIM JUST CRACKED. MY CAR IS A VERY EXPENSIVE LIMITED EDITION CAR WITH VERY BIG RIMS. I AM ATTACHING PICTURES OF THE CRACK, ONE WITH THE TIRE MOUNTED AND LEAKING AIR AND TWO WITH VIEWS OF THE CRACK ONCE THE TIRE WAS REMOVED.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| CHEVROLET | CORVETTE | 2016 |

October 16, 2019 **NHTSA ID NUMBER: 11268869**
**Components: WHEELS**
**NHTSA ID Number:** 11268869

**Incident Date** October 15, 2019

**Consumer Location** EL DORADO HILLS, CA

**Vehicle Identification Number** 1G1YU3D66G5****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**
I NOTICED A VIBRATION THAT WOULD START AT ABOUT 55 MPH. I TOOK THE CAR IN TO AMERICA'S TIRE TO HAVE THE WHEELS BALANCED AND FOUND OUT THAT ALL FOUR WHEELS WERE BENT. THE CAR HAS NEVER BEEN RACED AND HAS BEEN DRIVEN IN A NORMAL MATTER. I HAVE HIT SOME MINOR POTHOLES BUT NOTHING OF ANY CONSEQUENCE.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| CHEVROLET | CORVETTE | 2016 |

October 5, 2019 **NHTSA ID NUMBER: 11266530**
**Components: WHEELS**
**NHTSA ID Number:** 11266530

**Incident Date** October 4, 2019

**Consumer Location** CINCINNATI, OH

**Vehicle Identification Number** 1G1YT2D60G5****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**

AS HAS BEEN CITED BY MANY OWNERS OF THE 7TH GENERATION CORVETTE, I EXPERIENCED 2 BENT WHEELS IN FEBRUARY OF 2018 WHEN CAR WAS NOTICED TO HAVE HARSH VIBRATION WHILE DRIVING. IN OCTOBER 2019 TIRE PRESSURE WOULD NOT HOLD AND WHEEL WAS FOUND TO BE CRACKED. THIS CAR IS DRIVEN OCCASIONALLY AND IS NOT AUTOCROSSED OR DRIVEN ON A TRACK. CAR HAS ONLY 15,600 MILES.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| CHEVROLET | CORVETTE | 2016 |

February 25, 2020 **NHTSA ID NUMBER: 11311522 Components: WHEELS**

**NHTSA ID Number:** 11311522

**Incident Date** February 9, 2020

**Consumer Location** ABILENE, TX

**Vehicle Identification Number** 1G1YY2D72H5****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**

JUST STARTED TO NOTICED A SLIGHT LEAK FROM THE DRIVER SIDE REAR TIRE OVER A FEW DAYS, THE LEAK PROGRESSIVELY GOT WORSE. I DECIDED TO GO GET IT TAKEN CARE OF. DISCOUNT TIRE COULDN'T FIND AN ISSUE WITH THE TIRES. THEN WHILE WORKING ON THE TIRE THEY NOTICED SEVERAL STRESS FRACTURES ON THE INSIDE OF THE WHEEL. IT ENDED UP BEING ON BOTH REAR TIRES AND A WHEEL IN THE FRONT HAD DAMAGE AS WELL. TRIED TO GO THROUGH THE DEALERSHIP TO GET IT FIXED SINCE THE CAR HAS BUMBER TO BUMBER WARRANTY AND THEY TOLD ME IT WAS FROM POTHOLES AND THEY COULDN'T COVER THE DAMAGE. THE CAR WAS BOTH STATIONARY AND IN MOTION WHEN I NOTICED THE LEAKING. THE VEHICLE HAS ONLY BEEN DRIVEN ON PATHED ROADS.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| CHEVROLET | CORVETTE | 2017 |

February 18, 2020 **NHTSA ID NUMBER: 11309997**
**Components: WHEELS**
**NHTSA ID Number:** 11309997

**Incident Date** November 29, 2019

**Consumer Location** AUSTIN, TX

**Vehicle Identification Number** 1G1YR2D68H5****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

WHILE GETTING NEW TIRES (15K MILES) AT THE TIRE STORE ON MY CORVETTE Z06 THE MANAGER TOLD ME THAT I HAD A BENT FRONT WHEEL. I DIDN'T RECALL HITTING ANYTHING SIGNIFICANT THAT COULD HAVE CAUSED THIS. HE STATED THAT HE COULD BALANCE IT BUT COULDN'T BE SURE IT WOULDN'T HAVE ISSUES. I BEGAN TO NOTICE A TIRE NOISE THAT WAS COMING FROM THAT SAME WHEEL. I MADE SOME MEASUREMENTS (RADIAL RUN-OUT) AND REALIZED IT WAS QUITE BENT (.057IN RUN-OUT). IT IS COMMON KNOWLEDGE BASED THAT GM REFUSES TO ADMIT THAT THEY HAVE A DESIGN FLAW SO I DECIDED TO BUY SOME AFTERMARKET WHEELS AS I DIDN'T WANT TO PAY FOR THE POOR AND DANGEROUS DESIGN. AT THE TIME OF INSTALLING THE NEW WHEELS I MEASURED EACH OLD WHEEL TO SEE IF THEY ARE BENT. AT LEAST THREE IF NOT ALL FOUR ARE BENT TO VARYING DEGREES AND ONCE AGAIN I DON'T RECALL HITTING ANYTHING. AS A MATTER OF FACT GM SELLS THIS MODEL OF CAR AND MAKES CLAIMS THAT IT IS THE BEST TRACK CAR (CORVETTE) THEY'VE EVER RELEASED. MY CAR HAS NEVER BEEN ON A RACE TRACK AND IS A NORMAL DAILY DRIVER. FROM A SAFETY PERSPECTIVE I REALIZED AT THAT TIME THAT ONE OF THE REAR WHEELS WAS ACTUALLY CRACKED AND VERY BENT. THE WHEEL COULD HAVE CAUSED ME TO HAVE AN ACCIDENT IF IT HAD CRACKED FURTHER AND AT THE WRONG TIME. I HAVE TAKEN THE WHEELS AND ALL MEASUREMENT DATA TO GM TO TRY TO GET THEM REPLACED AND GM'S STANCE AT THIS POINT IS THAT ALL BENT WHEELS ARE THE CUSTOMERS FAULT. TO MAKE IT MORE CONFUSING GM CAN'T GIVE A CONSISTENT STORY ON WHAT DEFINES A BENT WHEEL. AS OF FILING THIS COMPLAINT I FOUND 199 SIMILAR COMPLAINTS WITH THE SAME GENERATION OF CORVETTE. HOPEFULLY GM WILL BE HELD ACCOUNTABLE FOR THE POOR WHEEL DESIGN BEFORE SOMEONE GETS HURT BECAUSE OF A CRACKED WHEEL. I HAVE ATTACHED PICTURES OF THE WHEELS SHOWING THE CRACK AND MAX RUN-OUT ON EACH OF THE FOUR WHEELS.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|

| MAKE | MODEL | YEAR |
|------|-------|------|
| CHEVROLET | CORVETTE | 2017 |

January 29, 2020 **NHTSA ID NUMBER: 11302896**
**Components: WHEELS**

**NHTSA ID Number:** 11302896

**Incident Date** January 29, 2020

**Consumer Location** HOLBROOK, NY

**Vehicle Identification Number** 1G1YX2D78H5****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

REAR TIRES OF MY 2017 CORVETTE GRAND SPORT WERE LEAKING AIR. CAR WAS TAKEN TO THE DEALER WHERE THE MECHANIC KNEW EXACTLY WHERE TO LOOK. BOTH REAR RIMS HAVE MULTIPLE CRACKS AND THE FRONT RIMS ARE BENT IN SEVERAL AREAS. ALTHOUGH THIS IS A COMMON PROBLEM THE FACTORY WILL NOT REPLACE THE DEFECTIVE WHEELS. AFTER ONLY 18K MILES THE ESTIMATE TO REPAIR IS $5,652. WITHOUT REPAIR I RISK TIRE BLOW OUTS.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|

| MAKE | MODEL | YEAR |
|------|-------|------|
| CHEVROLET | CORVETTE | 2017 |

**December 28, 2019 NHTSA ID NUMBER: 11291713
Components: WHEELS**

**NHTSA ID Number:** 11291713

**Incident Date** September 2, 2019

**Consumer Location** SUMMERVILLE, SC

**Vehicle Identification Number** 1G1YX2D72J5****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

REAR OEM WHEELS OF HAVE LIP CRACKS AND CHEVROLET WILL NOT HONOR NEW RIMS UNDER THE FULL FACTORY WARRANTY. THEY HAVE STATED THAT THE RIMS HAVE DEVELOPED CRACKS FROM HITTING POT HOLES. THIS IS NOT CORRECT BECAUSE I HAVE NOT HIT ANY "POTHOLES" OR ANY OTHER ROAD IMPERFECTIONS THAT WOULD CAUSE ALL OF THESE LIP CRACKS. THERE ARE HUNDREDS OF THE SAME COMPLAINTS. THIS SEEMS TO BE AN ONGOING ISSUE WITH THE WHEELS THAT ARE ON THE GRAND SPORT MODEL. THREE DEALERSHIPS HAVE TOLD ME THAT I NEED TO BUY NEW RIMS AT THOUSANDS OF DOLLARS. I PAID $55,000 FOR A CAR THAT SHOULD NOT NEED NEW RIMS. THE ISSUE IS THAT IF I BUY NEW OEM RIMS, MANY OTHER CORVETTE OWNERS HAVE DONE THIS AND THE SAME CRACKS APPEAR ON THE NEW REPLACEMENT WHEELS. THIS IS JUST WRONG AND CHEVROLET KNOWS THEY HAVE A PROBLEM YET FAIL TO TAKE OWNERSHIP. VERY DISAPPOINTING AND FRUSTRATING TO SAY

THE LEAST. BOTH WHEELS LOST AIR PRESSURE AND ONE WENT
COMPLETELY FLAT. VERY DANGEROUS TO DRIVE OF DEFECTIVE
WHEELS ARE EXPRESSWAY SPEEDS. I WENT TO MANY SHOPS TO GET
THEM REPAIRED AND NO-ONE WILL EVEN TOUCH THEM!

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| CHEVROLET | CORVETTE | 2018 |

**December 22, 2019** NHTSA ID NUMBER: 11290714
**Components: WHEELS**
**NHTSA ID Number:** 11290714

**Incident Date** December 21, 2019

**Consumer Location** SANTA CLARITA, CA

**Vehicle Identification Number** 1G1YZ3D7XJ5****

**Summary of Complaint**

CRASHNo

FIRENo

INJURIES0

DEATHS0
BOTH REAR RIMS (WHEELS) CRACKED, RESULTING IN REPEATED LOSS OF
TIRE PRESSURE. DISCOVERED AT 13,500 MILES, STILL UNDER BUMPER TO
BUMPER WARRANTY, GM DECLINES WARRANTY COVERAGE STATING IT MUST
HAVE OCCURRED FROM A ROAD HAZARD. CORVETTE FORUMS DISCUSS
MULTIPLE 2018 GRAND SPORTS WITH SIMILAR CRACKED RIMS.
DOCUMENTATION FROM DEALER AVAILABLE ON REQUEST.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|

| MAKE | MODEL | YEAR |
|------|-------|------|
| CHEVROLET | CORVETTE | 2018 |

October 11, 2019 **NHTSA ID NUMBER: 11267884**

## Components: WHEELS

**NHTSA ID Number:** 11267884

**Incident Date** October 10, 2019

**Consumer Location** BROWNSTOWN, MI

**Vehicle Identification Number** 1G1YY2D78J5****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

AT APPROXIMATELY 5700 MILES ON OCTOBER 10, 2019, INFLATE TIRE ALERT CAME ON INDICATING THERE WAS ONLY 17 LBS OF AIR IN DRIVER'S REAR TIRE. THIS WAS A DROP OF 13LBS PRESSURE IN 2 DAYS. UPON INSPECTION AT LOCAL TIRE SHOP, IT WAS REVEALED THAT THE LEFT (DRIVER'S) REAR WHEEL HAD TWO CRACKS NEAR HE TIRE BEAD SEALING AREA ON THE INNER SIDE OF THE WHEEL, ALLOWING AIR TO SLOWLY LEAK OUT OF THE TIRE.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| CHEVROLET | CORVETTE | 2018 |

November 1, 2019 **NHTSA ID NUMBER: 11277482**

## Components: WHEELS

**NHTSA ID Number:** 11277482

**Incident Date** November 1, 2019

**Consumer Location** GEORGETOWN, KY

**Vehicle Identification Number** 1G1YY2D72K5****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0
I HAVE A CRACKED RIGHT REAR WHEEL ON MY CAR. IT IS CRACKED IN TWO PLACES ON THE INNER RIM. THE WHEEL IS ALSO WARPED. THE WHEEL IS LEAKING AIR FROM MY TIRE, THEREFORE MAKING IT UNSAFE TO DRIVE.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| CHEVROLET | CORVETTE | 2019 |

**October 24, 2019** **NHTSA ID NUMBER: 11270884**
**Components: WHEELS**
**NHTSA ID Number:** 11270884

**Incident Date** August 29, 2019

**Consumer Location** BLOOMINGTON, IL

**Vehicle Identification Number** 1G1YS2D63K5****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0
I HAVE A NEW 2019 Z 06 CORVETTE PURCHASED NEW BY MYSELF. I HAVE 2400 MILES ON IT AND NOTICED A VIBRATION WHILE DRIVING. I WENT TO DISCOUNT TIRE TO HAVE TIRES BALANCED AND WAS TOLD MY RIGHT FRONT AND REAR RIMS WERE BENT AND IT WAS DANGEROUS TO DRIVE AS THEY WILL LIKELY

SPLIT IF I KEEP DRIVING ON THEM. THIS IS DANGEROUS AND NEEDS TO BE REMEDIED! THERE ARE FAR TOO MANY RIMS WITH SAME PROBLEM TO BE JUST TO DRIVERS FAULT FROM HITTING A POTHOLE. THIS IS THE ONLY CAR I HAVE OWNED THAT HAS HAD THIS PROBLEM. I HAVE OWNED 5 OTHER LATE MODEL CORVETTES AND PUT A LOT OF MILES ON THEM WITH NO WHEEL PROBLEMS ON THESE SAME ROADS. I HAVE A 2016 CAMARO WITH FACTORY RIMS AS WELL WITH 15K MILES ON IT AND NEVER HAD A PROBLEM EITHER. I HAVE A 2018 XT5 CADILLAC AS WELL WITH NO WHEEL ISSUES. ALL ON SAME ROADS DAILY. IT IS NOT JUST COINCIDENTAL THAT THESE WHEELS ARE FAILING FOR ME AND THOUSANDS OF OTHER OWNERS. ARE WE TO WAIT UNTIL SOMEONE HAS A WHEEL FAILURE AND CRASHES AND DIES BEFORE WE ADDRESS THIS ISSUE? EVEN LOSING AIR IN THE TIRE AND SITTING ON THE SIDE OF THE ROAD WAITING FOR ROAD SERVICE CAN BE VERY DANGEROUS. THERE IS NO EXCUSE FOR GM NOT TO ADDRESS THIS PROBLEM NOW BEFORE ANYONE IS SERIOUSLY INJURED OR KILLED AS A RESULT OF THIS DEFECT! PLEASE DO SOMETHING NOW! SINCERELY, [XXX]

INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6). *CC *TR

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| CHEVROLET | CORVETTE | 2019 |

**October 17, 2019 NHTSA ID NUMBER: 11269165**
**Components: WHEELS**
**NHTSA ID Number:** 11269165

**Incident Date** October 7, 2019

**Consumer Location** BURBANK, CA

**Vehicle Identification Number** 1G1YW2D72K5****

**Summary of Complaint**

**CRASH**No

**FIRE**No

**INJURIES**0

**DEATHS**0

AFTER 9,000 MILES, THE REAR DRIVER SIDE WHEEL WAS LEAKING AIR. UPON INSPECTION BY COMMUNITY CHEVROLET DEALER IN BURBANK, THE WHEEL WAS CRACKED IN A HANDFUL OF PLACES. THE DEALER CONCLUDED THAT THERE WAS NO MISUSE DAMAGE AND SUBMITTED THE REIMBURSEMENT CLAIM TO CHEVROLET HQ. HQ DENIED THE CLAIM TO REPLACE THE FAULTY WHEEL.

**1 Affected Product**
**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| CHEVROLET | CORVETTE | 2019 |

81.     Complaints on other websites—many of which are routinely monitored by car manufacturers such as GM, show a similar pattern of premature rim issues in the Class Vehicles and GM's unwillingness to accept responsibility for its defective vehicles.  Examples of such complaints are:[6]

a.     **January 29, 2020:** With less than 15000 miles i had 2 wheels with cracks in the lip portion of the wheel. Tire store indicated the other 2 wheels are out of round. Gm refuses to warranty, aftermarket warranty denies coverage since this is a clear "factory defect. " gm is selling sub quality wheels that could fail at highway speeds, and not honoring warranty regarding factory defects. Many instances of this problem on car forums. Many.[7]

b.     **January 29, 2020:** REAR TIRES OF MY 2017 Corvette GRAND SPORT WERE LEAKING AIR. CAR WAS TAKEN TO THE DEALER WHERE THE MECHANIC KNEW EXACTLY WHERE TO LOOK.

---

[6] The following are reproduced verbatim and any typographical or syntax errors occur in the original and are reproduced without correction.

BOTH REAR RIMS HAVE MULTIPLE CRACKS AND THE FRONT RIMS ARE BENT IN SEVERAL AREAS. ALTHOUGH THIS IS A COMMON PROBLEM THE FACTORY WILL NOT REPLACE THE DEFECTIVE WHEELS. AFTER ONLY 18K MILES THE ESTIMATE TO REPAIR IS $5,652. WITHOUT REPAIR I RISK TIRE BLOW OUTS.

c. **Janurary 21, 2020**: AT JUST LESS THAN 5000 MILES I WAS EXPERIENCING VIBRATION SPECIALLY IN CARS SPORT MODE ON MY 2017 GRAND SPORT Corvette. TOOK TO TIRE SHOP FOR A WHEEL BALANCE AND WAS NOTIFIED THREE WHEELS WERE BENT. TOOK CAR TO DEALER WHO ACKNOWLEDGED ALSO WHEELS WERE BENT IN REPAIR ORDER. I WAS TOLD BY DEALER BENT WHEELS ARE NOT COVERED UNDER 3YR/ 36K MILE WARRANTY. DEALER SUGGESTED I CONTACT GM. LATER INTERNET SEARCH REVEALED MANY OTHER PEOPLE EXPERIENCING BENT WHEELS ON THIS PARTICULAR CORVETTE MODEL. THIS IS A VERY SERIOUS SAFETY PROBLEM AS WHEELS ARE CRACKING AND COULD FOIL COMPLETELY CAUSING UNCONTROLLABLE SITUATION.

82.   In fact, one poster on an internet message board dedicated exclusively to Corvettes, called the Corvette Forum, posted a detailed post summarizing complaints about bent and/or cracked rims on the Class Vehicles.  The post, which is continually updated is reproduced below:

List of CF Members With C7 Bent or Cracked Wheels (work in progress)

**2/22/20 See postd #402, VLackman reaches agreement with GM via Better Business Bureau to receive credit towards replacement wheels.**

**1/21/20 See Post #345, Scudz WINS arbitration against GM through the Better Business Bureau**

**12/8/19 See Post #278, sadgsowner WINS arbitration against GM through the Better Business Bureau**

3/6/2020 - austinC6, 2 rear wheels cracked. (18 GS, post #443)

2/27/20 - Bob Peters; 8 wheels, 1 cracked, 5 bent (16 C7?, post #432)
2/24/20 - 04train, 1 rear wheel cracked,1 front wheel cracked (17 GS, post #421)
2/18/20 - WB Dave, both rear wheels cracked (18 GS coupe, post #406)
2/14/20 - DirtA©Drnek, Bent the right rear on a small bump on road doing 25-30mph on valentines day. See Video (19 GS, post #375)

1/25/20 - DTtravelinman, 1 cracked passenger rear wheel,$826 (17 GS, post #356)
1/24/20 - Rocky51, 1 cracked rear wheel (17 GS Coupe, post #359)
1/18/20 - bigblock427, right rear OEM black wheel cracked in two places (19 GS, post#326)
1/10/20 - 4*CRUIZN, 1 cracked wheel losing air, passenger rear, black rim (17 GS, post #367 and #368)
1/7/20 - TBF, Left rear wheel bent/cracked (19 Z06, post #319)

12/31/19 - dmc1228, - LR cracked, 17062 miles (17 GS, post #362)
12/29/19 - ginger reiley, both rear wheels cracked in multiple places (19 GS, post #293, 304, 305 w/pics)

12/26/19 - Merlin803, 1 cracked rear wheel (black) (17 GS Coupe, post #291)
12/16/19 - aurieg, rear wheels cracked at 30K miles (17 GS, post #281)
12/14/19 - VLackman, rear rims cracked, denied warranty (18 GS, post #289)
12/12/19 - WaxWeekly, 2 cracked rear wheels (black) (18 Z06 Coupe, post #433)
12/1/19 - Track, 2 bent front wheels and 1 cracked rear. Not covered under warranty (17 Z06, post #272)
12/2019 - Slider-01, left rear wheel bent at hub and cracked at other location (post #308)

11/27/19 - treeofliberty, LR cracked, (2018 Grand Sport Coupe, 8200 MI, post#268)
11/26/19 - Torch-Red-Z06, at least one bent wheel at 15K miles (17 Z06, post #266)
11/25/19 - ClaytonPowell, cracked wheel at 16k miles (year/model?, post #259)
11/21/19 - anthonyplaceres, LR wheel cracked (18 GS, post #247)
11/14/19 - Deelo, 4 bent wheels (18 Z06). Info taken from https://www.corvetteforum.com/forums...post1600495445
11/14/19 - Sparky65, RF/LR/RR bent (Pearl), (2019 Z06 Convertible, 3900 MI, post #239)
11/8/19 - Sunshine100826, 4 bent wheels and 1 rear wheel cracked at 8K miles (19 GS, post #230) Update 1/8/20 (PM from Sunshine) I have now had 2 cracked rims same rear tire. So I have had 4 bent rims and 2 cracked rims. This is ridiculous.

11/6/19 - plmmd, 3rd cracked wheel. Can't get replacement from GM. 12K miles. (19 GS, Also documented on 8/17/19 below). Info taken from: https://www.corvetteforum.com/forums...-and-rims.html
11/6/19 - Rafiki (post #222)

11/6/19 - dshives, both rear wheels cracked, taken from https://www.corvetteforum.com/forums...post1600446920

11/2/19 - ChillTravelers, cracked rear wheel at 44K miles (17 GS, post #209)

11/1/19 - rocket68, 1 bent rear right wheel with 2 cracks, painted black GS wheel (19 GS, post #214)

10/31/19 - electricfish, both right side wheels bent, identified during tire replacement (14 Stingray)

10/25/19 - nupe, both rear wheels cracked (17 GS)

10/24/19 - Rookienot1, 2 bent right side wheels at 2,400 miles (19 Z06, post #198)

10/19/19 - CMEGONE, cracked rear wheel at 14K miles (15 Z06, post #194)

10/18/19 - Finally-mine, LR cracked barrel and out of round, 8884 miles (18 GS, post #192)

10/13/19 - olblue75, 3 bent wheels not covered by warranty, 10,664 miles (17 GS, post #170)

10/12/19 - tjjungers, 3 bent wheels (both front and drivers rear) (19 GS convertible, post #165)

10/11/19 - Davidsracng, 2 cracked rear wheels (painted gloss black) (17 GS Coupe, post #270)

10/10/19 - ChazzySam, 2 cracks in 1 rear wheel (black) at 5,610 miles (18 GS coupe, post #163) Update 1/29/20, rear passenger bent rim on same 2018 Grand Sport, 6010 miles (post #371)

10/4/19 - huge.eug, cracked wheel, second issue. See 2/18/18 for first issue. (16 Z06, post #147)

10/3/19 - smithrk2, multiple cracked machine grey wheels on several occasions. Dealer replaced under warranty (18 GS convertible, post #145)

10/1/19 - Tally Ho, LF LR wheels bent at 13K miles. Warranty denied. (17 Z06 coupe, post #143)

9/2019 - Kenafin, both passenger side wheels bent (2015 Z51, post #237)

9/2019 - dbattle, 2 rear wheels found cracked in September. 1 front wheel found cracked in August. Gloss Black wheels. (17 GS, post #158)

9/2019 - JAS321, Two welds failed before first track event (17 GS, post #131, also see August 2018, July and August of 2019)

9/29/19 - devnull, cracked rear at 7300 miles, 2nd issue. See 10/2018 and post #78 for 1st issue(19 GS, post #136)

9/28/19 - SNSTR, 3 cracked black wheels at 12,500 miles (17 GS, post#161)

9/27/19 - EDBLU, 2nd cracked wheel (black) (18 ZO6 vert, post #74 & post #128) Also on list below 3/25/19 for 1st occurrence.

9/27/19 - Jason Carnes, both right wheels are bent in 3K miles (19 Z06, post #114)

9/26/19 - RocksZC7, 3 bent rims - OEM Chrome, repaired but not perfect, 50k miles (16 Z06 Vert, post #156)

9/25/19 - jman91, 5 bent wheels, replaced with Forgeline AR1 ( year?/model?, post #93)

9/24/19 - 50th year, 4 bent wheels (17 GS, post #90)

9/24/19 - Rafiki, both rear wheels cracked, 13K miles (18 GS, post #85)

09/22/19 Bluedove3, cracked opposite rear wheel from 1/13/19 event (17 GS Coupe, post #181)

9/21/19 - MJC611, three bent, 1 cracked, 45k (17 Z06, post #69)

9/21/19 - TimAF, Discount Tire informed me today of 2 bent and 3 cracked rims. 13,700 miles (19 GS, post #56)

9/20/19 - Tex Vette, 17,000 miles. 3 cracks in 1 rear wheel, replaced free of charge in January 2019. Yesterday, rear tire loosing air, Discount Tire found 3 cracks in wheel (18 GS, post #58)

9/20/19 - Muffzilla, both rears cracked, 23K miles (15 Z06)

9/20/19 - sadgsowner, 2 bent wheels, 6,400 miles, still

unresolved (17 GS)

9/19/19 - tntfan, cracked wheel (17 GS)

9/19/19 - Vetttte, 2 cracked wheels in 300 miles (18 GS)

9/19/19 - z51vett, 3 bent wheels (16 Z06)

9/18/19 - trumanjd1, 5 Bent wheels..replaced with Forgeline VX1R (year?/model?, post #110)

9/18/19 - kenownr, 1 cracked, 4 bent (19 ZO6) 4500 miles, POS wheels

9/17/19 - NolanTA, 1 rear wheel cracked, other 3 wheels out of round, less than 15K miles (17 GS, post #159) Update 1/26/20 I'm back on the board with another rear rim with 3! cracks. Researching forged wheels now. 18200 miles (post #355)

9/17/19 - CW4L (vendor states they see several cracked oem sets weekly)

9/17/19 - ZQQH6, 4 bent machined faced Cup wheels (18 GS Coupe, 4450 miles)

9/17/19 - Stew24, LR losing air at 4K, found large crack in wheel at 8K (17GS, post #76)

9/16/19 - bmy986, 1 cracked wheel. 12.5K miles (17 GS)

9/16/19 - gstodd, RF bend and RR wheels cracked. 11,500 mile (17 GS Coupe)

9/16/19 - FX Vette, need details

9/16/19 - mycorvette02, 4 bent wheels and 1 cracked, not covered by warranty. 17,500 miles (17 GS Collectors Edition, post #54)

9/16/19 - Prime Target, all four wheels out of round at 4,600 miles and repaired on 5/25/19. Now at 6,100 miles, LR is losing air. Waste of time to go to dealer and there are no GM wheels available to buy. (17 Z06 vert)

9/16/19 - ICU2TV, friend had all 4 wheels replaced

9/15/19 - BlueDevlZ06, 3,500 miles, 2 bent pearl wheels LF, LR that GM warrantied. (16 Z06 M7 Coupe, post #55)

9/15/19 - ray4no, both rear wheels cracked, 23K miles

(15 Z06)

9/15/19 - TNSQUIRE, friend has 4 cracked wheels

9/15/19 - Danos gs, need details

9/13/19 - MichaelG62, 1 bent rear wheel (pearl) (17 GS Coupe)

9/13/19 - KultureMotorsports, Vendor making forged GS replicas due to oem wheel bend/crack on their GS

9/11/19 - thodgen, need details

9/11/19 - Classic-Chevy-Guy, bought new wheels, need details

9/11/19 - hcvone, need details

9/10/19 - direct007, Cracked RR, 6,200 miles (19 GS vert, post #72)

4) 2019 GS Convertible / 6200 miles on car

9/10/19 - jma242, wheel cracked 6/1/19 and fixed. 2nd crack new location 9/19/19. Needs replaced. (17 GS)

9/10/19 - Oh Boy, friend has 3 bent & 1 cracked wheels, all getting fixed at owners cost (17 GS, 5k miles)

9/9/19 - John A. Marker, noticed several cracks in rear wheels during first tire change at 19K miles (18 Z06, post #105)

9/6/19 - 01 Coupe, need details

9/6/19 - usrodeo4, need details

9/6/19 - NineVettes, need details

9/6/19 - Don Pablo GS, need details

9/4/19 - Dale Stevens, 2 right side wheels bent per dealer at 15,400 miles, NHTSA filed (16 Stingray, post #132)

9/3/19 - thompstl1, 3 of 4 wheels found bent at first tire change, less than 9,000 miles (18 Z06, post# 103)

9/2/19 - BrunoTheMellow, need details

9/2/19 - geewez, need details

9/2/19 - Cub Pilot, need details

9/2/19 - 383vett, need details

9/1/19 - TooFly, need details

September Total = 57

8/2019 - graj6, 3 wheels bent, not covered by warranty (17 GS, post #311)

8/2019 - ChiefBoats, inside cracked RR wheel (16 Z06, post #49)

8/2019 - JAS321, Another crack beside a weld(17 GS, post #131, also see August 2018, July, September of 2019)

8/29/19 - Flyingscot, 2 bent wheels (17 GS, post #84)

8/29/19 - MThomas, joined cracked wheel club, need details

8/27/19 - gtam85, 1 passenger side rear wheel cracked, chevrolet wheel warranty replaced wheel (18 GS)

8/25/19 - Emsand1, joined bent wheel club this month, need details

8/24/19 - hungwang (great name), 3 cracked wheels in 2 years, (GS)need details

8/22/19 - doug doo wop, GS cracked wheel, scored $100 gift card from Customer Service

8/17/19 - Kletis, cracked RR wheel, $821 paid to replace w/oem and $50 core charge to keep my own wheel (16 Z06)

8/17/19 - plmmd, 2 cracked rears 4/19, bent front (June to August 2019) took month and a half for red stripe black front rim to arrive under wheel warranty as a replacement for a bent rim. Also see: https://www.corvetteforum.com/forums...-and-rims.html

8/16/19 - Gearhead Jim, bent 5 out of 8 wheels (17 Z51)

8/14/19 - 69 L46 4 Speed, bent 2 right wheels on huge pothole, found left rear at 45 thousands, did not hit anything w/ left rear. (19 GS vert) 6000 miles, Machine Faced Cup Wheels

8/11/19 - Marcho Polo, denied warranty on 3 bent wheels (GS)

8/9/19 - joemessman, low tire pressure, 2 cracked wheels (17 Z06)

8/9/19 - mrclean1, 4 bent wheels at 2 miles (not a typo), wheels repaired (19 GS)

8/8/19 - Scudz, 4 bent wheels, <6K miles, warranty denied (17 GS, thread originator)

8/6/19 - viper2pt0, 3 bent wheels in 2,250 miles (19 GS, post #134)

8/5/19 - lavla, 3 bent and 1 cracked pearl wheels (17 GS, post #126)

8/1/19 - IFlyLow - 1 bent, front passenger. Dealer acted like they knew nothing of the problem. Straightened. (19 GS Vert, post #88)

August total = 19

7/2019 - JAS321, Wheel cracked again at 12K miles (17 GS, post #131, also see August 2018, August, September of 2019)

7/2019 - Michael Griffin, new tires couldn't be balanced. 2 pearl rear wheels bent (17 GS, post #79)

7/30/19 - Mark Beals, black wheel bent at 600 miles (19 GS)

7/22/19 - tgibrit, both rear wheels cracked (18 GS, post #225 and #234)

7/17/19 - 7 Speed Rowing, filed a report, need details

7/14/19 - RealliveMD, joined cracked wheel club. Need details

7/14/19 - Edduprey, cracked rear wheel (19 GS)

7/6/19 - JB16V, 1 bent right rear wheel, 1 cracked left rear wheel (17 GS Coupe)

6/2019- Dado5, 3 bent wheels beyond repair at 3,500 miles (18 GS, post #108)

6/2019 - mryan2880, right side front and rear wheels cracked at 9K miles (17 GS, post #124)

6/26/19 - Wideout, LR has 1 crack. RR has 3 cracks (17 GS)

6/2019 - Poughkeepsie, 5 bent wheels (19 GS)

6/30/19 - Dale#3, bent rears, fronts need replaced, vibration, satin black red stripe wheels (17 GS vert)

6/18/19 - redzr1, 3 cracks in RR wheel at 6500 miles. Dealer blames my driving (18 GS)

6/18/19 - chuckrbt, Bent right rear. Replacement from House of Wheels in a few days (19 GS)

6/13/19 - Rookieracer, 1 cracked rear wheel (black) (16 Z06/Z07 Coupe, post #149)

6/7/19- RsquaredH, low tire pressure 1 cracked rim, <11k miles (2017 GS)

6/2/19 - GSFUN59, 1 bent and 1 cracked wheel (17 GS, post #135)

5/2019 - bbrown450, 4 bent shells replaced under 3,000 miles (19 GS)

5/30/19 - smurfmacaw, cracked wheel at 25K miles (17 Z06)

5/31/19 - R1crusher, 3 of 4 bent wheels at 5,500 miles. Still waiting after 2 months for resolution from warranty company that is trying to pass the buck back to GM (17 GS)

5/22/19 - KC - Grand Sport, 2 cracked wheels, air leaked out, need details

5/5/19 - Randall3#, 1 cracked and 7 bent wheels within 1 year of purchase (17 GS)

5/4/19 - C7 x 2, LR leaked air, wheel is cracked 17K miles (16 Z06)

5/1/19 - DJWF, 1 cracked rear wheel after 9K miles (17 Z06, post #118)

4/2019 - redman76, Both rears cracked, right front severely bent (17 GS black wheels, 13K miles)

4/9/19 - kwyjibo, cracked OEM machine faced left rear wheel (17 GS)

4/9/19 - Corby Wilemon, cracked LR at 14K miles (Z06)

4/5/19 - vetteheadracer, rear wheel replaced by dealer under warranty due to bend (16 Z06)

3/25/19 - EDBLU,1 cracked wheel (black) (18 ZO6 vert, post #74) Also on list above for 9/27/19 for second occurrence.

3/2019 - GS17Vette, 4 bent wheels-
Dealership and GM said they will not warranty the wheels (17 GS, post #213)
3/30/19 - Mark Maple, filed a report with NHTSA for wheel issue, need details
3/30/19 - copjsd, LR has 4 cracks, 17K miles (17 GS)
3/25/19 - EDBLU,1 cracked wheel (black) (18 ZO6 vert, post #74) Also on list above for 9/27/19 for second occurrence.
3/25/19 - SLINGER, 1 cracked wheel (GS, need details)
3/7/19 - rdgbuccaneer, 3 bent wheels in 6,000 miles (17 GS)
2/27/19 - traxz4000, bent rear black mat wheel (18 GS)
2/27/19 - yaknuts81, RR cracked wheel at 6K miles (19 GS)

1/20/19 - Ag3ofshadows, cracked rear wheel (need details)
1/13/19- Bluedove3, Cracked rear Black wheel (17 GS Coupe, post #181)
1/10/19 - ZRCLONE, 1 bent wheel (17 Z06, post #412)
1/5/19 - golfbone, 2 bent wheels in a month, low miles (Z06)

11/2018 - budgreen3564, Bent right rear. Paid to have it repaired (model?, post #70)
11/19/18 - robertlevine, 2 flats and 1 cracked wheel already (19 GS)
11/2/18 - Tony1leo, cracked wheel (GS)

10/2018 - devnull, 900 miles, bent front w/out real impact (19 GS, post #78)

10/30/18 - Reggied, bent 10 wheels in less than 1 year, less than 10k miles (17 GS)

10/19/18 - jenfioreally, Chrome, 2 bent fronts at 1K miles, rear cracked wheel at 6K (19 GS, waiting 10 weeks for replacements, post #227)

10/19/18 - SCCA VETTE, replaced all 4 wheels at 5K miles due to cracked and out of round, dealer did not consider warranty. Now, 1 new wheel out of round at 10K miles (need details on year/model)

10/19/18 - subieworx, has a customer with 6,000 miles and 4 cracked wheels inside barrels, dealer did nothing (19 GS)

10/18/18 - Hultsy both rear tires losing pressure due to wheel cracks (17 GS)

10/15/18 - gtam85, 1 driver side front wheel bent, chevrolet wheel warrant repaired bend (18 GS)

9/2018 - DanG376, Two instances of bent wheels. 5 out of 8 wheels bent at 14,900 miles (17 GS, post#154).

9/29/18 - 2016 first z06, cracked wheel (16 Z06)

9/25/18- footba4672, chrome - 3 bent wheels straightened, 1 cracked wheel replaced. Wheel insurance covered, but looking for alternate wheels (17 GS)

9/24/18 - Pamela Corkill, 1 rear wheel has 4 stress cracks, the other rear wheel ha 1 stress crack (GS)

9/11/18 - BrentS, after 1K miles, both RS tires losing air- had dents (no known impacts), repair successful. Then LR cracked and replaced. Them RR cracked and replaced. (17 GS)

8/2018 - DJWF, 2 bent wheels in addition to 3 cracks in 1 wheel (17 Z06, post #141, see 5/1/19 - post #118)

8/2018 - JAS321, LR cracked at 6K miles (17 GS, post #131, also see July, August, September of 2019)

8/2018 - Captain58, both passenger side wheels bent, never bent a wheel in 40 years until now. (17 GS)

8/10/18 - tertiumquid, 3 bent and two cracked wheels, 6K miles (16 Z06)

7/12/18 - MHE-Plex, 4 bent black w/red stripe wheels at 5537 miles (17 GS, post #89)
7/12/18 - Coasterbuilder, cracked wheel (need details)
7/12/18 - dmagee, 2 bent rims with little trauma (17 GS)
7/12/18 - rb 185am, cracked rear wheel (GS)
7/11/18 - Wadoka, 4 bent wheels, a 5th and 6th wheel cracked (17 GS, black wheels)
7/5/18 - Swtwhitetiger, large crack on inside of wheel, didn't hit anything (18 GS, 6 weeks old). Good reply by gowenfast "Looks like a factory defect to me. Only, 45 years in the biz, what do I know?"
7/2/18 - flyguy0812, 3 cracked wheels, need details

6/27/18 - CliffB-99, all 4 wheels found bent when replacing tires at 16K miles (16 Z06)
6/27/18 - asby69, 3 wheels bent, did not hit any potholes (17 GS)
6/25/18 - Pete01, Bent both front rims, hit lip on I65 on way to Bloomington gold (16 Z06, post #398)

5/29/18 - Butch1946, 2 cracked wheels in 2 years, need details
5/28/18 - JHA, 4 Bent wheels, taken from https://www.corvetteforum.com/forums...post1600495445
5/25/18 - vince1995, all 4 wheels bent in 6,000 miles (17 GS)

3/16/18 - willhaveC6, cracked chrome wheel at 6K miles, still waiting for wheels after 6 weeks (GS)

2/18/18 - huge.eug, 2 bent wheels (spectra gray) (16 Z06 coupe, post #147)

1/5/18 - Antranik Atamian, 4 bent wheels, car at dealer for 2 months and then denied warranty (18 Z06)

12/30/17 - SLEEKVET, 2 bent Pearl wheels at 5192 miles (17 Z06, post #95)
12/23/17 - Carvin, right rear cracked (black) (16 Z06)
11/14/17 - flenn, bent 2 wheels, 500 miles (17 GS)
10/20/17 - HDLARRY, 4 bent chrome wheels in less than 700 miles, bent another at 2,700 miles (16 Z06)
10/19/17 - Jedi-Jurist, 2 bent wheels in 700 miles (GS)
10/19/17 - Poor-sha, bent 2 wheels in 2,800 miles, previously paid to replace 6 bent or cracked wheels on my 2015 (year?/model?)
10/18/17 - Rickmd, 4 bent wheels, no significant road hazards, dealer refused to replace (year?/model?)
10/18/17 - ronkellogg, dealer replaced all 4 wheels at 9K (16 Z06)
10/1/17 - Vquest167, 4 bent, 1 cracked wheel (17 GS, post #241)
7/2017 - spoolin7, All 4 wheels bent (17 GS, post #452)
7/2/17- Mariomark -Right front -17 GS Coupe[8]

**D.    GM Has Concealed the Defect and Violated Its Warranty**

83.    Despite knowing about the Defect, GM has actively concealed the nature and existence of the Defect from Plaintiffs and Class members. Specifically, GM concealed its knowledge of a material defect or material nonconformity in the Class Vehicles; concealed that the rims in the Class Vehicles

---

[8] *See* Exhibit B, https://www.corvetteforum.com/forums/c7-general-discussion/4322291-c7-bent-cracked-wheel-roll-call.html (last accessed April 27, 2020).

were defective, not in good working order, or suitable for their intended purpose; and concealed that the Class Vehicles were defective despite knowing of the Defect since as early as 2015.

84.    The Class Vehicles are sold with a bumper-to-bumper warranty which obligates GM to repair any defects in the first three years or 36,000 miles (whichever occurs earlier) of a vehicle's life.

85.    Many owners and lessees of Class Vehicles, including Plaintiffs, have presented their vehicles to a GM dealership for repairs related to the Defect for warranty repairs, but GM has avoided its obligations under the warranty by failing to tell Class members about the Defect and refusing the necessary repairs or replacement.

86.    Thus, Despite GM's knowledge of the defect, and its duty to repair or replace the defective rims under its new vehicle warranty, GM has forced Class members to either pay exorbitant repair costs or continue to operate their vehicle with damaged and dangerous rims.

87.    GM's acts and omissions have unnecessarily put the safety of Class members and the public in jeopardy.

88.    Further, because of GM's unfair, deceptive, and/or fraudulent business practices, owners, and/or lessees of the Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss

in value. GM undertook these unfair and deceptive trade practices in a manner giving rise to substantial aggravating circumstances.

89.    Had Plaintiffs known of the Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles, or they would have paid substantially less for the Class Vehicles.

90.    As a result of the Defect and the monetary costs associated with attempting to repair it, Plaintiffs and the other Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by GM's conduct. Accordingly, Plaintiffs bring this action to redress GM's violations of various state law consumer protection statutes and also seek recovery for GM's breach of express and implied warranties or for its unjust enrichment.

## V.    TOLLING AND ESTOPPEL

### A.    Discovery Rule Tolling

91.    Class members had no way of knowing what GM knew about the Defective Wheels in their Class Vehicles. As evidenced by its refusal to acknowledge the defect and honor its warranty, while representing and leading consumers to believe that any damages to their wheels were the result of the consumers' actions, GM was intent on expressly hiding the defect and its behavior from the public.  This is the quintessential case for tolling.

92.    Within the period of any applicable statutes of limitation,

Plaintiffs and members of the proposed Classes could not have discovered through the exercise of reasonable diligence that GM was concealing the defect complained of herein and misrepresenting the company's true position with respect to the quality and safety of its vehicles. Within the period of any applicable statutes of limitation, Plaintiffs and the other Class members could not have discovered through the exercise of reasonable diligence that GM was concealing the Defective Wheels.

93.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to all Class Vehicles identified herein.

**B.    Estoppel**

94.    GM was under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the Defective Wheels in the vehicles at issue.

95.    GM knowingly, affirmatively, and actively concealed the true nature, quality, and character of the Defective Wheels in the Class Vehicles.

96.    Based on the foregoing, GM is estopped from relying on any statutes of limitations in defense of this action.

## VI.   CLASS ALLEGATIONS

97.     Plaintiffs bring this action pursuant to the provisions of Rules

23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of

themselves and the following proposed Classes:

### Nationwide Class
All persons or entities who purchased or leased a 2015-
2019 Chevrolet Corvette Z06 or 2017-2019 Chevrolet
Corvette Grand Sport

### Florida Subclass
All members of the Nationwide Class who are residents
of Florida or purchased their Class Vehicle in Florida.

### Illinois Subclass
All members of the Nationwide Class who are residents
of Illinois or purchased their Class Vehicle in Illinois.

### Michigan Subclass
All members of the Nationwide Class who are residents
of Michigan or purchased their Class Vehicle in
Michigan.

### New Jersey Subclass
All members of the Nationwide Class who are residents
of New Jersey or purchased their Class Vehicle in New
Jersey.

### New York Subclass
All members of the Nationwide Class who are residents
of New York or purchased their Class Vehicle in New
York.

### Pennsylvania Subclass
All members of the Nationwide Class who are residents
of Pennsylvania or purchased their Class Vehicle in
Pennsylvania.

**South Carolina Subclass**
All members of the Nationwide Class who are residents of South Carolina or purchased their Class Vehicle in South Carolina.

**Texas Subclass**
All members of the Nationwide Class who are residents of Texas or purchased their Class Vehicle in Texas.

98.     Excluded from the Class are individuals who have personal injury claims resulting from the Defective Wheels.  Also excluded from the Class are GM, its employees, officers, directors and its subsidiaries and affiliates.

99.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

100.   This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

101.   <u>Numerosity</u>.  Federal Rule of Civil Procedure 23(a)(1):  The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  There are tens of thousands of Class Vehicles that have been sold in the United States.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination

methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

102. <u>Commonality and Predominance</u>.  Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a.  Whether GM manufactured, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

b.  Whether the Class Vehicles contain a safety defect due to the alleged Defective Wheels;

c.  Whether GM's conduct violates consumer protection statutes, false advertising laws, warranty laws, and other laws as asserted herein;

d.  Whether GM breached express or implied warranties;

e.  Whether GM is liable for refusing to repair or replace the Defective Wheels pursuant to the 3 year/36,000 mile bumper-to-bumper warranty covering all defects in materials and workmanship;

f.  Whether the Class Vehicles are merchantable and fit for their intended purpose;

g.  Whether Plaintiffs and the other Class members received the benefit of their bargains when they purchased or leased their Class Vehicles;

h.  Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

i.   Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

103.   <u>Typicality</u>.   Federal Rule of Civil Procedure 23(a)(3):   Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through GM's wrongful conduct as described above.

104.   <u>Adequacy</u>.   Federal Rule of Civil Procedure 23(a)(4):   Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously.   The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

105.   <u>Declaratory and Injunctive Relief</u>.   Federal Rule of Civil Procedure 23(b)(2):   GM has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

106.   <u>Superiority</u>.   Federal Rule of Civil Procedure 23(b)(3):   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.   The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to

the burden and expense that would be required to individually litigate their claims against GM, so it would be impracticable for the members of the Class to individually seek redress for GM's wrongful conduct.   Even if Class members could afford individual litigation, the court system could not.   Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.   By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII.   VIOLATIONS ALLEGED

### A. Claims Brought on Behalf of the Nationwide Class

**COUNT I**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. § 2301, *ET SEQ.*)**

107.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

108.   This claim is brought on behalf of the Nationwide Class.

109.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

110.   GM is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

111.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

112.   15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

113.   GM's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).   The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

114.   GM provided a 36-month, 36,000 mile bumper-to-bumper warranty for the Class Vehicles which is supposed to cover all defects in materials or workmanship throughout the entire vehicle.

115.   Defendant has breached the express warranty by selling and leasing Class Vehicles with Defective Wheels that require repair or replacement within the warranty period and by refusing to honor the express warranty by repairing or replacing, free of charge, the wheels.  In addition, in any situations where GM has paid a portion of the costs, GM nevertheless has breached the express warranty by not covering all of the costs and/or by replacing Defective Wheels with similarly Defective Wheels, thus failing to "repair" the defect.

116.   The Class Vehicles are equipped with Defective Wheels that put the safety of vehicle occupants and the public in jeopardy.  The Class Vehicles share a

common defect in that the Defective Wheels are unsafe and unsuitable for the Class Vehicles, contrary to GM's representations about its vehicles. The Class Vehicles share a common defect that can allow the wheels to fail and compromise the integrity of the tires and the ability to control the vehicles.

117. Plaintiffs and the other Nationwide Class members have had sufficient direct dealings with either GM or its agents (*e.g.*, dealerships and technical support) to establish privity of contract between GM on one hand, and Plaintiffs and each of the other Nationwide Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Nationwide Class members are intended third-party beneficiaries of contracts between GM and its dealers. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

118. Affording GM a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here as GM has repeatedly refused to honor its warranty obligations and instead has forced the consumers to bear the cost and of repairing or replacing the Defective Wheels in the Class Vehicles.

119. At the time of sale or lease of each Class Vehicle, GM knew, should have known, or was reckless in not knowing of its misrepresentations and

omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defect and refuses to honor its warranties.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford GM a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

120.  Plaintiffs and the other Nationwide Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them.  Because GM is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Nationwide and Class members have not re-accepted their Class Vehicles by retaining them.

121.  The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $5,000,000 exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

122.  Defendant's breach of the express warranties has deprived the Plaintiffs and Class Members of the benefit of their bargain.

123.   Plaintiffs, individually and on behalf of the other Nationwide Class members, seek all damages permitted by law in an amount to be proven at trial.

**B. Claims Brought on Behalf of the Florida Subclass**

### COUNT II
### VIOLATION OF FLORIDA'S UNFAIR &
### DECEPTIVE TRADE PRACTICES ACT
### (FLA. STAT. § 501.201, *ET SEQ.*)

124.   Plaintiff Rochford (hereinafter "Plaintiff" for the Florida counts) corporates by reference all preceding allegations as though fully set forth herein.

125.   Plaintiff brings this Count on behalf of the Florida Subclass.

126.   Plaintiff and Class members are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), FLA. STAT. § 501.203(7).

127.   GM engaged in "trade or commerce" within the meaning of FLA. STAT. § 501.203(8).

128.   The FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  FLA. STAT. § 501.204(1).

129.   In the course of its business, GM willfully failed to disclose and/or actively concealed the fact that the Class Vehicles have Defective Wheels discussed herein and the fact that GM would not cover repair or replacement of the Defective Wheels under its warranty, and otherwise engaged in activities with a

tendency or capacity to deceive.  GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

130.   GM was also aware that it valued profits over safety, and that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised and jeopardized the safety of the vehicle's occupants and the public.

131.   By failing to disclose that the Class vehicles have Defective Wheels and were not safe, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its warranty and vehicles after they were sold, GM engaged in deceptive business practices in violation of the FUDTPA.

132.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the other Class members, about the true performance of the Class Vehicles, the quality of the GM brand, the devaluing of safety and performance at GM, and the true value of the Class Vehicles.

133. GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with the intent to mislead Plaintiff and the Florida Subclass.

134. GM knew or should have known that its conduct violated the FUDTPA.

135. GM owed Plaintiff a duty to disclose the true safety, performance, and reliability of the Class Vehicles, and the devaluing of safety and performance at GM, because GM had exclusive or superior knowledge and concealed material facts and/or omitted material facts regarding the Defective Wheels and its warranty coverage.

136. Defective Wheels and the true performance of the Class Vehicles were material facts to Plaintiff and the Florida Subclass.

137. GM's violations present a continuing risk to Plaintiffs as well as to the general public. GM's unlawful acts and practices complained of herein affect the public interest.

138. GM had an ongoing duty to all GM customers to refrain from unfair and deceptive practices under the FUDTPA. All owners of the Class Vehicles suffered ascertainable loss from not obtaining the benefit of their bargains.

139. As a direct and proximate result of GM's violations of the FUDTPA, Plaintiff and the Florida Subclass have suffered injury-in-fact and/or actual damage

in paying to replace and/or repair Defective Wheels and in paying more to purchase or lease the Class Vehicles than they would have had they known of the Defective Wheels. Class members who purchased or leased the Class Vehicles either would have paid less for their vehicles or would not have purchased or leased them but for GM's violations of the FUDTPA.

140.   Plaintiff and the Florida Subclass are entitled to recover their actual damages under FLA. STAT. § 501.211(2) and attorneys' fees under FLA. STAT. § 501.2105(1).

141.   Plaintiffs also seek an order enjoining GM's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under the FUDTPA.

### COUNT III
### BREACH OF EXPRESS WARRANTY
### (FLA. STAT. § 672.313)

142.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

143.   Plaintiff brings this Count on behalf of the Florida Subclass.

144.   GM is and was at all relevant times a merchant with respect to motor vehicles.

145.   In connection with the purchase or lease of each one of its new vehicles, GM provides an express New Vehicle Limited Warranty ("NVLW") for a

period of three years or 36,000 miles, whichever occurs first.  This NVLW exists to cover the entire vehicle for any "defect in materials or workmanship."

146.  As a manufacturer of motor vehicles, GM was required to provide these warranties to purchasers of the Class Vehicles.

147.  GM's warranties formed the basis of the bargain that was reached when Plaintiff and other Class members purchased or leased their Class Vehicles equipped with the   Defective Wheels.

148.  Plaintiff and the Class members experienced defects within the warranty period.

149.  GM breached the express warranty promising to repair and correct or replace a manufacturing defect or defect in materials or workmanship of the Class Vehicles.

150.  Affording GM a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here because GM has repeatedly refused to honor its warranty.

151.  Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and Class members whole and because GM has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

152.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty promising to repair and/or correct a manufacturing defect, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

153.   GM was provided notice of these issues by numerous complaints filed against it, including those submitted to NHTSA and the instant Complaint, within a reasonable amount of time after the defect was discovered.

154.   As a direct and proximate result of GM's breach of express warranties, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY**
**(FLA. STAT. § 672.314)**

155.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

156.   Plaintiff brings this Count on behalf of the Florida Subclass.

157.   GM is and was at all relevant times a merchant with respect to motor vehicles.

158.   A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.  These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the

ordinary purpose for which cars are used.  Specifically, the Class Vehicles are inherently defective in that the Defective Wheels are not safe, merchantable or suitable for high performance sports cars.

159.   GM was provided notice of these issues by complaints lodged by consumers with NHTSA—which vehicle manufacturers like GM routinely monitor—before or within a reasonable amount of time after the allegations of the Class Vehicle defects became public.

160.   As a direct and proximate result of GM's breach of the warranties of merchantability, Plaintiffs and the other Subclass members have been damaged in an amount to be proven at trial.

**COUNT V**
**UNJUST ENRICHMENT**

161.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

162.   Plaintiff brings this Count on behalf of the Florida Subclass.

163.   GM has received and retained a benefit from Plaintiff and the Florida Subclass and inequity has resulted.

164.   GM has benefitted from selling and leasing defective Class Vehicles and replacement wheels for Class Vehicles that are equally defective.

165.   Thus, all Florida Subclass members conferred a benefit on GM.

166.   It is inequitable for GM to retain these benefits.

167.   Plaintiff and the Subclass were not aware of the true facts about the Class Vehicles, and did not benefit from GM's conduct.

168.   GM knowingly accepted the benefits of its unjust conduct.

169.   As a result of GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

### C. Claims Brought on Behalf of the Illinois Subclass

**COUNT VI**
**VIOLATIONS OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**(815 ILCS 505/1, *ET SEQ*. AND 720 ILCS 295/1A)**

170.   Plaintiff Mirenda (hereinafter "Plaintiff" for the Illinois counts) incorporates by reference all preceding allegations as though fully set forth herein.

171.   Plaintiff bring this Counts on behalf of the Illinois Subclass.

172.   Defendant is a "person" as that term is defined in 815 ILCS 505/1(c).

173.   Plaintiff and the Illinois Subclass are "consumers" as that term is defined in 815 ILCS 505/1(e).

174.   The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether

71

any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

175. GM participated in misleading, false, or deceptive practices that violated the Illinois CFA.

176. In the course of its business, GM willfully failed to disclose and/or actively concealed the fact that the Class Vehicles have Defective Wheels discussed herein and the fact that GM would not cover repair or replacement of the Defective Wheels under its warranty, and otherwise engaged in activities with a tendency or capacity to deceive. GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

177. GM was also aware that it valued profits over safety, and that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised and jeopardized the safety of the vehicle's occupants and the public.

178. By failing to disclose that the Class vehicles have Defective Wheels and were not safe, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood

behind its warranty and vehicles after they were sold, GM engaged in deceptive business practices in violation of the Illinois CFA.

179.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the other Class members, about the true performance of the Class Vehicles, the quality of the GM brand, the devaluing of safety and performance at GM, and the true value of the Class Vehicles.

180.   GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with the intent to mislead Plaintiff and the Illinois Subclass.

181.   GM knew or should have known that its conduct violated the Illinois CFA.

182.   GM owed Plaintiff a duty to disclose the true safety, performance, and reliability of the Class Vehicles, and the devaluing of safety and performance at GM, because GM had exclusive or superior knowledge and concealed material facts and/or omitted material facts regarding the Defective Wheels and its warranty coverage

183.   Defective Wheels and the true performance of the Class Vehicles were material facts to Plaintiff and the Illinois Subclass.

184.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

185.   GM had an ongoing duty to all GM customers to refrain from unfair and deceptive practices under the Illinois CFA.  All owners of the Class Vehicles suffered ascertainable loss from not obtaining the benefit of their bargains.

186.   As a direct and proximate result of GM's violations of the Illinois CFA, Plaintiff and the Illinois Subclass have suffered injury-in-fact and/or actual damage in paying to replace and/or repair Defective Wheels and in paying more to purchase or lease the Class Vehicles than they would have had they known of the Defective Wheels. Class members who purchased or leased the Class Vehicles either would have paid less for their vehicles or would not have purchased or leased them but for GM's violations of the Illinois CFA.

187.   Pursuant to 815 ILCS 505/10a(a), Plaintiff and the Illinois Subclass seek monetary relief against GM in the amount of actual damages.

188.   Plaintiff also seeks an order enjoining GM's unfair and/or deceptive acts or practices, attorneys' fees, costs, and any other just and proper relief available under the 815 ILCS 505/1 *et seq.*

## COUNT VII
## VIOLATION OF EXPRESS WARRANTY (800 ILL. COMP. STAT. 5/2-313)

189.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

190.   Plaintiff brings this Count on behalf of the Illinois Subclass.

191.   GM is and was at all relevant times a merchant with respect to motor vehicles.

192.   In connection with the purchase or lease of each one of its new vehicles, GM provides an express New Vehicle Limited Warranty ("NVLW") for a period of three years or 36,000 miles, whichever occurs first.  This NVLW exists to cover the entire vehicle for any "defect in materials or workmanship."

193.   As a manufacturer of motor vehicles, GM was required to provide these warranties to purchasers of the Class Vehicles.

194.   GM's warranties formed the basis of the bargain that was reached when Plaintiff and other Class members purchased or leased their Class Vehicles equipped with the  Defective Wheels.

195.   Plaintiff and the Class members experienced defects within the warranty period.

196.   GM breached the express warranty promising to repair and correct or replace a manufacturing defect or defect in materials or workmanship of the Class Vehicles.

197.   Affording GM a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here because GM has repeatedly refused to honor its warranty.

198.   Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and Class members whole and because GM has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

199.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty promising to repair and/or correct a manufacturing defect, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

200.   GM was provided notice of these issues by numerous complaints filed against it, including those submitted to NHTSA and the instant Complaint, within a reasonable amount of time after the defect was discovered.

201.   As a direct and proximate result of GM's breach of express warranties, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT VIII
## VIOLATION OF IMPLIED WARRANTY OF MERCHANTABILITY
### (800 ILL. COMP. STAT. 5/2-314 AND 5/2A-212)

202.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

203.   Plaintiff brings this Count on behalf of the Illinois Subclass.

204.   GM is and was at all relevant times a "merchant" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under § 5/2-103(1)(d).

205.   With respect to leases, GM is and was at all relevant times a "lessor" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-103(1)(p).

206.   A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.  These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Class Vehicles are inherently defective in that the Defective Wheels are not safe, merchantable or suitable for high performance sports cars.

207.   GM was provided notice of these issues by complaints lodged by consumers with NHTSA—which vehicle manufacturers like GM routinely monitor—before or within a reasonable amount of time after the allegations of the Class Vehicle defects became public.

208.   As a direct and proximate result of GM's breach of the warranties of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

## COUNT IX
## UNJUST ENRICHMENT

209.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

210.   Plaintiff brings this Count on behalf of the Illinois Subclass.

211.   GM has received and retained a benefit from Plaintiff and the Illinois Subclass and inequity has resulted.

212.   GM has benefitted from selling and leasing defective Class Vehicles and replacement wheels for Class Vehicles that are equally defective.

213.   Thus, all Illinois Subclass members conferred a benefit on GM.

214.   It is inequitable for GM to retain these benefits.

215.   Plaintiff and the Subclass were not aware of the true facts about the Class Vehicles, and did not benefit from GM's conduct.

216.   GM knowingly accepted the benefits of its unjust conduct.

217.   As a result of GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof

### D. Claims Brought on Behalf of the Michigan Subclass

**COUNT X**
**VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT**
**(MICH. COMP. LAWS § 445.903, *ET SEQ.*)**

218.   Plaintiff Czajka (hereinafter "Plaintiff" for the Michigan counts)

incorporates by reference all preceding allegations as though fully set forth herein.

219.   Plaintiff brings this Count on behalf of the Michigan Subclass.

220.   Plaintiff and Class members are "persons" within the meaning of

MICH. COMP. LAWS § 445.902(1)(d).

221.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits

"[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct

of trade or commerce  . . . ."  MICH. COMP. LAWS § 445.903(1).

222.   In the course of its business, GM willfully failed to disclose and/or

actively concealed the fact that the Class Vehicles have Defective Wheels

discussed herein and the fact that GM would not cover repair or replacement of the

Defective Wheels under its warranty, and otherwise engaged in activities with a

tendency or capacity to deceive.  GM also engaged in unlawful trade practices by

employing deception, deceptive acts or practices, fraud, misrepresentations, or

concealment, suppression, or omission of any material fact with intent that others

rely upon such concealment, suppression, or omission, in connection with the sale

of the Class Vehicles.

223.   GM was also aware that it valued profits over safety, and that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised and jeopardized the safety of the vehicle's occupants and the public.

224.   By failing to disclose that the Class vehicles have Defective Wheels and were not safe, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its warranty and vehicles after they were sold, GM engaged in deceptive business practices in violation of the Michigan CPA.

225.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the other Class members, about the true performance of the Class Vehicles, the quality of the GM brand, the devaluing of safety and performance at GM, and the true value of the Class Vehicles.

226.   GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with the intent to mislead Plaintiff and the Michigan Subclass.

227.   GM knew or should have known that its conduct violated the Michigan CPA.

228.   GM owed Plaintiff a duty to disclose the true safety, performance, and reliability of the Class Vehicles, and the devaluing of safety and performance at GM, because GM had exclusive or superior knowledge and concealed material facts and/or omitted material facts regarding the Defective Wheels and its warranty coverage.

229.   Defective Wheels and the true performance of the Class Vehicles were material facts to Plaintiff and the Michigan Subclass.

230.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

231.   GM had an ongoing duty to all GM customers to refrain from unfair and deceptive practices under the Michigan CPA.   All owners of the Class Vehicles suffered ascertainable loss from not obtaining the benefit of their bargains.

232.   As a direct and proximate result of GM's violations of the Michigan CPA, Plaintiff and the Michigan Subclass have suffered injury-in-fact and/or actual damage in paying to replace and/or repair Defective Wheels and in paying more to purchase or lease the Class Vehicles than they would have had they known of the Defective Wheels. Class members who purchased or leased the Class Vehicles

either would have paid less for their vehicles or would not have purchased or leased them but for GM's violations of the Michigan CPA.

233.   GM engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including:   "(c) Representing that goods or services have … characteristics . . . that they do not have  . . . ;" "(e) Representing that goods or services are of a particular standard . . . if they are of another;" "(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner."  MICH. COMP. LAWS § 445.903(1).

234.   Plaintiff seeks injunctive relief to enjoin GM from continuing its unfair and deceptive acts; monetary relief against GM measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for Plaintiff and each Michigan Subclass member;

reasonable attorneys' fees; and any other just and proper relief available under MICH. COMP. LAWS § 445.911.

## COUNT XI
## BREACH OF EXPRESS WARRANTY
## (MICH. COMP. LAWS §§ 440.2313 AND 440.2860)

235.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

236.   Plaintiff brings this Count on behalf of the Michigan Subclass.

237.   GM is and was at all relevant times a "merchant" with respect to motor vehicles under MICH. COMP. LAWS § 440.2104(1) and a "seller" of motor vehicles under § 440.2313(1).

238.   With respect to leases, GM is and was at all relevant times a "lessor" with respect to motor vehicles under MICH. COMP. LAWS §§ 440.2803(1)(p), and 440.2860.

239.   The Class Vehicles are and were at all relevant times "goods" within the meaning of MICH. COMP. LAWS §§ 440.2105(1) and 440.2803(1)(h).

240.   In connection with the purchase or lease of each one of its new vehicles, GM provides an express New Vehicle Limited Warranty ("NVLW") for a period of three years or 36,000 miles, whichever occurs first.  This NVLW exists to cover the entire vehicle for any "defect in materials or workmanship."

241.   As a manufacturer of motor vehicles, GM was required to provide these warranties to purchasers of the Class Vehicles.

242.   GM's warranties formed the basis of the bargain that was reached when Plaintiff and other Class members purchased or leased their Class Vehicles equipped with Defective Wheels.

243.   Plaintiff and the Class members experienced defects within the warranty period.

244.   GM breached the express warranty promising to repair and correct a manufacturing defect or materials or workmanship of any part supplied by GM. GM has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

245.   Affording GM a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.

246.   Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and Class members whole, and because GM has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

247.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty promising to repair and/or correct a manufacturing defect, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

248.   Also, as alleged in more detail herein, at the time GM warranted and sold the Class Vehicles, it knew that the Class Vehicles did not conform to GM's warranties and were inherently defective and GM wrongfully and fraudulently concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

249.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacements or adjustments," as many incidental and consequential damages have already been suffered due to GM's fraudulent conduct as alleged herein.  Due to GM's failure and/or continued failure to provide such limited remedy within a reasonable time, any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

250.   Finally, due to GM's breach of warranty as set forth herein, Plaintiff and the other Class members assert as an additional and/or alternative remedy, revocation of acceptance of the goods, and for a return to Plaintiff and the other Class members of the purchase price of all Class Vehicles currently owned, and for such other incidental and consequential damages as allowed.

251.   GM was provided notice of these issues by numerous complaints filed against it, including those submitted to NHTSA and the instant Complaint, within a reasonable amount of time after the defect was discovered.

252.   As a direct and proximate result of GM's breach of express warranties, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT XII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (MICH. COMP. LAWS § 440.314)

253.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

254.   Plaintiff brings this Count on behalf of the Michigan Subclass.

255.   GM was a merchant with respect to motor vehicles within the meaning of MICH. COMP. LAWS § 440.2314(1).

256.   Under MICH. COMP. LAWS § 440.2314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiff purchased or leased the Class Vehicles.

257.   A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.  These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Class Vehicles are

inherently defective in that the Defective Wheels are not safe, merchantable or suitable for high performance sports cars.

258.   GM was provided notice of these issues by complaints lodged by consumers with NHTSA—which vehicle manufacturers like GM routinely monitor—before or within a reasonable amount of time after the allegations of the Class Vehicle defects became public.

259.   As a direct and proximate result of GM's breach of the warranties of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## COUNT XIII
## UNJUST ENRICHMENT

260.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

261.   Plaintiff brings this Count on behalf of the Michigan Subclass.

262.   GM has received and retained a benefit from Plaintiff and inequity has resulted.

263.   GM has benefitted from selling and leasing defective cars whose value was artificially inflated by GM's concealment of the defective Defective Wheels, and Plaintiff and the Subclass have overpaid for the cars and been forced to pay for replacement and repair of the wheels and other costs.

264.   Thus, all Michigan Subclass members conferred a benefit on GM.

265.   It is inequitable for GM to retain these benefits.

266.   Plaintiff and the Class were not aware of the true facts about the Class Vehicles, and did not benefit from GM's conduct.

267.   GM knowingly accepted the benefits of its unjust conduct.

268.   As a result of GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**E. Claims Brought on Behalf of the New Jersey Subclass**

**COUNT XIV**
**VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT**
**(N.J. STAT. ANN. §§ 56:8-1, *ET SEQ.*)**

269.   Plaintiff Chookazian (hereinafter "Plaintiff" for the New Jersey counts) incorporates by reference all preceding allegations as though fully set forth herein.

270.   Plaintiff brings this Count on behalf of the New Jersey Subclass.

271.   GM, Plaintiff, and the New Jersey Subclass Members are "person[s]" under the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1(d).

272.   GM engaged in "sales" of "merchandise" within the meaning of N.J. Stat § 56:8-1(c), (e).   GM's actions as set forth herein occurred in the conduct of trade or commerce.

273.   The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.* ("New Jersey CFA"), prohibits unfair or deceptive acts or practices in the

conduct of any trade or commerce.  The conduct GM as set forth herein constitutes unfair or deceptive acts or practices.

274.   GM participated in misleading, false, or deceptive practices that violated the New Jersey CFA.

275.   In the course of its business, GM willfully failed to disclose and/or actively concealed the fact that the Class Vehicles have Defective Wheels discussed herein and the fact that GM would not cover repair or replacement of the Defective Wheels under its warranty, and otherwise engaged in activities with a tendency or capacity to deceive.  GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

276.   GM was also aware that it valued profits over safety, and that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised and jeopardized the safety of the vehicle's occupants and the public.

277.   By failing to disclose that the Class vehicles have Defective Wheels and were not safe, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood

behind its warranty and vehicles after they were sold, GM engaged in deceptive business practices in violation of the New Jersey CFA.

278.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the other Class members, about the true performance of the Class Vehicles, the quality of the GM brand, the devaluing of safety and performance at GM, and the true value of the Class Vehicles.

279.   GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with the intent to mislead Plaintiff and the New Jersey Subclass.

280.   GM knew or should have known that its conduct violated the New Jersey CFA.

281.   GM owed Plaintiff a duty to disclose the true safety, performance, and reliability of the Class Vehicles, and the devaluing of safety and performance at GM, because GM had exclusive or superior knowledge and concealed material facts and/or omitted material facts regarding the Defective Wheels and its warranty coverage.

282.   Defective Wheels and the true performance of the Class Vehicles were material facts to Plaintiff and the New Jersey Subclass.

283.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

284.   GM had an ongoing duty to all GM customers to refrain from unfair and deceptive practices under the New Jersey CFA.  All owners of the Class Vehicles suffered ascertainable loss from not obtaining the benefit of their bargains.

285.   As a direct and proximate result of GM's violations of the New Jersey CFA, Plaintiff and the New Jersey Subclass have suffered injury-in-fact and/or actual damage in paying to replace and/or repair Defective Wheels and in paying more to purchase or lease the Class Vehicles than they would have had they known of the Defective Wheels. Class members who purchased or leased the Class Vehicles either would have paid less for their vehicles or would not have purchased or leased them but for GM's violations of the New Jersey CFA.

286.   As a result of the foregoing wrongful conduct of GM, Plaintiffs and the New Jersey Class have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to, actual and statutory damages, treble damages, and order enjoining GM's deceptive and unfair conduct, costs and reasonable attorneys' fees under N.J. Stat. § 56:8-19, and all other just and appropriate relief.

## COUNT XV
## BREACH OF EXPRESS WARRANTY
## (N.J. STAT. ANN. § 12A:2-313 AND 12A:2A-210)

287.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

288.   Plaintiff brings this Count on behalf of the New Jersey Subclass.

289.   GM is and was at all relevant times a "merchant" with respect to motor vehicles under N.J. Stat. Ann. § 12A:2-104  and a "seller" of motor vehicles under § 12A:2-313.

290.   With respect to leases, GM is and was at all relevant times a "lessor" with respect to motor vehicles under NJ. Stat. Ann. § 12A:2A-103(1)(p), and § 12A:2A-210.

291.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.J. Stat. Ann. § 12A:2-104(1) and § 12A:2A-103(1)(h).

292.   In connection with the purchase or lease of each one of its new vehicles, GM provides an express New Vehicle Limited Warranty ("NVLW") for a period of three years or 36,000 miles, whichever occurs first.  This NVLW exists to cover the entire vehicle for any "defect in materials or workmanship."

293.   As a manufacturer of motor vehicles, GM was required to provide these warranties to purchasers of the Class Vehicles.

294.  GM's warranties formed the basis of the bargain that was reached when Plaintiff and other Class members purchased or leased their Class Vehicles equipped with the   Defective Wheels.

295.  Plaintiff and the Class members experienced defects within the warranty period.

296.  GM breached the express warranty promising to repair and correct a manufacturing defect or materials or workmanship of any part supplied by GM. GM has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

297.  Affording GM a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.

298.  Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and Class members whole and because GM has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

299.  Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty promising to repair and/or correct a manufacturing defect, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

300.   Also, as alleged in more detail herein, at the time GM warranted and sold the Class Vehicles, it knew that the Class Vehicles did not conform to GM's warranties and were inherently defective, and GM wrongfully and fraudulently concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

301.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacements or adjustments," as many incidental and consequential damages have already been suffered due to GM's fraudulent conduct as alleged herein.  Due to GM's failure and/or continued failure to provide such limited remedy within a reasonable time, any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

302.   Finally, due to GM's breach of warranty as set forth herein, Plaintiff and the other Class members assert as an additional and/or alternative remedy, revocation of acceptance of the goods, and for the return to Plaintiffs and the other Class members of the purchase price of all Class Vehicles currently owned, and for such other incidental and consequential damages as allowed.

303.    GM was provided notice of these issues by numerous complaints filed against it, including those submitted to NHTSA and the instant Complaint, within a reasonable amount of time after the defect was discovered.

304.    As a direct and proximate result of GM's breach of express warranties, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**NEW JERSEY COUNT XVI**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(N.J. STAT. ANN. § 12-A:2-314)**

305.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

306.    Plaintiff brings this Count on behalf of the New Jersey Subclass.

307.    GM is and was at all relevant times a merchant with respect to motor vehicles.

308.    A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.  These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that the Defective Wheels are not safe, merchantable or suitable for high performance sports cars.

309.    GM was provided notice of these issues by complaints lodged by consumers with NHTSA—which vehicle manufacturers like GM routinely

monitor—before or within a reasonable amount of time after the allegations of the Class Vehicle defects became public.

310.   As a direct and proximate result of GM's breach of the warranties of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## COUNT XVII
## UNJUST ENRICHMENT

311.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

312.   Plaintiff brings this Count on behalf of the New Jersey Subclass.

313.   GM has received and retained a benefit from Plaintiff and inequity has resulted.

314.   GM has benefitted from selling and leasing defective cars whose value was artificially inflated by GM's concealment of the defective Defective Wheels, and Plaintiff and the Subclass have overpaid for the cars and been forced to pay other costs.

315.   Thus, all New Jersey Subclass members conferred a benefit on GM.

316.   It is inequitable for GM to retain these benefits.

317.   Plaintiff and the Class were not aware of the true facts about the Class Vehicles, and did not benefit from GM's conduct.

318.   GM knowingly accepted the benefits of its unjust conduct.

319.  As a result of GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**F.  Claims Brought on Behalf of the New York Subclass**

**NEW YORK COUNT XVIII**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**
**(N.Y. GEN. BUS. LAW § 349)**

320.  Plaintiff Williams (hereinafter "Plaintiff" for the New York counts) incorporates by reference all preceding allegations as though fully set forth herein.

321.  Plaintiff brings this Count on behalf of the New York Subclass.

322.  New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

323.  In the course of GM's business, it willfully failed to disclose and actively concealed the dangerous risk of the Defective Wheels in Class Vehicles as described above.  Accordingly, GM engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in N.Y. Gen. Bus. Law § 349, including engaging in conduct likely to deceive.

324.  GM's actions as set forth above occurred in the conduct of trade or commerce.

325.  Because GM's deception takes place in the context of automobile safety, its deception affects the public interest.  Further, GM's unlawful conduct

constitutes unfair acts or practices that have the capacity to deceive consumers, and that have a broad impact on consumers at large.

326.   GM's conduct proximately caused injuries to Plaintiff and the other Class members.

327.   Plaintiff and the other Class members were injured as a result of GM's conduct in that Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain.  These injuries are the direct and natural consequence of GM's misrepresentations and omissions.

**NEW YORK COUNT XIX**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350**
**(N.Y. GEN. BUS. LAW § 350)**

328.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

329.   Plaintiff brings this Count on behalf of the New York Subclass.

330.   New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]"   False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of … representations [made] with respect to the commodity…."  N.Y. Gen. Bus. Law § 350-a.

331.   GM caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or

misleading, and which were known, or which by the exercise of reasonable care should have been known to GM, to be untrue and misleading to consumers, including Plaintiff and the other Class members.

332.   GM has violated N.Y. Gen. Bus. Law § 350 because the omissions regarding the Defective Wheels in Class Vehicles as described above, and the fact that GM would not cover repair or replacement of the wheels under its warranty, were material and likely to deceive a reasonable consumer.

333.   Plaintiff and the other Class members have suffered injury, including the loss of money or property, as a result of GM's false advertising.  In purchasing or leasing their Class Vehicles, Plaintiff and the other Class members relied on the representations and/or omissions of GM with respect to the safety, quality, functionality, and reliability of the Class Vehicles and the coverage of GM's "Bumper-to-Bumper" warranty.

334.   Accordingly, Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of the bargain for their Class Vehicles.

335.   Plaintiff, individually and on behalf of the other New York Subclass members, requests that this Court enter such orders or judgments as may be necessary to enjoin GM from continuing its unfair, unlawful and/or deceptive practices.  Plaintiff and the other Class members are also entitled to recover their

actual damages or $500, whichever is greater.  Because GM acted willfully or knowingly, Plaintiff and the other Class members are entitled to recover three times actual damages, up to $10,000.

## COUNT XX
## BREACH OF EXPRESS WARRANTY
### (N.Y. U.C.C. § 2-313)

336.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

337.   Plaintiff brings this Count on behalf of the New York Subclass.

338.   GM is and was at all relevant times a merchant with respect to motor vehicles.

339.   In connection with the purchase or lease of each one of its new vehicles, GM provides an express New Vehicle Limited Warranty ("NVLW") for a period of three years or 36,000 miles, whichever occurs first.  This NVLW exists to cover the entire vehicle for any "defect in materials or workmanship."

340.   GM's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with Defective Wheels from GM.

341.   GM breached the express warranty to repair or replace defects in materials and workmanship of any part of the Class Vehicles.

342.   Furthermore, the limited warranty of repair and/or replacement fails in its essential purpose because the contractual remedy is insufficient to make

Plaintiff and the other Class members whole and because GM has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

343. Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or replacement to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Class members, seek all remedies as allowed by law.

344. Also, as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to GM's Limited Warranty and were inherently defective, and GM wrongfully and fraudulently concealed material facts regarding its Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

345. Due to GM's breach of warranty as set forth herein, Plaintiff and the other New York Subclass members assert as an additional and/or alternative remedy, as set forth in N.Y. U.C.C. § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Subclass members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed under N.Y. U.C.C. §§ 2-711 and 2-608.

346. GM was provided notice of these issues by numerous complaints filed against it, including those submitted to NHTSA and the instant Complaint.

347.  As a direct and proximate result of GM's breach of express warranty, Plaintiff and the other Subclass members have been damaged in an amount to be determined at trial.

**COUNT XXI**
**UNJUST ENRICHMENT**

348.  Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

349.  Plaintiff brings this Count on behalf of the New York Subclass.

350.  GM has received and retained a benefit from Plaintiff and inequity has resulted.

351.  GM has benefitted from selling and leasing defective cars whose value was artificially inflated by GM's concealment of the Defective Wheels, and Plaintiff and the Subclass have overpaid for the cars and been forced to pay other costs.

352.  Thus, all New York Subclass members conferred a benefit on GM.

353.  It is inequitable for GM to retain these benefits.

354.  Plaintiff and the Subclass were not aware of the true facts about the Class Vehicles, and did not benefit from GM's conduct.

355.  GM knowingly accepted the benefits of its unjust conduct.

356.  As a result of GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

### G. Claims Brought on Behalf of the Pennsylvania Class

**COUNT XXII**
**VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**(73 PA. CONS. STAT. § 201-1, *ET SEQ.*)**

357.   Plaintiff Bossart incorporates by reference all preceding allegations as though fully set forth herein.

358.   Plaintiff brings this Count on behalf of the Pennsylvania Subclass.

359.   Plaintiff and the Subclass purchased or leased their Class Vehicles primarily for personal, family or household purposes within the meaning of 73 PA. CONS. STAT. § 201-9.2.

360.   All of the acts complained of herein were perpetrated by GM in the course of trade or commerce within the meaning of 73 PA. CONS. STAT. § 201-2(3).

361.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including:  (i) "Representing that goods or services have … characteristics, …. Benefits or qualities that they do not have;" (ii) "Representing that goods or services are of a particular standard, quality or grade … if they are of another;:" (iii) "Advertising goods or services with intent not to sell them as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding."  73 PA. CONS. STAT. § 201-2(4).

362.   GM engaged in unlawful trade practices including representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not

have; representing that Class Vehicles are of a particular standard and quality when they are not; advertising Class Vehicles with the intent not to sell them as advertised; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

363.  GM participated in misleading, false, or deceptive practices that violated the Pennsylvania CPL.

364.  In the course of its business, GM willfully failed to disclose and/or actively concealed the fact that the Class Vehicles have Defective Wheels discussed herein and the fact that GM would not cover repair or replacement of the Defective Wheels under its warranty, and otherwise engaged in activities with a tendency or capacity to deceive.  GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

365.  GM was also aware that it valued profits over safety, and that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised and jeopardized the safety of the vehicle's occupants and the public.

366.   By failing to disclose that the Class vehicles have Defective Wheels and were not safe, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its warranty and vehicles after they were sold, GM engaged in deceptive business practices in violation of the Pennsylvania CPL.

367.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the other Class members, about the true performance of the Class Vehicles, the quality of the GM brand, the devaluing of safety and performance at GM, and the true value of the Class Vehicles.

368.   GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with anintent to mislead Plaintiff and the Pennsylvania Subclass.

369.   GM knew or should have known that its conduct violated the Pennsylvania CPL.

370.   GM owed Plaintiff a duty to disclose the true safety, performance, and reliability of the Class Vehicles, and the devaluing of safety and performance at GM, because GM had exclusive or superior knowledge and concealed material facts and/or omitted material facts regarding the Defective Wheels and its warranty coverage.

371. Defective Wheels and the true performance of the Class Vehicles were material facts to Plaintiff and the Pennsylvania Subclass. A vehicle made by a reputable manufacturer of safe, high-performing vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe, vehicles that conceals defects rather than promptly remedying them.

372. GM's violations present a continuing risk to Plaintiff as well as to the general public. GM's unlawful acts and practices complained of herein affect the public interest.

373. GM had an ongoing duty to all GM customers to refrain from unfair and deceptive practices under the Pennsylvania CPL. All owners of the Class Vehicles suffered ascertainable loss from not obtaining the benefit of their bargains.

374. As a direct and proximate result of GM's violations of the Pennsylvania CPL, Plaintiff and the Pennsylvania Subclass have suffered injury-in-fact and/or actual damage in paying to replace and/or repair Defective Wheels and in paying more to purchase or lease the Class Vehicles than they would have had they known of the Defective Wheels. Class members who purchased or leased the Class Vehicles either would have paid less for their vehicles or would not have purchased or leased them but for GM's violations of the Pennsylvania CPL.

375.   GM is liable to Plaintiff and the Pennsylvania Subclass for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs.   73 PA. CONS. STAT. § 201-9.2(a).

### COUNT XXIII
### BREACH OF EXPRESS WARRANTY
### (13 PA. CONS. STAT. ANN. § 2313)

376.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

377.   Plaintiff brings this Count on behalf of the Pennsylvania Subclass.

378.   GM is and was at all relevant times a "merchant" with respect to motor vehicles under 13 PA. CONS. STAT. ANN. § 2104 and a "seller" of motor vehicles under 13 PA. CONS. STAT. ANN. § 2313.

379.   With respect to leases, GM is and was at all relevant times a "lessor" with respect to motor vehicles under 13 PA. CONS. STAT. ANN. § 2A103 and 2A210.

380.   The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 PA. CONS. STAT. ANN. § 2105 and § 2A103.

381.   In connection with the purchase or lease of each one of its new vehicles, GM provides an express New Vehicle Limited Warranty ("NVLW") for a period of three years or 36,000 miles, whichever occurs first.  This NVLW exists to cover the entire vehicle for any "defect in materials or workmanship."

382.   As a manufacturer of motor vehicles, GM was required to provide these warranties to purchasers of its Class Vehicles.

383.   GM's warranties formed the basis of the bargain that was reached when Plaintiff and other Class members purchased or leased their Class Vehicles equipped with the defective Defective Wheels system from GM.

384.   Plaintiff and the Class members experienced defects within the warranty period.

385.   GM breached the express warranty promising to repair and correct a manufacturing defect or materials or workmanship of any part supplied by GM. GM has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

386.   Affording GM a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.

387.   Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Subclass members whole, and because GM has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

388.   Accordingly, recovery by Plaintiff and the other Subclass members is not limited to the limited warranty promising to repair and/or correct a

manufacturing defect, and Plaintiff, individually and on behalf of the other Subclass members, seeks all remedies as allowed by law.

389.   Also, as alleged in more detail herein, at the time GM warranted and sold the Class Vehicles, it knew that the Class Vehicles did not conform to GM's warranties and were inherently defective, and GM wrongfully and fraudulently concealed material facts regarding its Class Vehicles.   Plaintiff and the other Subclass members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

390.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacements or adjustments," as many incidental and consequential damages have already been suffered due to GM's fraudulent conduct as alleged herein.   Due to GM's failure and/or continued failure to provide such limited remedy within a reasonable time, any limitation on Plaintiff and the other Subclass members' remedies would be insufficient to make Plaintiff and the other Subclass members whole.

391.   GM was provided notice of these issues by numerous complaints filed against it, including complaints to NHTSA and the instant Complaint, within a reasonable amount of time after the defect was discovered.

392.   As a direct and proximate result of GM's breach of express warranties, Plaintiff and the other Subclass members have been damaged in an amount to be determined at trial.

## COUNT XXIV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (13 PA. CONS. STAT. ANN. § 2314)

393.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

394.   Plaintiff brings this Count on behalf of the Pennsylvania Subclass.

395.   GM is and was at all relevant times a merchant with respect to motor vehicles.

396.   A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.  These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Class Vehicles are inherently defective in that the Defective Wheels are not safe, merchantable or suitable for high performance sports cars.

397.   GM was provided notice of these issues by complaints lodged by consumers with NHTSA—which vehicle manufacturers like GM routinely monitor—before or within a reasonable amount of time after the allegations of the Class Vehicle defects became public.

398. As a direct and proximate result of GM's breach of the warranties of merchantability, Plaintiffs and the other Subclass members have been damaged in an amount to be proven at trial.

## COUNT XXV
## UNJUST ENRICHMENT

399. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

400. Plaintiff brings this Count on behalf of the Pennsylvania Subclass.

401. GM has received and retained a benefit from Plaintiff and the Subclass and inequity has resulted.

402. GM has benefitted from selling and leasing defective cars whose value was artificially inflated by GM's concealment of the Defective Wheels, and Plaintiff and the Class have overpaid for the cars and been forced to pay other costs.

403. Thus, all Pennsylvania Subclass members conferred a benefit on GM.

404. It is inequitable for GM to retain these benefits.

405. Plaintiff and the Subclass were not aware of the true facts about the Class Vehicles, and did not benefit from GM's conduct.

406. GM knowingly accepted the benefits of its unjust conduct.

407. As a result of GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## H. Claims Brought on Behalf of the South Carolina Subclass

### COUNT XXVI
### VIOLATIONS OF THE UNFAIR TRADE PRACTICES ACT
#### (S.C. CODE § 39-5-10, *ET SEQ.*)

408.   Plaintiff Turner (hereinafter "Plaintiff" for the South Carolina counts) incorporates by reference all preceding allegations as though fully set forth herein.

409.   Plaintiff brings this Count on behalf of the South Carolina Subclass

410.   GM, Plaintiff, and the South Carolina Subclass members are "person[s]" under the South Carolina Unfair Trade Practices Act ("SCUTPA")

411.   GM engaged in "sales" of "merchandise" within the meaning of SCUTPA.   GM's actions as set forth herein occurred in the conduct of trade or commerce.

412.   SCUTPA prohibits unconscionable, unfair or deceptive acts or practices in the conduct of any trade or commerce.   The conduct GM as set forth herein constitutes unconscionable, unfair or deceptive acts or practices.

413.   GM participated in misleading, false, or deceptive practices that violated the SCUTPA.

414.   In the course of its business, GM willfully failed to disclose and/or actively concealed the fact that the Class Vehicles have Defective Wheels discussed herein and the fact that GM would not cover repair or replacement of the Defective Wheels under its warranty, and otherwise engaged in activities with a tendency or capacity to deceive.   GM also engaged in unlawful trade practices by

112

employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

415. GM was also aware that it valued profits over safety, and that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised and jeopardized the safety of the vehicle's occupants and the public.

416. By failing to disclose that the Class vehicles have Defective Wheels and were not safe, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its warranty and vehicles after they were sold, GM engaged in deceptive business practices in violation of the New Jersey CFA.

417. GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the other Class members, about the true performance of the Class Vehicles, the quality of the GM brand, the devaluing of safety and performance at GM, and the true value of the Class Vehicles.

418.   GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with the intent to mislead Plaintiff and the South Carolina Subclass.

419.   GM knew or should have known that its conduct violated the SCUTPA.

420.   GM owed Plaintiff a duty to disclose the true safety, performance, and reliability of the Class Vehicles, and the devaluing of safety and performance at GM, because GM had exclusive or superior knowledge and concealed material facts and/or omitted material facts regarding the Defective Wheels and its warranty coverage.

421.   Defective Wheels and the true performance of the Class Vehicles were material facts to Plaintiff and the South Carolina Subclass.

422.   GM's violations present a continuing risk to Plaintiffs as well as to the general public.  GM's unlawful acts and practices complained of herein affect the public interest.

423.   GM had an ongoing duty to all GM customers to refrain from unconscionable, unfair and deceptive practices under the SCUTPA.  All owners of the Class Vehicles suffered ascertainable loss from not obtaining the benefit of their bargains.

424.   As a direct and proximate result of GM's violations of the SCUTPA, Plaintiff and the South Carolina Subclass have suffered injury-in-fact and/or actual damage in paying to replace and/or repair Defective Wheels and in paying more to purchase or lease the Class Vehicles than they would have had they known of the Defective Wheels. Subclass members who purchased or leased the Class Vehicles either would have paid less for their vehicles or would not have purchased or leased them but for GM's violations of the SCUTPA.

425.   As a result of the foregoing wrongful conduct of GM, Plaintiffs and the South Carolina Subclass have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to, actual and statutory damages, treble damages, and order enjoining GM's deceptive and unfair conduct, costs and reasonable attorneys' fees, and all other just and appropriate relief.

## COUNT XXVII
## BREACH OF EXPRESS WARRANTY
### (S.C. CODE § 36-2-313)

426.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

427.   Plaintiff brings this Count on behalf of the South Carolina Subclass.

428.   In connection with the purchase or lease of each one of its new vehicles, GM provides an express New Vehicle Limited Warranty ("NVLW") for a

period of three years or 36,000 miles, whichever occurs first.  This NVLW exists to cover the entire vehicle for any "defect in materials or workmanship."

429.   As a manufacturer of motor vehicles, GM was required to provide these warranties to purchasers of the Class Vehicles.

430.   GM's warranties formed the basis of the bargain that was reached when Plaintiff and other Subclass members purchased or leased their Class Vehicles equipped with the   Defective Wheels.

431.   Plaintiff and the Subclass members experienced defects within the warranty period.

432.   GM breached the express warranty promising to repair or replace a manufacturing defect or materials or workmanship of any part of the Class Vehicles.

433.   Affording GM a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.

434.   Furthermore, the limited warranty promising to repairor replace a defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and Subclass members whole and because GM has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

435.   Accordingly, recovery by Plaintiff and the other Subclass members is not limited to the limited warranty promising to repair or replace a defect, and

Plaintiff, individually and on behalf of the other Subclass members, seeks all remedies as allowed by law.

436.   Also, as alleged in more detail herein, at the time GM warranted and sold the Class Vehicles, it knew that the Class Vehicles did not conform to GM's warranties and were inherently defective, and GM wrongfully and fraudulently concealed material facts regarding its Class Vehicles.  Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

437.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacements or adjustments," as many incidental and consequential damages have already been suffered due to GM's fraudulent conduct as alleged herein.  Due to GM's failure and/or continued failure to provide such limited remedy within a reasonable time, any limitation on Plaintiff's and the other Subclass members' remedies would be insufficient to make Plaintiff and the other Class members whole.

438.   Finally, due to GM's breach of warranty as set forth herein, Plaintiff and the other Subclass members assert as an additional and/or alternative remedy, revocation of acceptance of the goods, and for the return to Plaintiff and the other Subclass members of the purchase price of all Class Vehicles currently owned, and for such other incidental and consequential damages as allowed.

439.   GM was provided notice of these issues by numerous complaints filed against it, including those submitted to NHTSA and the instant Complaint, within a reasonable amount of time after the defect was discovered.

440.   As a direct and proximate result of GM's breach of express warranties, Plaintiff and the other Subclass members have been damaged in an amount to be determined at trial.

## COUNT XXVIII
## BREACH OF IMPLIED WARRANTY
### (S.C. CODE § 36-2-314)

441.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

442.   Plaintiff brings this Count on behalf of the South Carolina Subclass.

443.   GM is and was at all relevant times a merchant with respect to motor vehicles.

444.   A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.  These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that the Defective Wheels are not safe, merchantable or suitable for high performance sports cars.

445.   GM was provided notice of these issues by complaints lodged by consumers with NHTSA—which vehicle manufacturers like GM routinely monitor—before or within a reasonable amount of time after the allegations of the Class Vehicle defects became public.

446.   As a direct and proximate result of GM's breach of the warranties of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## COUNT XXIX
## UNJUST ENRICHMENT

447.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

448.   Plaintiff brings this Count on behalf of the South Carolina Subclass.

449.   GM has received and retained a benefit from Plaintiff and the Subclass and inequity has resulted.

450.   GM has benefitted from selling and leasing defective cars whose value was artificially inflated by GM's concealment of the Defective Wheels, and Plaintiff and the Subclass have overpaid for the cars and been forced to pay other costs.

451.   Thus, all South Carolina Subclass members conferred a benefit on GM.

452.   It is inequitable for GM to retain these benefits.

453. Plaintiff and the Subclass were not aware of the true facts about the Class Vehicles, and did not benefit from GM's conduct.

454. GM knowingly accepted the benefits of its unjust conduct.

455. As a result of GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**I. Claims Brought on Behalf of the Texas Subclass**

**COUNT XXX**
**VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT**
**(TEX. BUS. & COM. CODE §§ 17.41, *ET SEQ.*)**

456. Plaintiff Barker (hereinafter "Plaintiff" for the Texas counts) incorporates by reference all preceding allegations as though fully set forth herein.

457. Plaintiff brings this Count on behalf of the Texas Subclass.

458. Plaintiff and the Texas Subclass are individuals, partnerships or corporations with assets of less than $25 million (or are controller by corporations or entities with less than $25 million in assets), see Tex. Bus. & Com. Code § 17.41, and are therefore "consumers" pursuant to Tex. Bus. & Com. Code § 17.45(4).

459. GM is a "person" within the meaning of TEX. BUS. & COM. CODE § 17.45(3).

460. GM's conduct complained of herein affected "trade," "commerce" or "consumer transactions" within the meaning of TEX. BUS. & COM. CODE § 17.46(A).

461.   The Texas Deceptive Trade Practices Act ("Texas DTPA") prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," TEX. BUS. & COM. CODE § 17.46(a), and an "unconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE §§ 17.45(5) and 17.50(a)(3).

462.   In the course of its business, GM willfully failed to disclose and actively concealed the Defective Wheels discussed herein and otherwise engaged in activities with a tendency or capacity to deceive.  GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

463.   GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the other Subclass members, about the true performance of the Class Vehicles, the quality of the GM brand, the devaluing of safety and performance at GM, and the true value of the Class Vehicles.

464.  GM intentionally and knowingly misrepresented material facts regarding the Class Vehicles with the intent to mislead Plaintiff and the Texas Subclass.

465.  GM knew or should have known that its conduct violated the Texas DTPA.

466.  As alleged above, GM made material statements about the safety and utility of the Class Vehicles and the GM brand that were either false or misleading.

467.  GM owed Plaintiff and the Subclass a duty to disclose the true safety, performance, and reliability of the Class Vehicles, and the devaluing of safety and performance at GM, because GM had exclusive or superior knowledge and concealed material facts and/or omitted material facts regarding the Defective Wheels and its warranty coverage.

468.  GM's deception and fraud regarding the Defective Wheels and the true performance of the Class Vehicles were material to Plaintiff and the Texas Subclass.

469.  Plaintiff and the Texas Subclass suffered ascertainable loss caused by GM's misrepresentations and its concealment of and failure to disclose material information.  Class members who purchased the Class Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all but for GM's violations of the Texas DTPA.

470. GM had an ongoing duty to all GM customers to refrain from unfair and deceptive practices under the Texas DTPA. All owners of the Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of GM's deceptive and unfair acts and practices made in the course of GM's business.

471. GM's violations present a continuing risk to Plaintiff as well as to the general public. GM's unlawful acts and practices complained of herein affect the public interest.

472. As a direct and proximate result of GM's violations of the Texas DTPA, Plaintiff and the Texas Subclass have suffered injury-in-fact and/or actual damage.

473. Pursuant to TEX. BUS. & COM. CODE § 17.50, Plaintiff and the Texas Subclass seek monetary relief against GM measured as actual damages in an amount to be determined at trial, multiple damages for knowing and intentional violations, pursuant to § 17.50(b)(1), and attorneys' fees, costs, and any other just and proper relief available under the Texas DTPA.

474. Plaintiff has sent a letter in accordance with TEX. BUS. & COM. CODE § 17.505(a). Unless GM has remedied its unlawful conduct within the requisite time period, Plaintiff seeks all damages and relief to which Plaintiff and the Texas Subclass are entitled.

## COUNT XXXI
## BREACH OF EXPRESS WARRANTY
## (TEX. BUS. & COM. CODE § 2.313)

475.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

476.    Plaintiff brings this Count on behalf of the Texas Subclass.

477.   GM is and was at all relevant times a "merchant" with respect to motor vehicles under TEX. BUS. & COM. CODE § 2.104(a) and a "seller" of motor vehicles under § 2.313(a).

478.   The Class Vehicles are and were at all relevant times "goods" within the meaning of TEX. BUS. & COM. CODE § 2.105(a) and § 2.313.

479.   In connection with the purchase or lease of each one of its new vehicles, GM provides an express New Vehicle Limited Warranty ("NVLW") for a period of three years or 36,000 miles, whichever occurs first.  This NVLW exists to cover the entire vehicle for any "defect in materials or workmanship."

480.   As a manufacturer of motor vehicles, GM was required to provide these warranties to purchasers of its Class Vehicles.

481.   GM's warranties formed the basis of the bargain that was reached when Plaintiff and other Subclass members purchased or leased their Class Vehicles equipped with the Defective Wheels.

482.   Plaintiff and the Subclass members experienced defects within the warranty period.

483.   GM breached the express warranty promising to repair or replace a defect in materials or workmanship of any part supplied by GM.

484.   Affording GM a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.

485.   Furthermore, the limited warranty promising to repair and/or replace a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Subclass members whole, and because GM has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

486.   Accordingly, recovery by Plaintiff and the other Subclass members is not limited to the limited warranty promising to repair and/or correct a manufacturing defect, and Plaintiff, individually and on behalf of the other Subclass members, seeks all remedies as allowed by law.

487.   Also, as alleged in more detail herein, at the time GM warranted and sold the Class Vehicles, it knew that the Class Vehicles did not conform to GM's warranties and were inherently defective, and GM wrongfully and fraudulently concealed material facts regarding its Class Vehicles.   Plaintiff and the other

Subclass members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

488.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of replacements or adjustments as many incidental and consequential damages have already been suffered due to GM's fraudulent conduct as alleged herein.  Due to GM's failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Subclass members' remedies would be insufficient to make Plaintiffs and the other Subclass members whole.

489.   GM was provided notice of these issues by numerous complaints filed against it, including complaints to NHTSA and the instant Complaint, within a reasonable amount of time after the defect was discovered.

490.   As a direct and proximate result of GM's breach of express warranties, Plaintiff and the other Subclass members have been damaged in an amount to be determined at trial.

## COUNT XXXII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (TEX. BUS. & COM. CODE § 2.314)

491.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

492.   Plaintiff brings this Count on behalf of the Texas Subclass.

493.   GM is and was at all relevant times a merchant with respect to motor vehicles.

494.   A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.  These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that the Defective Wheels are not safe, merchantable or suitable for high performance sports cars.

495.   GM was provided notice of these issues by complaints lodged by consumers with NHTSA—which vehicle manufacturers like GM routinely monitor—before or within a reasonable amount of time after the allegations of the Class Vehicle defects became public.

496.   As a direct and proximate result of GM's breach of the warranties of merchantability, Plaintiff and the other Subclass members have been damaged in an amount to be proven at trial.

## COUNT XXXIII
## UNJUST ENRICHMENT

497.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

498.   Plaintiff brings this Count on behalf of the Texas Subclass.

499. GM has received and retained a benefit from Plaintiff and the Subclass and inequity has resulted.

500. GM has benefitted from selling and leasing defective cars whose value was artificially inflated by GM's concealment of the defective Defective Wheels, and Plaintiff and the Subclass have overpaid for the cars and been forced to pay other costs.

501. Thus, all Texas Subclass members conferred a benefit on GM.

502. It is inequitable for GM to retain these benefits.

503. Plaintiff and the Subclass were not aware of the true facts about the Class Vehicles, and did not benefit from GM's conduct.

504. GM knowingly accepted the benefits of its unjust conduct.

505. As a result of GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## VIII.  REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.      Certification of the proposed Classes, including appointment of Plaintiffs' Counsel as Class Counsel;

B.      An order temporarily and permanently enjoining GM from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.      Appropriate injunctive relief;

D.      Equitable relief in the form of buyback of the Class Vehicles;

E.      Costs, restitution, damages, including statutory and damages and penalties, and disgorgement in an amount to be determined at trial;

F.      An order requiring GM to pay both pre- and post-judgment interest on any amounts awarded;

G.      An award of costs and attorneys' fees; and

H.      Such other or further relief as may be appropriate.

## IX.  DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.


DATED: April 30, 2020                    Respectfully submitted,


                                         */s/ E. Powell Miller*
                                         E. Powell Miller (P39487)
                                         Sharon S. Almonrode (P33938)
                                         Dennis A. Lienhardt (P81118)
                                         **THE MILLER LAW FIRM, P.C.**
                                         950 West University Drive, Suite 300
                                         Rochester, MI  48307
                                         Tel: (248) 841-2200
                                         Fax: (248) 652-2852
                                         epm@millerlawpc.com
                                         ssa@millerlawpc.com
                                         dal@millerlawpc.com

                                         Peter A. Muhic
                                         **LEVAN LAW GROUP LLC**
                                         One Logan Square – 27th Floor
                                         Philadelphia, PA 19103-6933
                                         Tel: 215.561.1500
                                         Fax: 215.827.5390
                                         pmuhic@levanlawgroup.com

                                         Edwin J. Kilpela, Jr
                                         **CARLSON LYNCH LLP**
                                         1133 Penn Avenue, 5th Floor
                                         Pittsburgh, PA 15222
                                         Tel: 412.322.9243
                                         Fax: 412.231.0246
                                         ekilpela@carlsonlynch.com

                                         Jonathan M. Jagher
                                         Kimberly A. Justice

**FREED KANNER LONDON
& MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
Tel: (610) 234-6487
Fax: (224) 632-4521
jjagher@fklmlaw.com
kjustice@fklmlaw.com

Michael K. Yarnoff
**KEHOE LAW FIRM, P.C.**
Two Penn Center Plaza, Suite 1020
1500 JFK Boulevard
Philadelphia, Pennsylvania 19102
Tel: (215) 792-6676
Fax: (215) 792-6676
myarnoff@kehoelawfirm.com