## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JOSEPH BOSSART, ERNEST HOLGUIN, DAVID GOLDBERG, JAMES KALKSTEIN, ROBERT SMITH, CAROLE SMITH, DENNIS GLAZER, MARIANNE GLAZER, MICHAEL ROTH, RONNIE E. BARKER, RICHARD BARRINGTON, STEVEN M. CHOOKAZIAN, ERIC CZAJKA, ALFRED LUPIS, PHILLIP MIRENDA, CHRISTA ROCHFORD, DERROL TURNER, and TROY WILLIAMS, on behalf of themselves and all others similarly situated, | Case No. 2:20-CV-11057-BAF-DRG<br><br>Honorable Bernard A. Friedman<br><br>Magistrate Judge David R. Grand<br><br><br>Date: _____<br>Time: _____<br>Place: _____ |
|      Plaintiffs, | ORAL ARGUMENT REQUESTED |
| v. | |
| GENERAL MOTORS LLC, a Delaware limited liability company, | |
|      Defendant. | |

## DEFENDANT'S MOTION TO DISMISS
## CONSOLIDATED CLASS ACTION COMPLAINT

General Motors LLC ("GM") respectfully moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims in the Consolidated Class Action Complaint ("CCAC") for failure to state a claim upon which relief can be granted, and pursuant to Federal Rule of Civil Procedure 12(b)(1) with respect to Plaintiffs' "nationwide" claims for unjust enrichment, "nationwide" claims for violations of the

1

Magnuson-Moss Warranty Act, and request for injunctive relief. The grounds and legal authority are set forth in the accompanying memorandum. Pursuant to Local Rule 7.1(a), the parties met and conferred on October 26, 2020. GM requested Plaintiffs' consent to this motion, and Plaintiffs do not consent.

Respectfully submitted this 26th day of October, 2020.

**KING & SPALDING LLP**

*/s/ Jacqueline Glassman*
Jacqueline Glassman (P54084)
1700 Pennsylvania Avenue, NW, 2nd Floor
Washington, DC 20006
Tel: (202) 737 0500
Fax: (202) 626 3737
jglassman@kslaw.com

Livia M. Kiser
Andrew J. Chinsky
353 N Clark Street, 12th Floor
Chicago, Illinois 60654
Tel: (312) 995 6333
Fax: (312) 995 6330
lkiser@kslaw.com
achinsky@kslaw.com

Susan M. Clare
Madison H. Kitchens
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Tel: (404) 572 4600
Fax: (404) 572 5100
sclare@kslaw.com
mkitchens@kslaw.com

*Attorneys for Defendant*
*General Motors LLC*

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JOSEPH BOSSART, ERNEST HOLGUIN, DAVID GOLDBERG, JAMES KALKSTEIN, ROBERT SMITH, CAROLE SMITH, DENNIS GLAZER, MARIANNE GLAZER, MICHAEL ROTH, RONNIE E. BARKER, RICHARD BARRINGTON, STEVEN M. CHOOKAZIAN, ERIC CZAJKA, ALFRED LUPIS, PHILLIP MIRENDA, CHRISTA ROCHFORD, DERROL TURNER, and TROY WILLIAMS, on behalf of themselves and all others similarly situated, | Case No. 2:20-CV-11057-BAF-DRG<br><br>Honorable Bernard A. Friedman<br><br>Magistrate Judge David R. Grand |
| Plaintiffs, | |
| v. | |
| GENERAL MOTORS LLC, a Delaware limited liability company, | |
| Defendant. | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................iv

STATEMENT OF ISSUES PRESENTED................................................xx

STATEMENT OF CONTROLLING OR MOST APPROPRIATE
     AUTHORITY ....................................................................................xxiv

INTRODUCTION ........................................................................................1

BACKGROUND ..........................................................................................3

ARGUMENT ................................................................................................7

I.     Plaintiffs' Express Warranty Claims Fail on Multiple Grounds. ...................8

     A.     The Alleged Design Defect Falls Outside Warranty Coverage. ...........8

     B.     Plaintiffs Failed to Comply with Warranty Notice, Presentment,
          and Coverage Requirements..................................................................13

     C.     Plaintiffs Mirenda, Turner, Barker, Holguin, and Kalkstein Fail
          to Plead That Their Vehicles Were Covered by the NVLW at
          the Time of Repair..................................................................................16

II.     Plaintiffs' Implied Warranty Claims Should Be Dismissed.........................17

     A.     Plaintiffs Do Not Allege That Their Vehicles Were
          Unmerchantable at the Time of Sale. ...................................................17

     B.     Implied Warranty Claims of Plaintiffs Rochford, Mirenda,
          Czajka, Kalkstein, and the Glazers Fail for Lack of Privity. ..............21

     C.     Plaintiffs Mirenda, Turner, Barker, Holguin, and Kalkstein Fail
          to Plead That Their Vehicles Remained Covered by an Implied
          Warranty. ...............................................................................................22

III.     Plaintiffs' Magnuson-Moss Warranty Act Claims Fail.................................22

IV.     Plaintiffs' Unjust Enrichment Claims Fail as a Matter of Law.....................23

V.     The "Nationwide" Magnuson-Moss and Unjust Enrichment Claims
     Should Be Dismissed.........................................................................25

VI.   Plaintiffs' State Consumer Protection Claims Fail as a Matter of Law. ...... 27

    A.   Plaintiffs Cannot Show GM Had Knowledge of the Alleged Defect. .................................................................................... 27

    B.   Plaintiffs Barrington and Holguin Fail to Plead Claims Under California's Consumer Protection Laws. .............................. 32

    C.   Plaintiff Rochford Has Not Alleged a Violation of the Florida Deceptive and Unfair Trade Practices Act. ......................... 34

    D.   Plaintiff Mirenda Has Not Alleged a Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. ........ 36

    E.   Plaintiff Lupis Cannot State a Claim Under the Massachusetts Consumer Protection Act. ..................................................... 37

    F.   Plaintiffs Czajka and Kalkstein Cannot Bring a Michigan Consumer Protection Act Claim. ......................................... 38

    G.   Plaintiffs' New Hampshire Consumer Protection Act Claim Must Be Dismissed. ............................................................ 40

    H.   Plaintiff Chookazian's New Jersey Consumer Fraud Act Claim Fails as a Matter of Law. ..................................................... 40

    I.   Plaintiff Williams Does Not Plead Plausible Violations of New York General Business Law §§ 349 and 350. ..................... 42

    J.   Plaintiffs Bossart's and Roth's Pennsylvania Unfair Trade Practices and Consumer Protection Law Claims Should be Dismissed. ................................................................................ 44

    K.   The Glazers' Ohio Consumer Sales Practices Act Claim Should Be Dismissed. ............................................................ 45

    L.   Plaintiff Turner's South Carolina Unfair Trade Practices Act Claim Fails as a Matter of Law. ........................................ 46

    M.   Plaintiff Barker's Texas Deceptive Trade Practices Act Claim Fails for Multiple Reasons. ................................................ 48

VII.   Plaintiffs' Requests for Injunctive Relief Should Be Dismissed. ................. 50

CONCLUSION ..................................................................................................50

CERTIFICATE OF COMPLIANCE ......................................................................52

CERTIFICATE OF SERVICE ...............................................................................53

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Adams v. Nissan N. Am., Inc.*,
   395 F. Supp. 3d 838 (S.D. Tex. 2018)..................................................24

*Animal Hosp. of Nashua, Inc. v. Antech Diagnostics*,
   No. 11-CV-448-LM, 2014 WL 1976624 (D.N.H. May 15, 2014)....................11

*Aprigliano v. Am. Honda Motor Co., Inc.*,
   979 F. Supp. 2d 1331 (S.D. Fla. 2013)..................................................9

*Archdiocese of San Salvador v. FM Int'l, Inc.*,
   No. 05-CV-237-JD, 2006 WL 437493 (D.N.H. Feb. 23, 2006).........................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................7

*Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.*,
   661 S.W.2d 933 (Tex. 1983) ..............................................................49

*Avenarius v. Eaton Corp.*,
   898 F. Supp. 2d 729 (D. Del. 2012)....................................................26

*Bang v. BMW of N. Am., LLC*,
   No. CV 15-6945, 2016 WL 7042071 (D.N.J. Dec. 1, 2016)............................18

*Barrera v. Samsung Elecs. Am., Inc.*,
   No. SACV1800481CJCPJWX, 2019 WL 1950295 (C.D. Cal. Feb.
   27, 2019) ................................................................................27

*In re Bayer Phillips Colon Health Probiotic Sales Practices Litig.*,
   No. CIV.A. 11-3017 JLL, 2014 WL 5776153 (D.N.J. Nov. 6,
   2014) ......................................................................................41

*Beck v. FCA US LLC*,
   273 F. Supp. 3d 735 (E.D. Mich. 2017) ................................................28, 32, 35

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................7, 12

iv

*Belmont v. MB Inv. Partners, Inc.*,
708 F.3d 470 (3d Cir. 2013) ...............................................................................44

*Berry v. Indianapolis Life Ins. Co.*,
608 F. Supp. 2d 785 (N.D. Tex. 2009) ................................................................8

*Blissard v. FCA US LLC*,
No. LACV1802765JAKJEMX, 2018 WL 6177295 (C.D. Cal.
Nov. 9, 2018) .....................................................................................................19

*Bosland v. Warnock Dodge, Inc.*,
964 A.2d 741 (N.J. 2009) ............................................................................41, 42

*Breding v. Eversource Energy*,
344 F. Supp. 3d 433 (D. Mass. 2019)................................................................38

*Brown v. Hyundai Motor Am.*,
No. CV1811249SDWJAD, 2019 WL 4126710 (D.N.J. Aug. 30,
2019) ............................................................................................................21, 27

*Burch v. Whirlpool Corp.*,
No. 1:17-CV-18, 2017 WL 7370988 (W.D. Mich. Sept. 28, 2017)...................10

*Burns v. Winnebago Indus., Inc.*,
492 F. App'x 44 (11th Cir. 2012) ......................................................................14

*Bytemark, Inc. v. Xerox Corp.*,
342 F. Supp. 3d 496 (S.D.N.Y. 2018) ...............................................................25

*Cadena v. Am. Honda Motor Co.*,
No. CV184007MWFPJWX, 2019 WL 3059931 (C.D. Cal. May
29, 2019) ............................................................................................................29

*Carlson v. Gen. Motors Corp.*,
883 F.2d 287 (4th Cir. 1989) ............................................................................18

*Catalano v. BMW of N. Am., LLC*,
167 F. Supp. 3d 540 (S.D.N.Y. 2016) ...............................................................11

*Chan v. Daimler AG*,
No. 11-5391 (JLL), 2012 WL 5827448 (D.N.J. Nov. 9, 2012).........................41

*Chiarelli v. Nissan N. Am., Inc.*,
  No. 14-CV-4327 NGG VVP, 2015 WL 5686507 (E.D.N.Y. Sept.
  25, 2015) ...................................................................................................24

*Clapp v. Goffstown Sch. Dist.*,
  977 A.2d 1021 (2009).................................................................................24

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013).....................................................................................50

*Cmty. Bank of Trenton v. Schnuck Markets, Inc.*,
  887 F.3d 803 (7th Cir. 2018) .....................................................................23

*Coba v. Ford Motor Co.*,
  932 F.3d 114 (3d Cir. 2019) .......................................................................11

*Cohan v. Pella Corp.*,
  No. 2:14-MN-00001-DCN, 2015 WL 6465639 (D.S.C. Oct. 26,
  2015) ...........................................................................................................17

*Colella v. Atkins Nutritionals, Inc.*,
  348 F. Supp. 3d 120 (E.D.N.Y. 2018) .......................................................14

*Collins Entm't Corp. v. Drew Distrib., Inc.*,
  173 F.3d 849, 1999 WL 123596 (4th Cir. 1999)........................................47

*Computer Network, Inc. v. AM Gen. Corp.*,
  696 N.W.2d 49 (Mich. Ct. App. 2005).......................................................18

*Connick v. Suzuki Motor Co.*,
  675 N.E.2d 584 (Ill. 1996)....................................................................28, 37

*Cooper v. Samsung Elecs. Am., Inc.*,
  374 F. App'x 250 (3d Cir. 2010) ...........................................................26, 41

*Cox v. Chrysler Grp., LLC*,
  No. CV 14-7573(MAS)(DEA), 2015 WL 5771400 (D.N.J. Sept.
  30, 2015) .....................................................................................................15

*Davison v. Kia Motors Am., Inc.*,
  No. SACV 15-00239-CJC, 2015 WL 3970502 (C.D. Cal. June 29,
  2015) ...........................................................................................................33

*Dawson v. Gen. Motors LLC*,
    No. 19-8680, 2019 WL 3283046 (D.N.J. July 22, 2019) ....................................30

*Dema v. Tenet Physician Servs.-Hilton Head, Inc.*,
    678 S.E.2d 430 (S.C. 2009) .................................................................47

*Deras v. Volkswagen Grp. of Am., Inc.*,
    No. 17-CV-05452-JST, 2018 WL 2267448 (N.D. Cal. May 17,
    2018) ..............................................................................................30

*Divis v. Gen. Motors LLC*,
    No. 18-13025, 2019 WL 4735405 (E.D. Mich. Sept. 27, 2019) ......................35

*Dixon v. Ford Motor Co.*,
    No. 14-CV-6135 JMA ARL, 2015 WL 6437612 (E.D.N.Y. Sept.
    30, 2015) ......................................................................................9, 43

*Dunfey v. Roger Williams Univ.*,
    824 F. Supp. 18 (D. Mass. 1993) ........................................................37

*Dzielak v. Whirlpool Corp.*,
    No. CV 12-89 (KM) (JBC), 2019 WL 6607220 (D.N.J. Dec. 5,
    2019) ..............................................................................................49

*Ehrlich v. BMW of N. Am., LLC*,
    801 F. Supp. 2d 908 (C.D. Cal. 2010) .............................................36, 37

*Elsayed v. Maserati N. Am., Inc.*,
    215 F. Supp. 3d 949 (C.D. Cal. 2016) ..................................................33

*Fejzulai v. Sam's W., Inc.*,
    205 F. Supp. 3d 723 (D.S.C. 2016) ......................................................47

*Ferron v. SubscriberBase Holdings, Inc.*,
    No. 2:08-CV-760, 2009 WL 650731 (S.D. Ohio Mar. 11, 2009) ....................8

*Finigan-Mirisola v. DaimlerChrysler Corp.*,
    869 N.E.2d 632 (Mass. Ct. App. 2007) ................................................18

*First State Sav. & Loan v. Phelps*,
    385 S.E.2d 821 (S.C. 1989) .................................................................9

*Floyd v. Am. Honda Motor Co.*,
966 F.3d 1027 (9th Cir. 2020) ............................................................22

*Flynn v. FCA US LLC*,
327 F.R.D. 206 (S.D. Ill. 2018) ..........................................................40

*In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab.
Litig.*, MDL No. 1718, 2007 WL 2421480 (Aug. 24, 2007) ......................*passim*

*In re Ford Motor Co. Speed Controls Deactivation Switch Prods.
Liab. Litig.*, 664 F. Supp. 2d 752 (E.D. Mich. 2009) .........................................23

*Gale v. IBM*,
9 A.D.3d 446 (N.Y. App. Div. 2004) ....................................................44

*In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*,
406 F. Supp. 3d 618 (E.D. Mich. 2019) .............................................23

*Gernhardt v. Winnebago Indus.*,
No. 03-73917, 2003 WL 23976324 (E.D. Mich. Dec. 30, 2003).......................21

*Gertz v. Toyota Motor Corp.*,
No. CV 10-1089 PSG .....................................................................9, 15

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014) ....................................................43

*Gomez v. Mercedes-Benz USA, LLC*,
No. 335661, 2018 WL 987398 (Mich. Ct. App. Feb. 20, 2018) ..........................9

*Gray v. Toyota Motor Sales, U.S.A.*,
No. CV 08-1690-PSG, 2012 WL 313703 (C.D. Cal. Jan. 23, 2012) ................33

*Greenberg v. Life Ins. Co. of Va.*,
177 F.3d 507 (6th Cir. 1999) ..........................................................4, 5

*Greene v. BMW of N. Am.*,
No. CIV. 2:11-04220 WJM, 2012 WL 5986457 (D.N.J. Nov. 28,
2012) ...........................................................................................18

*Grodzitsky v. Am. Honda Motor Co.*,
No. 2:12-CV-1142-SVW-PLA, 2013 WL 690822 (C.D. Cal. Feb.
19, 2013) ......................................................................................29

*Haag v. Hyundai Motor Am.*,
    969 F. Supp. 2d 313 (W.D.N.Y. 2013) ................................................................18

*Hall v. Sea World Entm't, Inc.*,
    No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911 (S.D. Cal. Dec.
    23, 2015) ................................................................35

*Harnden v. Ford Motor Co.*,
    408 F. Supp. 2d 315 (E.D. Mich. 2005) ................................................................21

*Harris v. Gen. Motors LLC*,
    No. C20-257 TSZ, 2020 WL 5231198 (W.D. Wash. Sept. 2, 2020) ................11

*Hasek v. DaimlerChrysler Corp.*,
    745 N.E.2d 627 (Ill. Ct. App. 2001) ................................................................9

*Hindsman v. Gen. Motors LLC*,
    No. 17-CV-05337-JSC, 2018 WL 2463113 (N.D. Cal. June 1,
    2018) ................................................................11

*Holguin et al. v. Gen. Motors LLC*,
    No. 1:20-cv-00615-RGA (D. Del.) ................................................................46

*Hornberger v. Gen. Motors Corp.*,
    929 F. Supp. 884 (E.D. Pa. 1996) ................................................................19

*In re Humira (Adalimumab) Antitrust Litig.*,
    No. 19 CV 1873, 2020 WL 3051309 (N.D. Ill. June 8, 2020) ................40

*John Deere Co. of Kansas City v. Tenberg*,
    445 S.W.2d 40 (Tex. Civ. App. 1969) ................................................................17

*Johnson v. Wells Fargo Bank, NA*,
    999 F. Supp. 2d 919 (N.D. Tex. 2014) ................................................................24

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ................................................................7, 34

*Kelleher v. Marvin Lumber & Cedar Co.*,
    891 A.2d 477 (N.H. 2005) ................................................................9

*Kelton v. Hollis Ranch, LLC*,
    927 A.2d 1243 (N.H. 2007) ................................................................28, 40

*Kia Motors Am. Corp. v. Butler*,
  985 So. 2d 1133 (Fla. 3rd DCA 2008)..........................................................34, 35

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941)..........................................................................................37

*Kommer v. Ford Motor Co.*,
  2017 WL 3251598 (N.D.N.Y. July 28, 2017) ..................................................43

*Kommer v. Ford Motor Co.*,
  No. 117CV0296LEKDJS, 2018 WL 3727353 (N.D.N.Y. Aug. 6,
  2018) ............................................................................................................28, 43

*Kondash v. Kia Motors Am., Inc.*,
  No. 1:15-CV-506, 2016 WL 11246421 (S.D. Ohio June 24, 2016) .................46

*Koski v. Carrier Corp.*,
  347 F. Supp. 3d 1185 (S.D. Fla. 2017) ............................................................24

*Kuns v. Ford Motor Co.*,
  926 F. Supp. 2d 976 (N.D. Ohio) (Ohio)..........................................................21

*Lauren v. PNC Bank, N.A.*,
  296 F.R.D. 389 (W.D. Pa. 2014) ......................................................................26

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.*,
  865 F. Supp. 2d 529 (D.N.J. 2011)...............................................................8, 42

*Mandani v. Volkswagen Grp. of Am., Inc.*,
  No. 17-CV-07287-HSG, 2019 WL 652867 (N.D. Cal. Feb. 15,
  2019) .................................................................................................................28

*Marshall v. Hyundai Motor Am.*,
  51 F. Supp. 3d 451 (S.D.N.Y. 2014) ................................................................24

*Matanky v. Gen. Motors LLC*,
  370 F. Supp. 3d 772 (E.D. Mich. 2019) ......................................................11, 39

*Matthews v. Am. Honda Motor Co.*,
  No. 12-60630-CIV, 2012 WL 2520675 (S.D. Fla. June 6, 2012) .....................27

*McKay v. Novartis Pharm. Corp.*,
  751 F.3d 694 (5th Cir. 2014) ............................................................................14

x

*Meadow v. Nibco, Inc.*,
  No. 3-15-1124, 2016 WL 2986350 (M.D. Tenn. May 24, 2016)........................7

*Med. City Dallas, Ltd. v. Carlisle Corp.*,
  251 S.W.3d 55 (Tex. 2008).........................................................................9

*Mesa v. BMW of N. Am. LLC*,
  904 So. 2d 450 (Fla. 3d DCA 2005).........................................................21

*In re MI Windows & Doors, Inc. Prod. Liab. Litig.*,
  No. 2:11-CV-00167-DCN, 2012 WL 5408563 (D.S.C. Nov. 6,
  2012) ......................................................................................................47

*Mickens v. Ford Motor Co.*,
  900 F. Supp. 2d 427 (D.N.J. 2012)..........................................................42

*Miller v. Gen. Motors, LLC*,
  No. 17-CV-14032, 2018 WL 2740240 (E.D. Mich. June 7, 2018)..................27

*Miller v. Hyundai Motor Am.*,
  No. 15-CV-4722 (TPG), 2016 WL 5476000 (S.D.N.Y. Sept. 28,
  2016) ........................................................................................................8

*Montgomery v. Kraft Foods Glob., Inc.*,
  No. 1:12-CV-00149, 2012 WL 6084167 (W.D. Mich. Dec. 6,
  2012) ......................................................................................................39

*Montich v. Miele USA, Inc.*,
  849 F. Supp. 2d 439 (D.N.J. 2012)..........................................................25

*Mooradian v. FCA US, LLC*,
  No. 1:17-CV-1132, 2017 WL 4869060 (N.D. Ohio Oct. 27, 2017) .................19

*Morgan Bldgs. & Spas, Inc. v. Humane Soc'y of Se. Tex.*,
  249 S.W.3d 480 (Tex. App. 2008)............................................................49

*Mui Ho v. Toyota Motor Corp.*,
  931 F. Supp. 2d 987 (N.D. Cal. 2013)......................................................17

*Nardizzi v. Gen. Motors LLC*,
  No. CV 19-03665-CJC (AFMx) (C.D. Cal. Apr. 30, 2019).......................*passim*

*Nat'l Cont'l Ins. Co. v. Aiazbekov*,
    818 F. App'x 468 (6th Cir. 2020) ........................................................41

*In re Nexus 6P Prod. Liab. Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018) ...............................................14

*Nirmul v. BMW of N. Am., LLC*,
    No. 10-cv-5586 (SDW), 2011 WL 5195801 (D.N.J. Oct. 31, 2011) ................41

*O'Hara v. Diageo-Guinness, USA, Inc.*,
    306 F. Supp. 3d 441 (D. Mass 2018) ....................................................7

*Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*,
    865 N.E.2d 334 (Ill. Ct. App. 2007) ....................................................18

*Omni USA, Inc. v. Parker-Hannifin Corp.*,
    964 F. Supp. 2d 805 (S.D. Tex. 2013) ......................................9, 17, 18

*In re Packaged Ice Antitrust Litig.*,
    779 F. Supp. 2d 642 (E.D. Mich. 2011) .................................................8

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996) .............................................................23

*Patterson v. McMickle*,
    191 S.W.3d 819 (Tex. App. 2006) ................................................28, 49

*Performance Unlimited, Inc. v. Questar Publishers, Inc.*,
    52 F.3d 1373 (6th Cir. 1995) .............................................................50

*Perret v. Wyndham Vacation Resorts, Inc.*,
    846 F. Supp. 2d 1327 (S.D. Fla. 2012) ................................................7

*Pershouse v. L.L. Bean, Inc.*,
    368 F. Supp. 3d 185 (D. Mass. 2019) .................................................23

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen
    Co.*, 631 F.3d 436 (7th Cir. 2011) ......................................................7

*In re Porsche Cars N. Am., Inc.*,
    880 F. Supp. 2d 801 (S.D. Ohio 2012) ......................................18, 25, 46

*Radford v. Daimler Chrysler Corp.*,
   168 F. Supp. 2d 751 (N.D. Ohio 2001) ............................................................46

*Rapid Models & Prototypes, Inc. v. Innovated Sols.*,
   No. CIV. 14-277 NLH/KMW, 2015 WL 4914477 (D.N.J. Aug. 18,
   2015) ..................................................................................................................9

*In re Relafen Antitrust Litig.*,
   221 F.R.D. 260 (D. Mass. 2004)........................................................................38

*Resnick v. Hyundai Motor Am., Inc.*,
   No. CV1600593BROPJWX, 2016 WL 9455016 (C.D. Cal. Nov.
   14, 2016) ..............................................................................................29, 33, 34

*Rhodes v. Novartis Pharm. Corp.*,
   No. 5:11-CV-00471-TJC, 2011 WL 5358554 (M.D. Fla. Nov. 1,
   2011) ..................................................................................................................11

*Risner v. Regal Marine Indus., Inc.*,
   8 F. Supp. 3d 959 (S.D. Ohio 2014) ....................................................................9

*Rivera v. Chrysler Gr., LLC*,
   No. HDCV200800670, 2010 WL 8490859 (Sup. Ct. Mass. May
   10, 2010) ............................................................................................................15

*Rosenbaum v. Toyota Motor Sales, USA, Inc.*,
   No. 16-CV-12645, 2016 WL 9775018 (E.D. Mich. Oct. 21, 2016).............18, 39

*Rothe v. Maloney Cadillac, Inc.*,
   518 N.E.2d 1028 (Ill. 1988)...............................................................................21

*In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*,
   155 F. Supp. 3d 772 (N.D. Ill. 2016)..................................................................14

*Salinas v. Ford Motor Co.*,
   No. 7:15-CV-11, 2016 WL 8461424 (S.D. Tex. May 13, 2016) .......................11

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009)................................................................14

*Sanlu Zhang v. Royal Caribbean Cruises, Ltd.*,
   No. 19-20773-CIV, 2019 WL 8895223 (S.D. Fla. Nov. 15, 2019)....................35

*Sautner v. Fleetwood Enters., Inc.*,
No. 05-73252, 2007 WL 1343806 (E.D. Mich. May 8, 2007) ...........................39

*Savett v. Whirlpool Corp.*,
No. 12 CV 310, 2012 WL 3780451 (N.D. Ohio Aug. 31, 2012) ......................24

*Schechner v. Whirlpool Corp.*,
237 F. Supp. 3d 601 (E.D. Mich. 2017) .............................................................24

*Schechter v. Hyundai Motor Am.*,
No. CV 18-13634 (FLW), 2019 WL 3416902 (D.N.J. July 29,
2019) .......................................................................................................*passim*

*Schiesser v. Ford Motor Co.*,
No. 16 C 730, 2017 WL 1283499 (N.D. Ill. Apr. 6, 2017) ................................36

*Schmidt v. Ford Motor Co.*,
972 F. Supp. 2d 712 (E.D. Pa. 2013) ..........................................................14, 24

*Schneider v. BMW of N. Am., LLC*,
No. 18-CV-12239-IT, 2019 WL 4771567 (D. Mass. Sept. 27,
2019) ....................................................................................................................11

*Seldon v. Home Loan Servs., Inc.*,
647 F. Supp. 2d 451 (E.D. Pa. 2009) ...................................................................8

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ............................................................................................47

*Shakeri v. ADT Sec. Servs.*,
816 F.3d 283 (5th Cir. 2016) ..............................................................................50

*Sheehy v. Lipton Indus., Inc.*,
24 Mass. App. Ct. 188 (1987) .............................................................................38

*Sheet Metal Workers Local 441 Health & Welfare Plan v.
GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380 (E.D. Pa. 2010) ..........................28

*Silverado Truck & Diesel Repair, LLC v. Lawson*,
No. 05-18-00540-CV, 2019 WL 1467966 (Tex. App. Apr. 3, 2019) ................48

*Sloan v. Gen. Motors*,
No. 16-cv-07244-EMC, 2017 WL 3283998 (N.D. Cal. Aug. 1,
2017) .................................................................................................... 11

*Softub, Inc. v. Mundial*,
53 F. Supp. 3d 235 (D. Mass. 2014) ..................................................... 9

*Speier-Roche v. Volkswagen Grp. of Am., Inc.*,
No. 14-20107-CIV, 2014 WL 1745050 (S.D. Fla. Apr. 30, 2014) ................... 21

*St. Clair v. Kroger Co.*,
581 F. Supp. 2d 896 (N.D. Ohio 2008) .............................................. 14

*St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*,
561 F.3d 1181 (11th Cir. 2009) ........................................................ 10

*Stalvey v. Am. Bank Holdings, Inc.*,
No. 4:13-CV-714, 2013 WL 6019320 (D.S.C. Nov. 13, 2013) ........................ 47

*Stevenson v. Mazda Motor of Am., Inc.*,
No. 14-5250 FLW DEA, 2015 WL 3487756 (D.N.J. June 2, 2015) .................. 42

*Szep v. Gen. Motors LLC*,
--- F. Supp. 3d ---, No. 1:19 CV 2858, 2020 WL 5834876 (N.D.
Ohio Sept. 30, 2020) ................................................................. *passim*

*P.V. ex rel. T.V. v. Camp Jaycee*,
962 A.2d 453 (N.J. 2008) ............................................................... 41

*In re Takata Airbag Prod. Liab. Litig.*,
MDL No. 2599, 2020 WL 2764196 (S.D. Fla. May 27, 2020) ........................ 26

*Tatum v. Chrysler Grp. LLC*,
No. 10-CV-4269 DMC JAD, 2011 WL 1253847 (D.N.J. Mar. 28,
2011) .................................................................................................. 42

*In re TD Bank, N.A.*,
150 F. Supp. 3d 593 (D.S.C. 2015) ................................................... 47

*Tershakovec v. Ford Motor Co.*,
No. 17-21087-CIV, 2018 WL 3405245 (S.D. Fla. July 12, 2018) ............... 9, 17

*Tomek v. Apple Inc.*,
  636 F. App'x 712 (9th Cir. 2016) ........................................................30

*Town of Hooksett Sch. Dist. v. W.R. Grace & Co.*,
  617 F. Supp. 126 (D.N.H. 1984)..........................................................14

*Trent Partners and Assoc's, Inc. v. Digital Equip. Corp.*,
  120 F. Supp. 2d 84 (D. Mass. 1999) ....................................................38

*Turner v. Rams Head Co.*,
  No. 3:05-2893-CMC, 2007 WL 2579386 (D.S.C. Sept. 4, 2007).....................23

*U.S. Marine Corp. v. Kline*,
  882 S.W.2d 597 (Tex. Ct. App. 1994)...................................................17

*Underwood v. Risman*,
  605 N.E.2d 832 (Mass. 1993) .............................................................28

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964)...........................................................................37

*Vantage Learning (USA), LLC v. Edgenuity, Inc.*,
  246 F. Supp. 3d 1097 (E.D. Pa. 2017) .................................................24

*Visual Commc'ns, Inc. v. Konica Minolta Bus. Sols. U.S.A., Inc.*,
  611 F. Supp. 2d 465 (E.D. Pa. 2009) ...................................................18

*Voelker v. Porsche Cars N. Am., Inc.*,
  353 F.3d 516 (7th Cir. 2003) .......................................................11, 21

*Watson v. Ford Motor Co.*,
  699 S.E.2d 169 (S.C. 2010) .........................................................10, 11

*Weidman v. Ford Motor Co.*,
  No. 18-CV-12719, 2019 WL 3003693 (E.D. Mich. July 10, 2019).............23, 26

*Weiss v. Fritch, Inc.*,
  No. 2332 EDA 2017, 2018 WL 1940109 (Pa. Super. Ct. Apr. 25,
  2018) ...............................................................................................44

*In re Wellbutrin XL Antitrust Litig.*,
  260 F.R.D. 143 (E.D. Pa. 2009).........................................................26

*Whitt v. Mazda Motor of Am., Inc.*,
  2011-Ohio-3097 .................................................................................11

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012) ...................................................28, 32

*Woods v. Maytag Co.*,
  No. 10–CV–0559 (ADS)(WDW), 2010 WL 4314313 (E.D.N.Y.
  Nov. 2, 2010) ....................................................................................43

*Woolums v. Nat'l RV*,
  530 F. Supp. 2d 691 (M.D. Pa. 2008) ...............................................11

*Wright v. Craft*,
  640 S.E.2d 486 (S.C. Ct. App. 2006) .................................................28

*Wuliger v. Mfrs. Life Ins. Co.*,
  567 F.3d 787 (6th Cir. 2009) .............................................................23

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
  854 A.2d 425 (Pa. 2004) ....................................................................45

*Yuhasz v. Brush Wellman, Inc.*,
  341 F.3d 559 (6th Cir. 2003) ...............................................................8

*Yurcic v. Purdue Pharma, L.P.*,
  343 F. Supp. 2d 386 (M.D. Pa. 2004) ..................................................9

*Zlotnick v. Premier Sales Grp., Inc.*,
  480 F.3d 1281 (11th Cir. 2007) .........................................................35

*Zuehlsdorf v. FCA US LLC*,
  No. EDCV 18-1877 JGB (KKx), 2019 WL 2098352 (C.D. Cal.
  Apr. 30, 2019) ...................................................................................19

**Statutes**[*]

73 Pa. Stat. Ann. § 201-2(v), (vii), (ix), (xxi) .........................................44

15 U.S.C. § 2303 ...............................................................................*passim*

---

[*] Identified by citation to statute; in text, may be referred to by name of statute.

15 U.S.C. § 2308 .................................................................................22

Cal. Bus. & Prof. Code § 17200 .........................................................33

Cal. Civ. Code § 1750 ...........................................................27, 32, 33, 34

Cal. Civ. Code § 1783 ...........................................................................34

Cal. Civ. Code § 1791.1(a)(2) ...............................................................18

Fla. Stat. § 501.201 ...............................................................25, 34, 35, 36

Ill. Comp. Stat. 505/2 ......................................................................36, 37

Mass. Gen. Laws ch. 93A .................................................................37, 38

Mass. Gen. Laws ch. 106 § 2-314 .........................................................18

Mich. Comp. Laws § 445.903 ..........................................................38, 39

N.H. Rev. Stat. § 358-A:1 .....................................................................40

N.H. Rev. Stat. § 382-A:2-314 ..............................................................18

N.J. Stat. §§ 56:-81 ........................................................................40, 41, 42

N.Y. Gen. Bus. Law §§ 349 and 350 ................................................25, 42

Ohio Rev. Code § 1345.10 ...............................................................45, 46

73 P.S. § 201-1 .......................................................................................44

S.C. Code Ann. § 36-2-607(3) ...............................................................14

S.C. Code Ann. § 39-5-140 ..............................................................46, 47

Tex. Bus. & Com. Code Ann. § 17.501 ................................................48

Tex. Bus. & Com. Code Ann. § 17.505 ................................................48

**Other Authorities**

Fed. R. Civ. P. 8 .............................................................................12, 26

Fed. R. Civ. P. 9(b) ..........................................................................7, 42

Restatement (Second) of Conflict of Laws (1971), §§ 6 & 188 .............................37

U.C.C. § 2-313 ..................................................................................................9

U.C.C. § 2-314 ................................................................................................17

U.C.C. § 2-607 ................................................................................................14

## <u>STATEMENT OF ISSUES PRESENTED</u>

### <u>Express Warranty Claims</u>

1.  Should this Court dismiss all Plaintiffs' breach of express warranty claims where Plaintiffs do not allege a defect "due to materials or workmanship" and instead allege only a "design" defect or issues caused by normal wear or road damage, which are not covered by the terms of the warranty?

2.  Should this Court dismiss certain Plaintiffs' breach of express warranty claims who failed to comply with warranty notice,[i] presentment,[ii] and restrictions on third-party modification[iii] requirements?

3.  Should this Court dismiss certain Plaintiffs'[iv] breach of express warranty claims who failed to plead that their vehicles were covered by the applicable written warranty at the time of repair?

### <u>Implied Warranty Claims</u>

4.  Should this Court dismiss all Plaintiffs' breach of implied warranty claims where Plaintiffs fail to allege that their vehicles were unmerchantable at the time of sale and that their vehicles continued to exhibit any alleged issues following repair?

5.  Should this Court dismiss certain Plaintiffs'[v] implied warranty claims because they lack privity with GM?

6.  Should this Court dismiss certain Plaintiffs'[vi] implied warranty claims where

---

[i] All Plaintiffs except Barrington, Holguin, Lupis, and Barker. **[All Counts except 7, 15, 39.]**

[ii] Plaintiffs Holguin, Mirenda, Lupis, and the Smiths. **[Counts 7, 12, 15, 21.]**

[iii] Plaintiffs Barrington, Holguin, Rochford, Mirenda, Lupis, Czajka, the Smiths, Goldberg, Bossart, Roth, Turner, and Barker. **[Counts 7, 9, 12, 15, 18, 21, 30, 36, 39.]**

[iv] Plaintiffs Holguin, Mirenda, Kalkstein, Turner, and Barker. **[Counts 7, 12, 18, 36, 39.]**

[v] Plaintiffs Rochford, Mirenda, Czajka, Kalkstein, and the Glazers. **[Counts 10, 13, 19, 34.]**

[vi] *Supra* note iv.

they failed to allege that their vehicles were covered by the implied warranty?

**Magnuson-Moss Warranty Act Claims**

7.    Should this Court dismiss all Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") claims because there are not 100 named Plaintiffs and because all Plaintiffs' state-law warranty claims fail?

**Unjust Enrichment Claims**

8.    Should this Court dismiss all Plaintiffs' unjust enrichment claims where an express warranty governs the parties' relationship?

9.    Should this Court dismiss certain Plaintiffs'[vii] unjust enrichment claims where they do not allege that they conferred a direct benefit on GM?

10.   Should this Court dismiss the Florida and New York Plaintiffs'[viii] unjust enrichment claims because these claims are predicated on the same conduct at issue in their consumer protection claims?

**Nationwide Claims**

11.   Should this Court dismiss Plaintiffs' "nationwide" MMWA and unjust enrichment claims because there is no such thing as a "nationwide" MMWA or unjust enrichment claim?

12.   Should this Court dismiss Plaintiffs' "nationwide" MMWA and unjust enrichment claims because Plaintiffs lack standing to assert legal claims on behalf of a putative class pursuant to state law under which their own claims do not arise?

**Consumer Protection Claims**

13.   Should this Court dismiss all Plaintiffs' claims brought under the consumer protection statutes of various states where Plaintiffs do not adequately allege GM had pre-sale knowledge of a defect? **[Counts 4, 5, 8, 11, 14, 17, 20, 23, 26, 27, 29, 32, 35, 38.]**

---

[vii] Plaintiffs Czajka, Kalkstein, Chookazian, Bossart, Roth, the Glazers, and Barker. **[Count 3 to the extent based on their respective claims.]**
[viii] Plaintiffs Rochford and Williams. **[Count 3 to the extent based on their respective claims.]**

14.   Should this Court dismiss Plaintiffs' claims brought under the consumer protection statutes of various states where, for various reasons, Plaintiffs do not adequately allege claims under any of these states' laws, including:

a.   For California Plaintiffs Barrington and Holguin, because they have not adequately alleged that GM had pre-sale knowledge of the purported defect and because they do not adequately allege a claim under any prong of the UCL or plead reliance with the requisite particularity? **[Counts 4, 5.]**

b.   For Florida Plaintiff Rochford, because she does not adequately allege a deceptive act or practice under FDUTPA and because she cannot show that any purported misrepresentation or omission caused her to purchase her vehicle? **[Count 8.]**

c.   For Illinois Plaintiff Mirenda, because he does not plead an actionable misrepresentation or causation under the ICFA? **[Count 11.]**

d.   For Massachusetts Plaintiff Lupis, because he purchased his vehicle from a dealer in New Jersey and therefore cannot bring claims under Massachusetts law and because he does not adequately plead a claim under Chapter 93A? **[Count 14.]**

e.   For Michigan Plaintiffs Czajka and Kalkstein, because the MCPA does not apply to the advertisement and sale of vehicles and because they do not state a claim under the MCPA? **[Count 17.]**

f.   For New Hampshire Plaintiffs Carole and Robert Smith, because they are Massachusetts residents, and therefore the NHCPA does not apply? **[Count 20.]**

g.   For New Jersey Plaintiff Chookazian, because the NJCFA does not apply where he purchased his vehicle from a dealer in Connecticut and because he otherwise fails to state a claim under the NJCFA? **[Count 23.]**

h.   For New York Plaintiff Williams, because he fails to state a claim under NYGBL §§ 349 or 350, as he has not adequately pleaded facts showing materially misleading conduct or causation? **[Counts 26, 27.]**

i.   For Pennsylvania Plaintiffs Bossart and Roth, because their PUTPCPL claim fails under Pennsylvania's "gist of the action" doctrine and

because they fail to plead a claim under the statute's catch-all provision? **[Count 29.]**

j.    For Ohio Plaintiffs Marianne and Dennis Glazer, because their claim is time-barred and predicated on non-actionable omissions, and because they do not allege that they viewed any representations before purchasing their vehicle? **[Count 32.]**

k.    For South Carolina Plaintiff Turner, because he cannot bring a class action under the SCUTPA and otherwise fails to state a claim? **[Count 35.]**

l.    For Texas Plaintiff Barker, because he did not comply with the DTPA's notice requirement and otherwise failed to adequately plead a claim? **[Count 38.]**

## Injunctive Relief

15.  Should this Court dismiss all Plaintiffs' request for injunctive relief where Plaintiffs have an adequate remedy at law and do not plausibly allege an imminent threat of future harm?

GM answers "yes" to each of these questions.

# STATEMENT OF CONTROLLING OR
# MOST APPROPRIATE AUTHORITY

## All Claims

1. Ex. B, Order Gr. Def.'s Mot. to Dismiss, *Nardizzi v. Gen. Motors LLC*, No. CV 19-03665-CJC (AFMx) (C.D. Cal. Aug. 29, 2019).

## Express Warranty Claims

2. U.C.C. §§ 2-313, 2-607.

3. *Burch v. Whirlpool Corp.*, No. 1:17-CV-18, 2017 WL 7370988 (W.D. Mich. Sept. 28, 2017).

4. *Szep v. Gen. Motors LLC*, --- F. Supp. 3d ---, No. 1:19 CV 2858, 2020 WL 5834876 (N.D. Ohio Sept. 30, 2020).

5. *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772 (E.D. Mich. 2019).

6. *Harris v. Gen. Motors LLC*, No. C20-257 TSZ, 2020 WL 5231198 (W.D. Wash. Sept. 2, 2020).

7. *Hindsman v. Gen. Motors LLC*, No. 17-CV-05337-JSC, 2018 WL 2463113 (N.D. Cal. June 1, 2018).

8. *Sloan v. Gen. Motors*, No. 16-cv-07244-EMC, 2017 WL 3283998 (N.D. Cal. Aug. 1, 2017).

9. *In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, MDL No. 1718, 2007 WL 2421480 (Aug. 24, 2007).

10. *Cox v. Chrysler Grp.*, LLC, No. CV 14-7573(MAS)(DEA), 2015 WL 5771400 (D.N.J. Sept. 30, 2015).

11. *Gertz v. Toyota Motor Corp.*, No. CV 10-1089 PSG VBKX, 2011 WL 3681647 (C.D. Cal. Aug. 22, 2011).

## Implied Warranty Claims

12. U.C.C. § 2-314.

13. *Rosenbaum v. Toyota Motor Sales, USA, Inc.*, No. 16-CV-12645, 2016 WL 9775018 (E.D. Mich. Oct. 21, 2016).

14. *Greene v. BMW of N. Am.*, No. CIV. 2:11-04220 WJM, 2012 WL 5986457 (D.N.J. Nov. 28, 2012).

15. *Blissard v. FCA US LLC*, No. LACV1802765JAKJEMX, 2018 WL 6177295 (C.D. Cal. Nov. 9, 2018).

16. *Mooradian v. FCA US, LLC*, No. 1:17-CV-1132, 2017 WL 4869060 (N.D. Ohio Oct. 27, 2017).

17. *Zuehlsdorf v. FCA US LLC*, No. EDCV 18-1877 JGB (KKx), 2019 WL 2098352 (C.D. Cal. Apr. 30, 2019).

18. *Brown v. Hyundai Motor Am.*, No. CV1811249SDWJAD, 2019 WL 4126710 (D.N.J. Aug. 30, 2019).

**Magnuson-Moss Warranty Act Claims**

19. *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027 (9th Cir. 2020).

20. *Weidman v. Ford Motor Co.*, No. 18-CV-12719, 2019 WL 3003693 (E.D. Mich. July 10, 2019).

**Unjust Enrichment Claims**

21. *In re Ford Motor Co. Speed Controls Deactivation Switch Prods. Liab. Litig.*, 664 F. Supp. 2d 752 (E.D. Mich. 2009).

22. *In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618 (E.D. Mich. 2019).

23. *Schechter v. Hyundai Motor Am.*, No. CV 18-13634 (FLW), 2019 WL 3416902 (D.N.J. July 29, 2019).

24. *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601 (E.D. Mich. 2017).

**Nationwide Claims**

25. *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250 (3d Cir. 2010).

26. *Avenarius v. Eaton Corp.*, 898 F. Supp. 2d 729 (D. Del. 2012).

27. *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009).

28.   *In re Takata Airbag Prod. Liab. Litig.*, MDL No. 2599, 2020 WL 2764196 (S.D. Fla. May 27, 2020).

## Consumer Protection Claims

29.   *Beck v. FCA US LLC*, 273 F. Supp. 3d 735 (E.D. Mich. 2017).

30.   *Grodzitsky v. Am. Honda Motor Co.*, No. 2:12-CV-1142-SVW-PLA, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013).

31.   *Cadena v. Am. Honda Motor Co.*, No. CV184007MWFPJWX, 2019 WL 3059931 (C.D. Cal. May 29, 2019).

32.   *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012).

33.   *Mandani v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-07287-HSG, 2019 WL 652867 (N.D. Cal. Feb. 15, 2019).

34.   *Resnick v. Hyundai Motor Am., Inc.*, No. CV1600593BROPJWX, 2016 WL 9455016 (C.D. Cal. Nov. 14, 2016).

35.   *Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-05452-JST, 2018 WL 2267448 (N.D. Cal. May 17, 2018).

36.   *Dawson v. Gen. Motors LLC*, No. 19-8680, 2019 WL 3283046 (D.N.J. July 22, 2019).

## Injunctive Relief

37.   *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373 (6th Cir. 1995).

38.   *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

## **INTRODUCTION**

Plaintiffs' Consolidated Class Action Complaint ("CCAC") spans 169 pages and 717 paragraphs but fails to mention the most important fact about this case:  A federal court has already dismissed ***in its entirety*** a lawsuit brought by some of the same plaintiffs' counsel involving allegations materially identical to those in the CCAC.  *See* Ex. A, Complaint, *Nardizzi v. Gen. Motors LLC*, No. CV 19-03665-CJC (AFMx) (C.D. Cal. Apr. 30, 2019).  The plaintiff in *Nardizzi*, like Plaintiffs in this case, alleged that certain Corvette vehicles are equipped with wheels purportedly prone to warping and cracking, and that GM supposedly knew about this so-called defect based on complaints and other data.  *Compare* CCAC ¶¶ 4–8, 171–91, *with* Ex. A ¶¶ 1, 4, 43–61.  On August 29, 2019, however, Judge Cormac J. Carney granted GM's motion to dismiss *Nardizzi* in full.  Ex. B, Order Gr. Def.'s Mot. to Dismiss ("*Nardizzi* Order"), *Nardizzi*, Dkt. No. 31 (C.D. Cal. Aug. 29, 2019).

As with *Nardizzi*, the CCAC asserts claims on behalf of a putative nationwide class or (alternatively) statewide subclasses.  In fact, the claims in this case are exactly the same or analogous to the claims that Judge Carney dismissed in *Nardizzi*. For instance, Plaintiffs claim violations of certain state consumer protection statutes. Judge Carney dismissed the *Nardizzi* plaintiff's identical claims (under California's Consumer Legal Remedies Act and Unfair Competition Law) because, like here, plaintiff did not adequately allege that GM had pre-purchase knowledge of any

alleged defect. *Nardizzi* Order at 9–10. Plaintiffs also bring claims for breach of express warranty. Judge Carney dismissed the *Nardizzi* plaintiff's express warranty claim because he failed to allege a defect covered by the terms of the applicable written warranty. *Id.* at 5–7. Plaintiffs also bring claims for breach of the implied warranty of merchantability. Judge Carney dismissed the *Nardizzi* plaintiff's implied warranty claim because he did not plausibly allege that his vehicle was unmerchantable. *Id.* at 7–9. Finally, Plaintiffs bring claims for unjust enrichment. Judge Carney dismissed the same claim in *Nardizzi* because a plaintiff cannot recover for unjust enrichment where an express warranty—the same one at issue here—governs the parties' relationship. *Id.* at 11–12.[1]

Although the number of Plaintiffs and claims has multiplied as compared to *Nardizzi*, these essentially identical claims should fare no better in this Court. Not only is it commonly understood that road hazards and driver misuse can damage the wheels on high-horsepower sports cars equipped with wide, low-profile tires, but here Plaintiffs collectively plead virtually no facts about what they contend are the so-called "defects" in their wheels or the circumstances surrounding the alleged

---

[1] Besides the added jurisdictions, the only other difference between *Nardizzi* and this case is that here Plaintiffs assert Magnuson-Moss Warranty Act ("MMWA") express and implied warranty claims and unjust enrichment claims on behalf of the putative "nationwide" class. But these claims are derivative of Plaintiffs' state-law breach of warranty claims or otherwise creatures of state law. There is no such thing as a "nationwide" MMWA or unjust enrichment claim. *See infra* Argument § V.

manifestation of the "defects" in their or any other putative class vehicle.  In fact, Plaintiffs attach a review to the CCAC that describes the vehicle as a "sterling test of reliability."  CCAC, Ex. 1 (Dkt. No. 18-2) at 7.[2]  Plaintiffs further ignore that the written warranties expressly disclaim coverage for the wheel "defect" that they now allege.  Rather than plead facts in support of their claims, Plaintiffs simply recast the failed allegations from *Nardizzi*, including conclusory allegations with purported "complaints" from other GM customers—most of which post-date the purchase of their vehicles and reinforce that the alleged issues were caused by potholes, not a design "defect."  Judge Carney found these allegations insufficient to state a claim against GM.  This Court should hold the same and dismiss the CCAC in full.

## **BACKGROUND**

The eighteen Plaintiffs in this case bring claims for breach of express and implied warranties, unjust enrichment, and consumer protection violations under the laws of twelve states:  California, Florida, Illinois, Massachusetts, Michigan, New Hampshire, New Jersey, New York, Pennsylvania, Ohio, South Carolina, and Texas. Plaintiffs seek to certify a nationwide class of all persons in the United States who purchased or leased a Class Vehicle and also seek to certify subclasses for each state.

---

[2] Notably, while this article referenced bent rims that needed to be replaced during a 40,000-mile test drive, the author suggested the cause was "our proficiency at finding potholes."  CCAC, Ex. 1 at 7.  For instance, after the wheels performed without incident for a 20,000-mile stretch, the article states one of the wheels had to be replaced after hitting a "rather large and unavoidable pothole."  *Id.* at 5.

They request monetary damages and injunctive relief in the form of an order prohibiting GM from "further deceptive distribution" of Class Vehicles and requiring GM to repair the alleged defect, among other remedies.  CCAC ¶ 716.

The precise claims and allegations (or lack thereof) vary from Plaintiff to Plaintiff.  But despite these differences, each new vehicle was covered by a 3-year/36,000-mile New Vehicle Limited Warranty ("NVLW") in which GM promised to cover "repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period."  *See* Ex. C at 4; Ex. D at 4; Ex. E at 4; Ex. F at 4; Ex. G at 4.[3]  Each used vehicle was covered by a Certified Pre-Owned Limited Warranty ("CPO-LW") that tracks the NVLW and lasts 1-year/12,000 miles on top

---

[3] The NVLWs applicable to model year 2015, 2016, 2017, 2018, and 2019 vehicles are attached hereto as Exhibits C, D, E, F, and G (respectively).  The Court may consider these warranties at the motion to dismiss stage without converting the motion into a motion for summary judgment because the warranties are incorporated by reference into the CCAC (*see, e.g.*, CCAC ¶¶ 13, 178, 190) and are central to Plaintiffs' claims.  *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).  GM recognizes that this Court has previously converted a motion to dismiss into one for summary judgment where another automaker submitted the applicable written warranty on a motion to dismiss.  *See In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, MDL No. 1718, 2007 WL 2421480, at *3 (Aug. 24, 2007) (Friedman, J.) ("*In re Ford I*").  There, however, plaintiffs argued that the Court could not consider an express written warranty when deciding a motion to dismiss an implied warranty claim.  *See id.*, Dkt. No. 44, at 30–32 (plaintiffs' opposition brief).  Here, by contrast, the express written warranties are properly considered in connection with Plaintiffs' express warranty claims given that they are expressly incorporated into the pleading.

of any remaining time or mileage on the NVLW.[4]  Both of these written warranties do not cover "tire and wheel damage or wear" and note that "[t]ire wear is influenced by many variables such as road conditions, driving styles, vehicle weight, and tire construction" (which is why many Corvette owners buy separate Tire and Wheel Protection plans).  Ex. G at 9–10.  And, "[r]oad hazard damage such as punctures, cuts, snags, and breaks resulting from pothole impact, curb impact, or from other objects is not covered."  *Id.* at 10.  Finally, the warranties do not cover "non-GM parts [or] calibrations" or any damage resulting from third-party modification.  *Id.* at 18.  The Corvette Owners' Manual also warns drivers that "[l]ow-profile tires are more susceptible to damage from road hazards or curb impact than standard profile tires," and that tire or wheel damage can "occur when coming into contact with road hazards like potholes, or sharp edged objects, or when sliding into a curb."[5]

These explicit statements and warnings memorialize what is common knowledge: a vehicle's tires and wheels are subject to normal wear and tear from

___

[4] *See, e.g.*, "Certified Pre-Owned," *available at*  https://www.gmcertified.com/benefits-after-purchase#warranties (last accessed Oct. 26, 2020).

[5] *See, e.g.*, Ex. H at 256 (excerpts from 2018 Corvette Owners' Manual).  GM submits the Court may consider the contents of the Owners' Manual excerpts in connection with its motion to dismiss because it is cited in the written warranties incorporated by reference into the CCAC.  *Greenberg*, 177 F.3d at 514; *see also, e.g.*, Ex. G at 10–12, 14, 16–17, 21, 23, 37.  If the Court determines it cannot consider the Owners' Manual in connection with GM's motion to dismiss without converting the motion into a motion for summary judgment, however, GM respectfully requests that the Court disregard the Owners' Manual.

driving and can be damaged from road hazards, high curbs, and even (unintentional) driver misuse. This is particularly true for high-horsepower sports cars with wide, low-profile tires like the Corvette.

Nevertheless, the named Plaintiffs in this suit claim that their Corvette vehicles suffer from an inherent defect that caused their tires to leak and their wheels to warp and crack under "normal driving conditions." CCAC ¶¶ 4–8. Plaintiffs plead this widespread "defect" even though their own allegations confirm that they drove their vehicles for thousands of miles before any problems purportedly manifested. *See, e.g.*, *id.* ¶ 81 (Plaintiff Czajka alleges issues at the 23,000-mile mark); ¶ 141 (Plaintiff Turner alleges issues at 14,436-mile mark); ¶¶ 178–79 (referencing complaints which indicate that alleged problems were caused by potholes and poor driving). And when the alleged issues supposedly arose, many admit that they took matters into their own hands by going to third-party repair shops instead of authorized dealers, or even tried to fix the issues themselves. *See id.* ¶ 52 (Plaintiff Mirenda purchased two wheels and repaired vehicle himself).

Plaintiffs also claim generally that GM knew of and concealed the purported wheel defect from consumers. *Id*. ¶¶ 10–12. This general claim is based on the same sources that Judge Carney found insufficient to plead knowledge in *Nardizzi*: (1) conclusory allegations about "extensive pre-release testing" and repair data (there are no facts pled about this purported testing and data); (2) complaints submitted to

the National Highway Traffic Safety Administration ("NHTSA") or posted to an online forum, many of which were submitted after Plaintiffs purchased their vehicles and/or confirm that the issue was caused by potholes or road damage; and (3) GM's response to a complaint on an online forum (in which GM disclaimed that the wheels were defective).  *Id.* ¶¶ 171–91; *see also Nardizzi* Order at 9–10 (holding that identical allegations failed to plausibly plead knowledge).  Plaintiffs do not allege that GM had knowledge of any alleged defect from any other sources.

## ARGUMENT

A complaint must plead facts sufficient to create "a reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Claims that sound in fraud—including state consumer protection claims—must be pleaded with particularity.[6] Fed. R. Civ. P. 9(b); *In re Ford I*, 2007 WL 2421480, at *9.  To satisfy

---

[6] *See, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (Illinois CFA); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (California CLRA and UCL); *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 450 (D. Mass 2018) (Massachusetts CPA); *Meadow v. Nibco, Inc.*, No. 3-15-1124, 2016 WL 2986350, at *7 (M.D. Tenn. May 24, 2016) (South Carolina UTPA); *Perret v. Wyndham Vacation Resorts, Inc.*,

this heightened standard, plaintiffs must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (quotation marks omitted).

## I.   Plaintiffs' Express Warranty Claims Fail on Multiple Grounds.

Plaintiffs' express warranty claims fail for multiple reasons. The written warranties do not cover the design defect that Plaintiffs allege. Plaintiffs also violated other conditions of the warranty—such as notice, presentment, and prohibitions on third-party modification of vehicle components—and failed to plead facts showing that they requested repairs within the durational limits of the warranty.

### A.   The Alleged Design Defect Falls Outside Warranty Coverage.

To state a claim for breach of express warranty, Plaintiffs must allege that the seller made an affirmation of fact or promise regarding the product, that this affirmation or promise was part of the basis of the bargain, and that the product did

---

846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012) (Florida DUTPA); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 666 (E.D. Mich. 2011) (Michigan CFA); *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) (New Jersey CFA); *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 469 (E.D. Pa. 2009) (Pennsylvania UTPCPL); *Ferron v. SubscriberBase Holdings, Inc.*, No. 2:08-CV-760, 2009 WL 650731, at *5 n.4 (S.D. Ohio Mar. 11, 2009) (Ohio CSPA); *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) (Texas DTPA); *Archdiocese of San Salvador v. FM Int'l, Inc.*, No. 05-CV-237-JD, 2006 WL 437493, at *7 (D.N.H. Feb. 23, 2006) (New Hampshire CPA). New York is the lone exception. *See Miller v. Hyundai Motor Am.*, No. 15-CV-4722 (TPG), 2016 WL 5476000, at *15 (S.D.N.Y. Sept. 28, 2016).

not conform to the seller's description.[7] *See generally* U.C.C. § 2-313. It is well-recognized that "express warranties are contractual in nature," and the "language of the warranty itself is what controls and dictates the obligations and rights of the various parties." *Hasek*, 745 N.E.2d at 634; *see also Aprigliano v. Am. Honda Motor Co., Inc.*, 979 F. Supp. 2d 1331, 1339 (S.D. Fla. 2013) ("A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty.") (quotation marks omitted); *Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 60 (Tex. 2008) (express warranty is "contractual in nature").

In this case, GM "promised" to repair certain defects "due to ***materials or workmanship*** occurring during the warranty period." Ex. G at 4 (emphasis added). Although the CCAC attempts to latch upon the NVLW's "materials or

---

[7] *Tershakovec v. Ford Motor Co.*, No. 17-21087-CIV, 2018 WL 3405245, at *6 (S.D. Fla. July 12, 2018) (Florida); *Dixon v. Ford Motor Co.*, No. 14-CV-6135 JMA ARL, 2015 WL 6437612, at *3 (E.D.N.Y. Sept. 30, 2015) (New York); *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, No. CIV. 14-277 NLH/KMW, 2015 WL 4914477, at *4 (D.N.J. Aug. 18, 2015) (New Jersey); *Softub, Inc. v. Mundial*, 53 F. Supp. 3d 235, 252 (D. Mass. 2014) (Massachusetts); *Risner v. Regal Marine Indus., Inc.*, 8 F. Supp. 3d 959, 988 (S.D. Ohio 2014) (Ohio); *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 814–15 (S.D. Tex. 2013) (Texas); *Gertz v. Toyota Motor Corp.*, No. CV 10-1089 PSG VBKX, 2011 WL 3681647, at *2 (C.D. Cal. Aug. 22, 2011) (California), *aff'd sub nom. Troup v. Toyota Motor Corp.*, 545 F. App'x 668 (9th Cir. 2013); *Yurcic v. Purdue Pharma, L.P.*, 343 F. Supp. 2d 386, 394 (M.D. Pa. 2004) (Pennsylvania); *Hasek v. DaimlerChrysler Corp.*, 745 N.E.2d 627, 634 (Ill. Ct. App. 2001) (Illinois); *Gomez v. Mercedes-Benz USA, LLC*, No. 335661, 2018 WL 987398, at *2 (Mich. Ct. App. Feb. 20, 2018) (Michigan); *Kelleher v. Marvin Lumber & Cedar Co.*, 891 A.2d 477, 499 (N.H. 2005) (New Hampshire); *First State Sav. & Loan v. Phelps*, 385 S.E.2d 821, 825 (S.C. 1989) (South Carolina).

workmanship" language, *see, e.g.*, CCAC ¶¶ 282, 309, 347, 377, Plaintiffs' theory is clearly premised on an alleged ***design*** defect, not a defect due to materials or workmanship. Among other things, Plaintiffs contend that the rims are "prone to warping and cracking" and allege a "widespread" problem that "is inherent in and the same" for ***every*** 2015–2019 Chevrolet Corvette Z06 and 2017–2019 Chevrolet Corvette Grand Sport. *Id.* ¶¶ 162, 167, 169, 199; *see also St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1190 n.18 (11th Cir. 2009) ("This distinction between 'aberrational defects' and defects occurring throughout an entire line of products is frequently used in tort law to separate defects of manufacture from those of design"); *Watson v. Ford Motor Co.*, 699 S.E.2d 169, 174 (S.C. 2010) (same). Plaintiffs also characterize their claims as related to the "defective design of their wheels." CCAC ¶ 225. For this reason, the Court should find that the NVLW does not cover the alleged design defect at issue and should dismiss all Plaintiffs' express warranty claims.

Notably, Judge Carney dismissed the *Nardizzi* plaintiff's express warranty claim on this basis. *Nardizzi* Order at 6. Judge Carney's reasoning is in accord with numerous courts across the country, which have recognized that the "consensus" is that "'defects in materials or workmanship' refer[s] to manufacturing defects alone." *Burch v. Whirlpool Corp.*, No. 1:17-CV-18, 2017 WL 7370988, at *3 (W.D. Mich.

Sept. 28, 2017).[8]  Indeed, courts construing GM's NVLW routinely reach this same conclusion.  *See, e.g.*, *Szep v. Gen. Motors LLC*, --- F. Supp. 3d ---, No. 1:19 CV 2858, 2020 WL 5834876, at *10 (N.D. Ohio Sept. 30, 2020) ("Several courts, including courts within this circuit, have held that this warranty language does not cover design defects."); *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 788 (E.D. Mich. 2019); *Harris v. Gen. Motors LLC*, No. C20-257 TSZ, 2020 WL 5231198, at *3 (W.D. Wash. Sept. 2, 2020) ("GM's limited warranty does not cover the alleged design defect."); *Hindsman v. Gen. Motors LLC*, No. 17-CV-05337-JSC, 2018 WL 2463113, at *7 (N.D. Cal. June 1, 2018); *Sloan v. Gen. Motors*, No. 16-cv-07244-EMC, 2017 WL 3283998, at *8 (N.D. Cal. Aug. 1, 2017).

Even assuming the CCAC could be construed to allege a defect in materials and workmanship, Plaintiffs plead no facts establishing that their alleged tire and wheel issues were caused by something other than the "normal wear" and "[r]oad

---

[8] *See also Coba v. Ford Motor Co.*, 932 F.3d 114, 121 (3d Cir. 2019) (New Jersey law); *Catalano v. BMW of N. Am., LLC.*, 167 F. Supp. 3d 540, 554 (S.D.N.Y. 2016) (New York law); *Troup*, 545 F. App'x at 668 (California law); *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 527 (7th Cir. 2003) (Illinois law); *Salinas v. Ford Motor Co.*, No. 7:15-CV-11, 2016 WL 8461424, at *5 (S.D. Tex. May 13, 2016) (Texas law); *Animal Hosp. of Nashua, Inc. v. Antech Diagnostics*, No. 11-CV-448-LM, 2014 WL 1976624, at *12 (D.N.H. May 15, 2014) (New Hampshire law); *Woolums v. Nat'l RV*, 530 F. Supp. 2d 691, 699 (M.D. Pa. 2008) (Pennsylvania law); *Whitt v. Mazda Motor of Am., Inc.*, 2011-Ohio-3097, ¶ 24 (Ohio law); *Watson*, 699 S.E.2d at 174 (South Carolina law); *Rhodes v. Novartis Pharm. Corp.*, No. 5:11-CV-00471-TJC, 2011 WL 5358554, at *2 (M.D. Fla. Nov. 1, 2011) (Florida law); *Schneider v. BMW of N. Am., LLC*, No. 18-CV-12239-IT, 2019 WL 4771567, at *6 (D. Mass. Sept. 27, 2019) (Massachusetts law).

hazard damage" that the NVLWs exclude from coverage.  *See* Ex. G at 9–10 (excluding "Tire and Wheel Damage or Wear" and [r]oad hazard damage such as punctures, cuts, snags, and breaks resulting from pothole impact, curb impact, or from other objects").  Plaintiffs provide virtually no details as to how their alleged problems occurred.  *See, e.g.*, CCAC ¶ 32 (Holguin "noticed cracks in rear wheels"); ¶ 92 (Kalkstein "rear wheel was cracked"); ¶ 100 (Goldberg vibration occurred during driving).  Instead, they merely *speculate* that GM is at fault for the alleged wheel damage, which is not enough.  *See Twombly*, 550 U.S. at 557 (stating that "naked assertion[s]" devoid of "factual enhancement[s]" fail to satisfy Rule 8).

Plaintiffs also acknowledge that almost all of them drove their vehicles for thousands of miles before any issues arose.  For example, Plaintiff Czajka allegedly drove 23,000 miles before tire and wheel problems allegedly appeared, Plaintiff Chookazian appears to have driven his vehicle from New Jersey to Florida before problems allegedly appeared at the 14,000 mile mark, and Plaintiff Holguin allegedly did not have issues until the 10,000 mile mark (and continued to drive his car, after repairs, for nearly 60,000 more miles).  CCAC ¶¶ 32–42, 81, 103–04. Nearly all remaining Plaintiffs drove their vehicles for thousands of miles, or more than a year, before problems allegedly appeared (or fail to allege the mileage).[9]  *Id.*

---

[9] The Smiths allege that problems arose "[i]mmediately after purchase," but they did not bother to obtain a repair (from a third-party facility) until more than a year after

¶¶ 21–23, 46, 52, 61, 92, 100, 110, 116, 125, 135, 141, 146.  Plaintiff Czajka even took out a third-party wheel and tire protection insurance policy, tacitly acknowledging that the NVLW does not cover normal wear to wheels and tires.  *Id.* ¶ 83.

In short, Plaintiffs' lip service to the NVLW's "materials and workmanship" language is insufficient to plead that the NVLW covers the alleged design defect at issue, and their express warranty claims should be dismissed.

### B. Plaintiffs Failed to Comply with Warranty Notice, Presentment, and Coverage Requirements.

Plaintiffs' express warranty claims should also be dismissed for several additional reasons.  *First*, except for Plaintiffs Barrington, Holguin, Lupis, and Barker, Plaintiffs do not allege that they gave GM (not its authorized dealers) direct written notification of potential vehicle issues.  Failure to give notice runs afoul of the NVLWs.  *See* Ex. G at 32 ("GM requires that you first provide us with written notification of any service difficulty you have experienced so that we have an opportunity to make any needed repairs").  Failure to give notice also violates obligations arising under state law requiring that "a plaintiff provide a manufacturer with individual notice of an alleged breach prior to filing an action."  *In re Ford I*,

---

their purchase, with 6,993 miles on the odometer—reinforcing that their car was safe to drive.  CCAC ¶ 77.

2007 WL 2421480, at *6.[10]    Plaintiffs' bare allegations that "GM was provided notice of [the] issues by numerous complaints filed against it" or that notice was not required because it "would have been futile" do not satisfy the actual requirement that each Plaintiff send written notice to GM.  *See, e.g.*, CCAC ¶¶ 285, 314, 317, 323, 352; *In re Ford I*, 2007 WL 2421480, at *6.

*Second*, several Plaintiffs failed to present their vehicles to an authorized dealer for repair when problems allegedly appeared.  *See* Ex. G at 4 ("To obtain warranty repairs, take the vehicle to a Chevrolet dealer facility within the warranty period and request the needed repairs.").  For example, Plaintiff Mirenda alleges that he initially took his vehicle to "Discount Tire" after he noticed his car was vibrating, subsequently purchased four "after-market wheels," and finally took his three-year-old vehicle to an authorized dealer seeking "cost assistance from GM" *more than a*

---

[10] *See generally* U.C.C. § 2-607; *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 705 (5th Cir. 2014) ("To recover on a breach of warranty claim in Texas, the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.") (quotation marks omitted); *Burns v. Winnebago Indus., Inc.*, 492 F. App'x 44, 47–48 (11th Cir. 2012) (Florida); *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 923 (N.D. Cal. 2018) (Michigan); *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (New York); *In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 799–800 (N.D. Ill. 2016) (Illinois); *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 719 (E.D. Pa. 2013) (Pennsylvania and New Jersey law require notice to manufacturer); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 988 (N.D. Cal. 2009) (California); *St. Clair v. Kroger Co.*, 581 F. Supp. 2d 896, 902 (N.D. Ohio 2008) (Ohio); *Town of Hooksett Sch. Dist. v. W.R. Grace & Co.*, 617 F. Supp. 126, 131–32 (D.N.H. 1984) (New Hampshire); *see also* S.C. Code Ann. § 36-2-607(3) (notice requirement for breach of express warranty claim).

14

*year after* he allegedly noticed the problem.  CCAC ¶ 52.  The Smiths allegedly "complained" to dealers, but they do not allege that they presented their cars to the dealers for repair or were refused warranty coverage; instead, they allege that they took their vehicle to "third-party automotive repair facility Cape Tire" and then purchased new wheels from an unnamed vendor in Florida. *Id.* ¶¶ 73–78.  Plaintiff Lupis alleges that he took his vehicle to "Alloy Wheel Repair Specialists" for repair *before* going to a Chevrolet dealer.  *Id.* ¶ 62.  Plaintiff Holguin allegedly took his vehicle to a dealer *4,000 miles* after problems first appeared.  *Id.* ¶¶ 32–33.  These Plaintiffs' failure to present their vehicles to authorized dealers for repair violates the NVLW and is an independent ground for dismissal.[11]

*Third*, warranty coverage is void for "those components that are . . . affected by the installation of the non-GM part[,] calibration, [or] alteration," and GM does not cover damage or failure resulting from such third-party modification.  Ex. G at 18.  Several Plaintiffs violated this requirement by using unauthorized, third-party

---

[11] *See Rivera v. Chrysler Gr., LLC*, No. HDCV200800670, 2010 WL 8490859, at *3 (Sup. Ct. Mass. May 10, 2010) (dismissing express warranty claim where "[t]he Limited Warranty contained an explicit condition that [plaintiff] provide Chrysler with written notice and an opportunity to cure the defect before filing suit"); *Cox v. Chrysler Grp., LLC*, No. CV 14-7573(MAS)(DEA), 2015 WL 5771400, at *7 (D.N.J. Sept. 30, 2015) ("[W]arranty did not fail of its essential purpose because defendant was not allowed the opportunity to repair the [defect]") (citation omitted); *Gertz*, 2011 WL 3681647, at *2 ("[I]n the context of automobile warranties, courts have held that an express warranty is not considered breached unless and until the defendant refuses or fails to repair.").

repair shops to repair their vehicles, thereby voiding coverage even if they later sought repairs from GM.  *See, e.g.*, ¶¶ 34, 77, 81, 100, 117, 125–26, 136–37, 148 (allegations for Plaintiffs Holguin, the Smiths, Lupis, Goldberg, Bossart, Roth, and Barker).  Other Plaintiffs do not specify who repaired their vehicles.  *Id.* ¶¶ 23, 47, 82, 142 (Plaintiffs Barrington, Rochford, Czajka, Turner).  And Plaintiff Mirenda attempted to repair the wheels himself—only after doing so did he seek assistance from GM.  *Id.* ¶ 52.  Their claims should be dismissed for this additional reason.

## C.     Plaintiffs Mirenda, Turner, Barker, Holguin, and Kalkstein Fail to Plead That Their Vehicles Were Covered by the NVLW at the Time of Repair.

The NVLW limits coverage to "3 years or 36,000 miles, whichever comes first."  Ex. G at 4.  But Plaintiff Turner alleges that he purchased his vehicle in September 2016 and did not seek repairs until January 2020, several months after the expiration of the warranty period.  CCAC ¶¶ 140–41; *see also id.* ¶¶ 29, 38–42 (Plaintiff Holguin's vehicle outside of warranty period for certain repairs); *see also id.* ¶¶ 88, 93 (Plaintiff Kalkstein's vehicle outside of warranty period for certain repairs).  Moreover, Plaintiffs Mirenda and Barker fail to allege that their vehicles were within the applicable mileage limit.  *See id.* ¶¶ 52, 147.  As this Court has previously recognized: "To allow a customer to seek damages for breach of an express warranty beyond the limits specified in that warranty would in effect compel the manufacturer to insure all latent defects for the entire life of the product and

16

would place a burden on the manufacturer for which it did not contract."[12]  *In re Ford I*, 2007 WL 2421480, at *7 (citing *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942, 950 (Ill. Ct. App. 2005)).   These Plaintiffs' claims are properly dismissed.[13]

## II.   Plaintiffs' Implied Warranty Claims Should Be Dismissed.

Plaintiffs' implied warranty claims also should be dismissed because Plaintiffs do not allege a persistent defect that renders their vehicles unmerchantable, and several plaintiffs cannot satisfy state-law privity requirements.

### A.   Plaintiffs Do Not Allege That Their Vehicles Were Unmerchantable at the Time of Sale.

A product is unmerchantable only if it is not fit for the ordinary purposes for which such goods are used.  *See generally* U.C.C. § 2-314; *Tershakovec*, 2018 WL 3405245, at *9 ("To state a claim for breach of the implied warranty of

---

[12] *See also Cohan v. Pella Corp.*, No. 2:14-MN-00001-DCN, 2015 WL 6465639, at *11 (D.S.C. Oct. 26, 2015) (discovery of a breach of express warranty "necessarily must occur during the warranted period"); *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 994 (N.D. Cal. 2013) (repairs outside warranty period "cannot be the basis of a breach of express warranty claim"); *John Deere Co. of Kansas City v. Tenberg*, 445 S.W.2d 40, 43 (Tex. Civ. App. 1969) (seller not "bound beyond the terms of his warranty fixed by written agreement").

[13] Plaintiff Barker's express and implied warranty claims are also untimely under Texas's four-year statute of limitations, which begins to run on the date of delivery, since he purchased his vehicle on or around January 12, 2016 but Plaintiffs did not file suit until April 30, 2020.  CCAC ¶ 146; *see Omni USA, Inc.*, 964 F. Supp. 2d at 815; *see also U.S. Marine Corp. v. Kline*, 882 S.W.2d 597, 599 (Tex. Ct. App. 1994) (dismissing express warranty claim where plaintiffs took delivery of the product in May 1986 and sued on "August 29, 1990, more than four years later").

merchantability [under Florida law], a consumer must demonstrate that a good sold by a merchant is fit for the ordinary purposes for which such goods are used.") (quotation marks omitted).[14] As this Court has correctly observed, "[m]erchantable is not a synonym for perfect," because the "warranty of merchantability" requires only that goods "are of average quality in the industry." *Rosenbaum v. Toyota Motor Sales, USA, Inc.*, No. 16-CV-12645, 2016 WL 9775018, at *2 (E.D. Mich. Oct. 21, 2016) (Friedman, J.) (quotation marks omitted), *aff'd sub nom. Rosenbaum v. Toyota Motor Sales, U.S.A., Inc.*, 708 F. App'x 242 (6th Cir. 2017). Put differently, the implied warranty "comes nowhere close to guaranteeing perfection" and instead "provides for a minimum level of quality." *Greene v. BMW of N. Am.*, No. CIV. 2:11-04220 WJM, 2012 WL 5986457, at *3 (D.N.J. Nov. 28, 2012); *see also Finigan-Mirisola v. DaimlerChrysler Corp.*, 869 N.E.2d 632 (Mass. Ct. App. 2007) (same); *Bang*, 2016 WL 7042071, at *7 ("As applied to cars, the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition

---

[14] *See also* Cal. Civ. Code § 1791.1(a)(2) (California's Song-Beverly Act); Mass. Gen. Laws ch. 106 § 2-314(a) & (c); N.H. Rev. Stat. § 382-A:2-314; *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297–98 (4th Cir. 1989) (South Carolina); *Bang v. BMW of N. Am., LLC*, No. CV 15-6945, 2016 WL 7042071, at *7 (D.N.J. Dec. 1, 2016) (New Jersey); *Omni USA, Inc.*, 964 F. Supp. 2d at 816 (Texas); *Haag v. Hyundai Motor Am.*, 969 F. Supp. 2d 313, 317 (W.D.N.Y. 2013) (New York); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 867 (S.D. Ohio 2012) (Ohio); *Visual Commc'ns, Inc. v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 611 F. Supp. 2d 465, 469 (E.D. Pa. 2009) (Pennsylvania); *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 865 N.E.2d 334, 340–41 (Ill. Ct. App. 2007) (Illinois); *Computer Network, Inc. v. AM Gen. Corp.*, 696 N.W.2d 49, 56 (Mich. Ct. App. 2005) (Michigan).

18

and substantially free of defects . . . .") (quotation marks omitted); *Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 888 (E.D. Pa. 1996) (same).

Vehicles may be unmerchantable "where a defect's symptoms [are] persistent and [cannot] be addressed through repair or replacement of an isolated component." *Blissard v. FCA US LLC*, No. LACV1802765JAKJEMX, 2018 WL 6177295, at *7 (C.D. Cal. Nov. 9, 2018). But vehicles are not unmerchantable if they undergo "one or two repairs, which apparently solved any defect-related issue they experienced for at least six months, and possibly permanently." *Mooradian v. FCA US, LLC*, No. 1:17-CV-1132, 2017 WL 4869060, at *7 (N.D. Ohio Oct. 27, 2017); *see also Zuehlsdorf v. FCA US LLC*, No. EDCV 18-1877 JGB (KKx), 2019 WL 2098352, at *11 (C.D. Cal. Apr. 30, 2019) (dismissing implied warranty claim where the plaintiff alleged only two incidents caused by the alleged defect).

As in *Nardizzi*, Plaintiffs fail to state implied warranty of merchantability claims because they do not allege a persistent defect that would render their vehicles unmerchantable. *Nardizzi* Order at 7–9. At most, Plaintiffs have pleaded that they have had to replace low-profile tires on high-horsepower sports cars a handful of times since purchasing their vehicles, but that alone does not render their vehicles unmerchantable. Their allegations are particularly flawed because their vehicles are equipped with run-flat tires, which means that they could still safely drive their vehicles to an authorized dealer for a repair even when a tire is flat. Ex. H at 255.

19

Moreover, Plaintiffs Rochford, Mirenda, the Smiths, Goldberg, Chookazian, Bossart, Turner, and Barker fail to allege that any problems continued after they sought repairs. *See* CCAC ¶¶ 47, 53, 77, 100, 105, 117, 142, 149. Plaintiff Williams alleges that he has not been able to drive his vehicle the last few months because the dealer does not have the necessary parts for a repair, *id.* ¶ 111, but that allegation admits that he does not know whether the purported wheel issue will persist after the repair. Plaintiffs Barrington, Holguin, Lupis, Kalkstein, Roth, and the Glazers purportedly had to seek several repairs but do not allege that they cannot drive their vehicles (including Plaintiff Holguin, who has driven his vehicle for nearly 70,000 miles). *Id.* ¶¶ 21–25, 32–42, 61–66, 92–93, 125–28, 135–37. Only Plaintiff Czajka alleges that a tire on his vehicle continues to lose air pressure after the wheel was replaced (by whom, he does not allege), but he does not allege that he is unable to drive his vehicle (nor could he, given his vehicle's run-flat tires). *Id*. ¶ 82; Ex. H at 255.[15]

A "key factor" regarding whether plaintiffs have stated an implied warranty claim is whether they are "still able to drive their cars despite the alleged defects."

---

[15] Some Plaintiffs do not even allege that the same wheel continued to exhibit problems after the initial repair, which further undermines their claims. For instance, the Glazers allege that their front right wheel cracked, was repaired, and then the left wheel cracked and was repaired, with no further problems for either wheel. CCAC ¶¶ 135–37; *see also id.* ¶¶ 124–26 (similar allegations for Plaintiff Roth). Plaintiff Barrington fails to specify which wheels were repaired. *See id.* ¶¶ 21–25; *see also id.* ¶¶ 62–65 (similar problem for Plaintiff Lupis).

20

*Brown v. Hyundai Motor Am.*, No. CV1811249SDWJAD, 2019 WL 4126710, at *5 (D.N.J. Aug. 30, 2019) (collecting cases).   Here, all Plaintiffs fail to meet this standard, and their implied warranty claims should be dismissed.

> **B.      Implied Warranty Claims of Plaintiffs Rochford, Mirenda, Czajka, Kalkstein, and the Glazers Fail for Lack of Privity.**

Plaintiffs Rochford, Mirenda, Czajka, Kalkstein, and the Glazers cannot bring implied warranty claims because they lack privity with GM and allege only economic damages.   CCAC ¶¶ 47, 53, 83, 92–93, 111, 136–37.   In their respective states—Florida, Illinois, Michigan, New York, and Ohio—plaintiffs must allege privity between the purchaser and manufacturer for implied warranty claims based on economic damages.   *See Voelker*, 353 F.3d at 525 (Illinois law).[16]   Under these states' laws, purchasing a vehicle from an authorized dealer, as Plaintiffs did here, does not satisfy the privity requirement.   *See Speier-Roche v. Volkswagen Grp. of Am., Inc.*, No. 14-20107-CIV, 2014 WL 1745050, at *7 (S.D. Fla. Apr. 30, 2014) (dismissing implied warranty claim for lack of privity where vehicle was purchased from dealer, not manufacturer).[17]

---

[16] *See also Harnden v. Ford Motor Co.*, 408 F. Supp. 2d 315, 322 (E.D. Mich. 2005) (Michigan), *aff'd sub nom. Harnden v. Jayco, Inc.*, 496 F.3d 579 (6th Cir. 2007); *Mesa v. BMW of N. Am. LLC*, 904 So. 2d 450, 458 (Fla. 3d DCA 2005) (Florida).

[17] *See also Kuns v. Ford Motor Co.*, 926 F. Supp. 976, 986 (N.D. Ohio) (Ohio), *aff'd*, 543 F. App'x 572 (6th Cir. 2013); *Gernhardt v. Winnebago Indus.*, No. 03-73917, 2003 WL 23976324, at *4 (E.D. Mich. Dec. 30, 2003) (same); *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1030 (Ill. 1988) (dismissing implied

**C.    Plaintiffs Mirenda, Turner, Barker, Holguin, and Kalkstein Fail to Plead That Their Vehicles Remained Covered by an Implied Warranty.**

The NVLW expressly provides that "**[a]ny implied warranty … applicable to this vehicle is limited in duration to the duration of this written warranty**." Ex. C at 13; Ex. D at 13; Ex. E at 12–13; Ex. F at 13, Ex. G at 13 (emphasis in original); 15 U.S.C. § 2308 (providing that "implied warranties may be limited in duration to the duration of a written warranty of reasonable duration"). Accordingly, the implied warranty claims of Plaintiffs Mirenda, Turner, Barker, Holguin (for certain repairs), and Kalkstein (for certain repairs) fail for the same reason their express warranty claims fail: *i.e.*, because they do not allege they presented their vehicles for repair within the warranty period. *See supra* Argument § I.C.

**III.    Plaintiffs' Magnuson-Moss Warranty Act Claims Fail.**

Plaintiffs' claims under the Magnuson-Moss Warranty Act ("MMWA") fail for two reasons. First, the CCAC's failure to name 100 named plaintiffs means that this Court lacks jurisdiction over the MMWA claims. *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034–35 (9th Cir. 2020) (holding that the "text is clear that a requirement for an MMWA class action in federal court is at least one hundred named plaintiffs" and the Class Action Fairness Act cannot be used to circumvent

---

warranty claim against GM because there was "no buyer-seller relationship between the plaintiff and GM").

this requirement).  Moreover, these claims rise or fall with the state-law warranty claims.  *Weidman v. Ford Motor Co.*, No. 18-CV-12719, 2019 WL 3003693, at *5 (E.D. Mich. July 10, 2019).  Because Plaintiffs' warranty claims fail under state law, their MMWA claims necessarily fail too.  *Id.*

## IV.   Plaintiffs' Unjust Enrichment Claims Fail as a Matter of Law.

The Court should also dismiss Plaintiffs' unjust enrichment claims for two reasons.  *First*, as the *Nardizzi* court found and as this Court has previously found, unjust enrichment is not available where there is an adequate remedy at law. *Nardizzi* Order at 11–12; *In re Ford Motor Co. Speed Controls Deactivation Switch Prods. Liab. Litig.*, 664 F. Supp. 2d 752, 763–64 (E.D. Mich. 2009) (Friedman, J.) ("*In re Ford II*").  Here, Plaintiffs' unjust enrichment claims are based on the same alleged facts as their breach of warranty claims.  The NVLW covering Plaintiffs' vehicles is an express contract, and under the law of all relevant states, an "action for unjust enrichment cannot lie in the face of an express contract." *Turner v. Rams Head Co.*, No. 3:05-2893-CMC, 2007 WL 2579386, at *7 (D.S.C. Sept. 4, 2007); *In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618, 634 (E.D. Mich. 2019) (collecting cases).[18]  Because Plaintiffs do not dispute

---

[18] *See Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 819 (7th Cir. 2018) (Illinois); *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009) (Ohio); *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (California); *Pershouse v. L.L. Bean, Inc.*, 368 F. Supp. 3d 185, 190 (D. Mass.

that GM's express warranty governs this dispute (in fact, they attempt to bring claims under the terms of that warranty), their unjust enrichment claim must be dismissed.

*Second*, Plaintiffs Czajka, Kalkstein, Chookazian, Bossart, Roth, the Glazers, and Barker did not confer a benefit on GM.  Under the laws of their respective states—Michigan, Ohio, Pennsylvania, New Jersey, and Texas—unjust enrichment requires the plaintiff to allege facts showing that the plaintiff conferred a *direct* benefit on the defendant.[19]  Purchasing a vehicle from an authorized independent dealership does not satisfy this requirement.  *Adams*, 395 F. Supp. 3d at 856

---

2019) (Massachusetts); *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1195 (S.D. Fla. 2017) (same); *Vantage Learning (USA), LLC v. Edgenuity, Inc.*, 246 F. Supp. 3d 1097, 1100–01 (E.D. Pa. 2017) (Pennsylvania); *Chiarelli v. Nissan N. Am., Inc.*, No. 14-CV-4327 NGG VVP, 2015 WL 5686507, at *18 (E.D.N.Y. Sept. 25, 2015) (New Jersey); *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 471 (S.D.N.Y. 2014) (New York); *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 929–30 (N.D. Tex. 2014) (Texas); *Clapp v. Goffstown Sch. Dist.*, 977 A.2d 1021, 1025–26 (2009) (New Hampshire).

[19] *Schechter v. Hyundai Motor Am.*, No. CV 18-13634 (FLW), 2019 WL 3416902, at *11 (D.N.J. July 29, 2019) ("A claim of unjust enrichment . . . requires that the plaintiff allege a sufficiently direct relationship with the defendant to support the claim."); *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 856 (S.D. Tex. 2018) (plaintiff must allege that defendant obtained money which belongs to plaintiff); *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 618 (E.D. Mich. 2017) ("Michigan law requires a direct benefit or some sort of direct interaction between Plaintiffs and Whirlpool."); *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 721 (E.D. Pa. 2013) ("The 'benefit' must be conferred by the plaintiff directly—indirect benefits bestowed by third parties will not support a claim for unjust enrichment."); *Savett v. Whirlpool Corp.*, No. 12 CV 310, 2012 WL 3780451, at *7 (N.D. Ohio Aug. 31, 2012) ("Under Ohio law, indirect purchasers may not assert unjust enrichment claims against a defendant without establishing that the purchaser conferred a benefit on the defendant through an economic transaction.").

(dismissing unjust enrichment claim where plaintiffs did not purchase their vehicles directly from Nissan); *Schechter*, 2019 WL 3416902, at *11 (direct relationship lacking where plaintiff purchased vehicle from authorized dealer, not manufacturer).[20]  These Plaintiffs' unjust enrichment claims should be dismissed.

*Third*, Plaintiffs Rochford (Florida) and Williams (New York) cannot recover for unjust enrichment because their claims are predicated upon the same deceptive trade practice allegations asserted under the FDUTPA and New York General Business Law §§ 349 and 350.  *See Am. Honda Motor Co. v. Motorcycle Info. Network*, Inc., 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005); *In re Porsche Cars N. Am.*, 880 F. Supp. 2d at 843 (dismissing unjust enrichment claim under Florida law because "where a plaintiff alleges that a defendant engaged in deceptive trade practices, the plaintiff has an adequate remedy at law *even if his or her FDUTPA claim is ultimately unsuccessful*") (emphasis added); *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 512 (S.D.N.Y. 2018) (collecting cases).

## V.   The "Nationwide" Magnuson-Moss and Unjust Enrichment Claims Should Be Dismissed.

Plaintiffs' "nationwide" MMWA and unjust enrichment claims also fail for an additional reason: there is no such thing as "nationwide" MMWA and unjust

---

[20] Plaintiff Chookazian's claim should also be dismissed for lack of privity, which is required under New Jersey law for unjust enrichment claims.  *See Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 460 (D.N.J. 2012) ("A claim for unjust enrichment in New Jersey requires privity between the parties . . . .").

enrichment claims. Because MMWA claims rise and fall with state-law express and implied warranty claims, a MMWA claim not tethered to the warranty laws of any of the twelve jurisdictions at issue cannot stand on its own. *Weidman*, 2019 WL 3003693, at *5; *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010). Similarly, unjust enrichment claims are specific to a particular state's law, and therefore the CCAC violates Fed. R. Civ. P. 8 because it does not "sufficiently identify those jurisdictions under which" Plaintiffs bring their claims. *Avenarius v. Eaton Corp.*, 898 F. Supp. 2d 729, 740 (D. Del. 2012) (dismissing unjust enrichment claim where, as here, they were "not unambiguously limited" to state specific subclasses); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009) ("Unjust enrichment is not a catch-all claim existing within the narrow scope of federal common law.").

Moreover, the nationwide MMWA and unjust enrichment claims must be dismissed because a named plaintiff lacks standing to assert legal claims on behalf of a putative class pursuant to state law under which the named plaintiff's own claims do not arise. *In re Takata Airbag Prod. Liab. Litig.*, MDL No. 2599, 2020 WL 2764196, at *24 (S.D. Fla. May 27, 2020) (rejecting nationwide MMWA claim because "the named-Plaintiffs lack standing to represent putative class members of states for which there are no breach of implied warranty claims") (collecting cases); *Lauren v. PNC Bank, N.A.*, 296 F.R.D. 389, 391 (W.D. Pa. 2014) ("[Plaintiff]

suffered an alleged injury exclusively under Ohio law. Therefore, she does not have standing to assert unjust enrichment claims under the law(s) of any other state.").

## VI. Plaintiffs' State Consumer Protection Claims Fail as a Matter of Law.

Plaintiffs allege that GM violated twelve state consumer protection statutes by knowingly failing to disclose the purported wheel defect. CCAC ¶¶ 171–91. The *Nardizzi* court **already rejected** a similar omission-based theory predicated on the **same allegations** Plaintiffs rely on in this case to establish GM's knowledge of the purported defect. *Compare* CCAC ¶¶ 171–91, *with Nardizzi* Compl. ¶¶ 43–61; *see also Nardizzi* Order at 9–10. There is no reason to reach a different conclusion here. And even if Plaintiffs could show knowledge (they cannot), their consumer protection claims fail for various other reasons specific to each state statute.

### A. Plaintiffs Cannot Show GM Had Knowledge of the Alleged Defect.

To state a claim under the law of every relevant consumer protection statute, Plaintiffs must adequately allege that GM had pre-purchase knowledge of the purported defect.[21] As in *Nardizzi*, Plaintiffs allege knowledge based on three

---

[21] *See Szep*, 2020 WL 5834876, at *10 ("Ohio's [CSPA] requires a defendant to have actual awareness (knowledge) of a defect.") (quotation marks omitted); *Matthews v. Am. Honda Motor Co.*, No. 12-60630-CIV, 2012 WL 2520675, at *3 (S.D. Fla. June 6, 2012) (knowledge required to plead omission-based claim under Florida DUTPA; *Barrera v. Samsung Elecs. Am., Inc.*, No. SACV1800481CJCPJWX, 2019 WL 1950295, at *4 (C.D. Cal. Feb. 27, 2019) ("To state a valid claim for deceptive practices and fraud under the UCL [] and CLRA, a plaintiff must allege that the defendant had pre-purchase knowledge of the defects."); *Brown*, 2019 WL 4126710, at *6–7 (New Jersey CFA); *Miller v. Gen. Motors, LLC*, No. 17-CV-14032, 2018

27

sources: (1) pre-release testing, repair data, and similar information, (2) complaints purportedly submitted to NHTSA and posted on a third-party website, and (3) GM's response to a single post on an online forum.  CCAC ¶¶ 171–91.  None of these sources—individually or collectively—support a plausible inference of knowledge.

The CCAC's allegations regarding testing, "reports received from dealerships," and "field data" do not plausibly allege knowledge.  Plaintiffs provide no facts whatsoever to show any tests or data related to the wheels on proposed Class Vehicles or how the purported testing or data would have disclosed a defect.  *See id*. ¶¶ 181–84.  Courts have found "generic allegations" of an automaker's "access to 'testing' and 'analysis'" insufficient to "support an inference that a defendant knew about a design defect at the product's time of sale."  *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 753 (E.D. Mich. 2017) (collecting cases).[22]  Courts also reject a

---

WL 2740240, at *14–15 (E.D. Mich. June 7, 2018) (Michigan CPA); *Kommer v. Ford Motor Co.*, No. 117CV0296LEKDJS, 2018 WL 3727353, at *3 (N.D.N.Y. Aug. 6, 2018) (New York GBL); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 421 (E.D. Pa. 2010) (Pennsylvania UTPCPL); *Kelton v. Hollis Ranch, LLC*, , 927 A.2d 1243, 1246 (N.H. 2007) (New Hampshire CPA); *Patterson v. McMickle*, 191 S.W.3d 819, 827 (Tex. App. 2006) (Texas DTPA); *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595 (Ill. 1996) (Illinois CFA); *Wright v. Craft*, 640 S.E.2d 486, 501 (S.C. Ct. App. 2006) (South Carolina UTPA); *Underwood v. Risman*, 605 N.E.2d 832, 835 (Mass. 1993) (Massachusetts CPA).

[22] *See also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) ("The allegation that HP, as the manufacturer, had access to the aggregate information and data regarding the risk of overheating is speculative and does not suggest how any tests or information could have alerted HP to the defect."); *Mandani*

"generalized assertion that unspecified . . . aggregate data" from dealers can inform a manufacturer "of the alleged defect at the time of sale." *Grodzitsky v. Am. Honda Motor Co.*, No. 2:12-CV-1142-SVW-PLA, 2013 WL 690822, at *6 (C.D. Cal. Feb. 19, 2013); *see also Cadena v. Am. Honda Motor Co.*, No. CV184007MWFPJWX, 2019 WL 3059931, at *13 (C.D. Cal. May 29, 2019) (field technical reports and hundreds of complaints insufficient "to establish with any level of specificity what was allegedly actually reported to Honda").

Plaintiffs also do not establish knowledge based on the same 24 NHTSA complaints and 17 consumer complaints posted on "Corvette Forum" (a third party website unrelated to GM) that Judge Carney rejected in *Nardizzi* because many were published ***after*** the plaintiff purchased his vehicle and suggested that the wheel problems were caused by road conditions.   CCAC ¶¶ 178–79; *see also Nardizzi* Order at 9–10.  Here, the pre-purchase complaints are even fewer for most Plaintiffs. Indeed, every NHTSA complaint and every Corvette Forum complaint were published ***after*** Plaintiffs Holguin, Mirenda, Kalkstein, Williams, Turner, and

---

*v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-07287-HSG, 2019 WL 652867, at *8 (N.D. Cal. Feb. 15, 2019) ("Plaintiffs' conclusory allegations of pre-purchase knowledge based on 'pre-sale design and testing' are insufficient."); *Schechter*, 2019 WL 3416902, at *8 ("[G]eneral allegations" about "pre-production testing" do not show manufacturer was aware of alleged defect) (quotation marks omitted); *Resnick v. Hyundai Motor Am., Inc.*, No. CV1600593BROPJWX, 2016 WL 9455016, at *13 (C.D. Cal. Nov. 14, 2016) ("[A]llegations that 'Hyundai likely conducts testing on components . . . are insufficient to establish Defendant's knowledge[.]").

Barker purchased their vehicles in 2016, which forecloses any claim that these complaints establish knowledge at the time of purchase for those Plaintiffs. *Tomek v. Apple Inc.*, 636 F. App'x 712, 714 (9th Cir. 2016); *Schechter*, 2019 WL 3416902, at *6. Similarly, 19 of the NHTSA complaints were submitted after Plaintiffs Barrington, Lupis, the Smiths, Czajka, Chookazian, Bossart, Roth, and the Glazers purchased their vehicles. CCAC ¶¶ 18, 57, 69, 80, 103, 115, 121, 131; *see also id.* ¶¶ 80, 179 (11 online forum complaints posted after Plaintiff Czajka purchased his vehicle). And even for those Plaintiffs (like Rochford, CCAC ¶ 45) whose vehicle purchases post-date submission of certain complaints, these handful of complaints represent a tiny fraction of the total number of sales in the United States of the vehicles which comprise the proposed classes—approximately 150,000 cars. *See Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-05452-JST, 2018 WL 2267448, at *4 (N.D. Cal. May 17, 2018) ("Forty-five, or even fifty-six, [NHTSA] complaints out of hundreds of thousands of vehicles does not on its face indicate an unusually high number of complaints . . . . These complaints therefore do not show VW's knowledge of the alleged defect."); *Dawson v. Gen. Motors LLC*, No. 19-8680, 2019 WL 3283046, at *6 (D.N.J. July 22, 2019) ("[A] company cannot be certain about a systematic part failure based on about 100 instances of failure in a national market over the course of several years.").

Moreover, and as the *Nardizzi* court recognized, far from establishing GM's

30

knowledge of a purported defect, many of these complaints indicate that tire and wheel problems resulted from poor road conditions or driver error. *Nardizzi* Order at 9–10. Within the NHTSA complaints, one person admitted to cracking his wheel after hitting a pothole on the interstate, while another hit a screw that caused a flat tire. CCAC ¶ 178(n), (x). Another complained that the wheels "bend on impact." *Id.* ¶ 178(i). In another complaint, the driver admits to discovering a cracked wheel during a used vehicle *inspection*, without any indication of what precipitated the damage. *Id.* ¶ 178(d). Likewise, many of the Corvette Forum complaints indicate that the alleged tire and wheel problems were due to road impacts. *See, e.g.*, *id.* ¶ 179(e) (tires were bent after driver hit pothole at 35 mph and damaged another tire while hitting a bump at 55 mph); ¶ 179(g) (wheels damaged after "taking a very hard off ramp"). As Judge Carney recognized, none of those complaints show that GM was at fault for the purported vehicle issues, and instead confirm the common-sense view that poor roads and everyday driving can cause flat tires and wheel problems. *See Nardizzi* Order at 10. This Court should follow *Nardizzi* and find that these complaints do not plausibly show knowledge.

Finally, Plaintiffs attempt to establish knowledge based on a single complaint posted on the Corvette Forum website, which a GM engineer responded to by stating that "a frequent sequence of events is that a wheel gets bent by a road hazard but the damage is initially undetectable to the driver," and over time "fatigue cracks" can

form in the wheels.  CCAC ¶¶ 172–73.  As Judge Carney found, this response does not demonstrate GM's knowledge of the alleged defect because the engineer *disclaimed* any such knowledge and stated that the wheels are not defective.[23]  *Id.* ¶ 173; *Nardizzi* Order at 10.

Plaintiffs' conclusory allegations regarding testing and repair data and a handful of NHTSA and consumer complaints do not raise a plausible inference of knowledge.  *See Nardizzi* Order at 9–10.  As a result, Plaintiffs' consumer protection act claims should be dismissed.

## B.   Plaintiffs Barrington and Holguin Fail to Plead Claims Under California's Consumer Protection Laws.

Plaintiffs Barrington and Holguin allege claims under (1) the California Consumers Legal Remedies Act ("CLRA") and (2) California's Unfair Competition Law ("UCL").  CCAC ¶¶ 237–68.  Neither claim is properly pled.

Plaintiffs' CLRA claim requires Plaintiffs to show that GM was "aware of a defect at the time of sale."  *Wilson*, 668 F.3d at 1145.  But as discussed above,

---

[23] For the same reasons, Plaintiffs' allegation that this complaint (and the GM engineer's response") is evidence of "active concealment" is neither plausible nor credible.  *See* CCAC ¶¶ 188–91.  The engineer's response to the complaint disclaims the existence of a "defect," and Plaintiffs never "allege specific affirmative acts on the part of [GM] in hiding, concealing or covering up the matters complained of."  *Beck*, 273 F. Supp. 3d at 754 (quotation marks omitted).  Conclusory language like "actively concealed" (without more) does not satisfy the pleading burden.  *See id.* ("Neither mere nondisclosure nor generalized allegations with respect to active concealment will suffice.") (quotation marks omitted) (collecting cases).

Plaintiffs have failed to allege that GM knew at the time of purchase that their vehicles suffered from the purported defect. *See Nardizzi* Order at 9–10.

Plaintiffs' UCL claim fares no better. The UCL separately prohibits (1) unlawful acts or practices, (2) unfair acts or practices, and (3) fraudulent acts or practices. Cal. Bus. & Prof. Code § 17200. The CCAC lumps all three of these prongs together (CCAC ¶ 256) but each has unique elements of proof, none of which are alleged here. *First*, Plaintiffs fail to allege a violation of the "unlawful" prong because Plaintiffs do not "tether" their UCL claim to GM's predicate violation of another law. *Resnick*, 2017 WL 6549931, at *15. Moreover, since their CLRA claims fail "any UCL unlawful prong claim also fails." *Elsayed v. Maserati N. Am., Inc.*, 215 F. Supp. 3d 949, 965 n.9 (C.D. Cal. 2016). *Second*, Plaintiffs do not allege how GM's conduct was "unfair" under any of the tests that courts employ to evaluate the "unfair" prong. *See* CCAC ¶¶ 253–68; *Elsayed*, 215 F. Supp. 3d at 966. *Third*, "the standard for deceptive practices under the 'fraudulent' prong applies equally to misrepresentation-based claims under the CLRA," and so "courts often address these claims in tandem." *Gray v. Toyota Motor Sales, U.S.A.*, No. CV 08-1690-PSG (JCx), 2012 WL 313703, at *3 (C.D. Cal. Jan. 23, 2012). As outlined above, Plaintiffs fail to plead that GM knew of any alleged defect (let alone knew of such a defect prior to their purchases) and therefore fail to allege a "fraudulent" act or practice. *See Davison v. Kia Motors Am., Inc.*, No. SACV 15-00239-CJC, 2015 WL

3970502, at *4 (C.D. Cal. June 29, 2015) (dismissing UCL claim for lack of knowledge); *see also Nardizzi* Order at 10.

Finally, the CLRA and UCL claims fail because Plaintiffs have not pled reliance with the particularity. *See Kearns*, 567 F.3d at 1126 (dismissing UCL and CLRA claims because the plaintiff "failed to articulate the who, what, when, where, and how of the misconduct alleged" since he "failed to specify which sales material he relied upon in making his decision to buy a [certified pre-owned] vehicle" or "when he was exposed to them or which ones he found material.").[24]

### C.    Plaintiff Rochford Has Not Alleged a Violation of the Florida Deceptive and Unfair Trade Practices Act.

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") requires Plaintiff Rochford to allege (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1140 (Fla. 3rd DCA 2008). Here, Plaintiff Rochford does not allege a deceptive act or unfair practice. Conclusory allegations that she "relied on GM's representations" that her vehicle was "safe and reliable" and "covered by a 36 month/36,000 mile bumper-to-bumper warranty" (CCAC ¶ 48) do not state a claim. *See Resnick*, 2017 WL

---

[24] Moreover, the CLRA's three-year statute of limitations also bars Plaintiff Holguin's claim, since he purchased his vehicle in December 2016 and filed his complaint on May 6, 2020. *See* Cal. Civ. Code § 1783 ("Any action brought under the specific provisions of Section 1770 shall be commenced not more than three years from the date of the commission of such method, act, or practice.").

6549931, at *18; *Hall v. Sea World Entm't, Inc.*, No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911, at *15 (S.D. Cal. Dec. 23, 2015) (dismissing FDUTPA claim where plaintiffs failed "to specifically allege that they viewed any . . . statements or advertisements" that were the basis of the dispute).[25]   And no representations stemming from the written warranty would be likely to mislead a reasonable consumer where the warranty does not cover "tire and wheel damage or wear."  Ex. G at 9.  *See Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (FDUTPA requires "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances" and "showing of probable, not possible, deception") (quotation marks omitted).

Plaintiff Rochford also cannot show that any purported misrepresentation or omission caused her to purchase her vehicle.  *See Kia Motors Am. Corp.*, 985 So. 2d at 1140 (causation an element of FDUTPA).  Her conclusory allegation that she "relied on GM's representations" does not plausibly allege any particular communication with GM that she actually relied upon.  *See Divis v. Gen. Motors LLC*, No. 18-13025, 2019 WL 4735405, at *8 (E.D. Mich. Sept. 27, 2019) (plaintiff

---

[25] *See also Sanlu Zhang v. Royal Caribbean Cruises, Ltd.*, No. 19-20773-CIV, 2019 WL 8895223, at *6 (S.D. Fla. Nov. 15, 2019) (words such as "safe" and "reliable" are "considered mere puffery and cannot, therefore, support a claim for misrepresentation"); *Beck*, 273 F. Supp. 3d at 749 ("Examples of terms that consistently qualify as puffery include 'quality,' 'reliability,' 'performance,' and 'safely.'").

failed "to point to any pre-purchase communication he had with GM or a pre-purchase GM advertisement he saw in which GM should have disclosed the existence of the [defect]"). Indeed, she fails to allege that she researched her vehicle in any way before purchasing it. *See Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 919 (C.D. Cal. 2010) (plaintiff did "not allege that, before he bought his [vehicle], he reviewed any brochure, website or promotional material that might have contained a disclosure of the [alleged] defect"). Plaintiff Rochford's inability to plead causation is yet another reason to dismiss her FDUTPA claim.

### D.   Plaintiff Mirenda Has Not Alleged a Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") prohibits "unfair or deceptive acts or practices," including misrepresentations or omissions of material fact. 815 Ill. Comp. Stat. 505/2. Like Plaintiff Rochford's FDUTPA claim, Plaintiff Mirenda's ICFA claim—based on the "safe and reliable" and "36 month/36,000 mile" statements, CCAC ¶ 55—does not plead an actionable misrepresentation. He does not allege with specificity that he saw any advertisements or statements regarding the quality of the wheels on his vehicle, and he does not allege that the NVLW contained misrepresentations. *See Schiesser v. Ford Motor Co.*, No. 16 C 730, 2017 WL 1283499, at *6 (N.D. Ill. Apr. 6, 2017) (dismissing ICFA claim where plaintiff failed to allege that he "saw or heard any of the allegedly deceptive communications prior to purchasing the Vehicle"). His

omissions-based claim (CCAC ¶ 331) fails for lack of knowledge, as discussed above. Indeed, he purchased his car more than a year *before* the first complaint alleged in the CCAC. *See id.* ¶¶ 51, 179(a). Finally, he cannot show that any misrepresentation or omission caused his injury because he does not allege that he interacted with GM when he purchased his vehicle or received any relevant disclosure from GM. *See Connick*, 675 N.E.2d at 593 (proximate causation required for ICFA claim); *see also Ehrlich*, 801 F. Supp. 2d at 920–21.

### E. Plaintiff Lupis Cannot State a Claim Under the Massachusetts Consumer Protection Act.

Plaintiff Lupis's Massachusetts Consumer Protection Act ("Chapter 93A") claim fails because, having purchased his vehicle in New Jersey, he cannot bring claims under Massachusetts law. CCAC ¶ 57. To decide which law applies to his claims, the Court, sitting in diversity, must apply Massachusetts's choice-of-law principles. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *see also Van Dusen v. Barrack*, 376 U.S. 612, 642 (1964) (transferee district court must "apply the laws of the [s]tate of the transferor district court"). "With respect to contractual choice of law issues, Massachusetts employs a 'functional' approach," that applies "the substantive law of the state which has the more significant relationship to the transaction in litigation." *Dunfey v. Roger Williams Univ.*, 824 F. Supp. 18, 20 (D. Mass. 1993); Restatement (Second) of Conflict of Laws (1971), §§ 6 & 188. Under this approach, New Jersey law would apply since New Jersey is the

location of the relevant sale. *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 277 (D. Mass. 2004). For this reason, Plaintiff's Chapter 93A claim fails because it is available only "if Massachusetts law applies to the issues underlying the claim." *Trent Partners and Assoc's, Inc. v. Digital Equip. Corp.*, 120 F. Supp. 2d 84, 97 (D. Mass. 1999); *see also* Mass. Gen. Laws ch. 93A, § 11 ("No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred *primarily and substantially within the commonwealth*.") (emphasis added).

Even if this Court decides Plaintiff Lupis can bring this claim, it should still be dismissed. To state a claim for a violation of Chapter 93A, Plaintiff Lupis must allege (1) an unfair or deceptive practice, (2) an injury or loss suffered by the consumer, and (3) a causal connection between the act and injury. Mass. Gen. Laws ch. 93A §§ 2, 9; *Breding v. Eversource Energy*, 344 F. Supp. 3d 433, 459 (D. Mass. 2019). Plaintiff Lupis alleges only an omission-based theory, *see* CCAC ¶ 368, so this claim fails for lack of knowledge as discussed above, *see Sheehy v. Lipton Indus., Inc.*, 24 Mass. App. Ct. 188, 196 (1987) (observing the "obvious principle that someone should not be liable for not disclosing what he does not know.").

F. **Plaintiffs Czajka and Kalkstein Cannot Bring a Michigan Consumer Protection Act Claim.**

To state a Michigan Consumer Protection Act ("MCPA") claim, these Plaintiffs must allege (1) that GM was "engaged in commerce within the meaning

38

of the Act," (2) that the MCPA prohibited GM's conduct, and (3) that they suffered a loss. *Montgomery v. Kraft Foods Glob., Inc.*, No. 1:12-CV-00149, 2012 WL 6084167, at *4 (W.D. Mich. Dec. 6, 2012), *aff'd*, 822 F.3d 304 (6th Cir. 2016).

However, the "MCPA does not apply to a 'transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.'" *Matanky*, 370 F. Supp. 3d at 799 (quoting Mich. Comp. Laws § 445.904(1)). "The Michigan Supreme Court construes this exemption broadly, finding that 'the relevant inquiry is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited.'" *Id.* (quoting *Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514 (Mich. 2007)).  Since federal and state law authorizes vehicle advertisements and sales, Plaintiffs cannot bring an MCPA claim based on allegations that GM engaged in unfair or deceptive practices by purportedly misrepresenting a feature of one of its vehicles. *Rosenbaum*, 2016 WL 9775018, at *3; *Matanky*, 370 F. Supp. 3d at 800.

Even if this Court addresses the merits of this claim, it should still be dismissed.  Insofar as it is based on allegations that GM did not comply with the NVLW, it fails as a matter of law because Plaintiffs' warranty claims are properly dismissed, as discussed above. *Sautner v. Fleetwood Enters., Inc.*, No. 05-73252, 2007 WL 1343806, at *6 (E.D. Mich. May 8, 2007).  Plaintiffs' omissions-based

39

claim fails for lack of knowledge, as also discussed above.  And Plaintiff Czajka's misrepresentation claim fails because any "safe and reliable" representation is not based on any "specific statements," *Flynn v. FCA US LLC*, 327 F.R.D. 206, 219 (S.D. Ill. 2018), and the 36-month/36,000-mile statement in the NVLW was true.

### G.   Plaintiffs' New Hampshire Consumer Protection Act Claim Must Be Dismissed.

Plaintiffs Goldberg and Robert and Carole Smith allege that GM violated the New Hampshire Consumer Protection Act ("NHCPA") because it "failed to disclose" the purported defect.  CCAC ¶ 436.  As explained above, their failure to plead that GM knew of the purported defect at the time of sale forecloses this claim. *See Kelton*, 927 A.2d at 1246.  Further, even though the Smiths purchased their vehicle in New Hampshire, they are Massachusetts citizens who reside in Massachusetts.  CCAC ¶ 68.  This, too, is fatal.  *See* N.H. Rev. Stat. Ann. § 358-A:1 (trade or commerce must "directly or indirectly affect[] the people of this state"); *In re Humira (Adalimumab) Antitrust Litig.*, No. 19 CV 1873, 2020 WL 3051309, at *29 (N.D. Ill. June 8, 2020) ("The offending conduct [under the NHCPA] does not need to occur within New Hampshire" but it must have an effect on the people of that state.).

### H.   Plaintiff Chookazian's New Jersey Consumer Fraud Act Claim Fails as a Matter of Law.

Plaintiff Chookazian cannot state a claim under the New Jersey Consumer

Fraud Act ("NJCFA") for two reasons. As an initial matter, the NJCFA does not apply because he purchased his car in Connecticut. CCAC ¶ 103. Under Michigan choice-of-law rules, the Court should apply the law of the state having the "most significant relationship to the transaction" based on the "general choice-of-law" rules. *Nat'l Cont'l Ins. Co. v. Aiazbekov*, 818 F. App'x 468, 471 (6th Cir. 2020) (quotation marks omitted). New Jersey applies the same test as Michigan, *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008), and New Jersey federal courts have consistently concluded that the state in which the purchase occurs usually has the most significant relationship for the purpose of determining which state's consumer protection laws apply, *see In re Bayer Phillips Colon Health Probiotic Sales Practices Litig.*, No. CIV.A. 11-3017 JLL, 2014 WL 5776153, at *6 (D.N.J. Nov. 6, 2014); *Nirmul v. BMW of N. Am., LLC*, No. 10-cv-5586 (SDW), 2011 WL 5195801, at *5 (D.N.J. Oct. 31, 2011); *Chan v. Daimler AG*, No. 11-5391 (JLL), 2012 WL 5827448, at *10 (D.N.J. Nov. 9, 2012). The Third Circuit has reached the same conclusion. *Cooper*, 374 F. App'x at 255. Dismissal is particularly appropriate here because Plaintiff not only purchased his vehicle in Connecticut, but presented it for service in Florida, which further reduces any connection his claim has to New Jersey.

Moreover, Plaintiff Chookazian fails to allege the requisite misrepresentation or knowing omission. *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 748 (N.J.

41

2009).  He fails to allege that he viewed any affirmative representation that his vehicle was "safe and reliable" (CCAC ¶ 107) before purchasing it.  *See Lieberson*, 865 F. Supp. 2d at 539 (finding NJCFA affirmative misrepresentation allegations "patently insufficient to satisfy Rule 9(b)" where plaintiff failed to allege "whether or when she viewed" various alleged misstatements).  Such a statement would be "non-actionable" puffery.  *Tatum v. Chrysler Grp. LLC*, No. 10-CV-4269 DMC JAD, 2011 WL 1253847, at *4 (D.N.J. Mar. 28, 2011).  And even if the NVLW misrepresented the scope of warranty coverage (which it does not), Plaintiff Chookazian never alleges that he read the NVLW before purchasing his vehicle (or conducted any other pre-purchase research).  *Stevenson v. Mazda Motor of Am., Inc.*, No. 14-5250 FLW DEA, 2015 WL 3487756, at *8 (D.N.J. June 2, 2015); *see also Bosland*, 964 A.2d at 749 (causation an element of NJCFA claim).  And as for his omission-based NJCFA claim, Plaintiff must allege a duty to disclose.  *See Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 441 (D.N.J. 2012).  Although he alleges that GM had a duty to disclose based on its "superior knowledge" of the alleged defect, CCAC ¶ 485, "a party's superior knowledge is insufficient to impose a duty to disclose in New Jersey," *Schechter*, 2019 WL 3416902, at *9 (collecting cases).

### I.    Plaintiff Williams Does Not Plead Plausible Violations of New York General Business Law §§ 349 and 350.

"To state a claim under either §§ 349 or 350, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially

misleading and that (3) plaintiff suffered an injury as a result of the allegedly deceptive act or practice." *Kommer*, 2018 WL 3727353, at *2 (quotation marks omitted).  Plaintiff Williams fails to satisfy the second and third prongs.

Like other Plaintiffs, Plaintiff Williams' general allegations regarding safety/reliability or warranty coverage are not specific enough to plead a claim. *See, e.g.*, *Dixon v. Ford Motor Co.*, No. 14–CV–6135 (JMA)(ARL), 2015 WL 6437612, at *8 (E.D.N.Y. Sept. 30, 2015) (rejecting plaintiff's argument that defendant's "express warranty contain[ed] misrepresentations" because she did not "specifically identify any of those representations as deceptive," which was alone sufficient to warrant dismissal of § 349 claim); *Woods v. Maytag Co.*, No. 10–CV–0559 (ADS)(WDW), 2010 WL 4314313, at *16 (E.D.N.Y. Nov. 2, 2010) ("[G]eneral references to advertisements and statements will not be sufficient to allege a deceptive act or practice.").  Moreover, he does not plead that he saw such statements or that he viewed the NVLW before his purchase.  *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) ("To properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased.").

As for his omission-based claim, Plaintiff Williams does not adequately allege that GM had pre-purchase knowledge, *Kommer v. Ford Motor Co.*, 2017 WL

3251598, at *3 (N.D.N.Y. July 28, 2017), and he cannot show that any alleged concealment caused his injuries because there is no allegation that he interacted with GM or was in a position to receive a disclosure from GM at the point of purchase. *Gale v. IBM*, 9 A.D.3d 446, 447 (N.Y. App. Div. 2004).

### J. Plaintiffs Bossart's and Roth's Pennsylvania Unfair Trade Practices and Consumer Protection Law Claims Should be Dismissed.

Plaintiffs Bossart and Roth allege that GM violated four provisions of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL"): three of which bar misrepresentations of goods and false advertising and a fourth "catch-all" provision which bars "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Stat. Ann. § 201-2(v), (vii), (ix), (xxi); CCAC ¶ 547.

As an initial matter, the PUTPCPL claims fail because Plaintiffs have not adequately alleged that GM had pre-purchase knowledge. *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 498 (3d Cir. 2013) (recognizing that "knowledge of the falsity of one's statements or the misleading quality of one's conduct" is required to state a PUTPCPL claim).

Moreover, the misrepresentation-based claim fails under Pennsylvania's "gist of the action" doctrine, which ensures "'that a party does not bring a tort claim for what is, in actuality, a claim for a breach of contract.'" *Weiss v. Fritch, Inc.*, No.

44

2332 EDA 2017, 2018 WL 1940109, at *5 (Pa. Super. Ct. Apr. 25, 2018).   In addition, this misrepresentation-based claim fails because Plaintiffs do not allege any specific misrepresentations about the wheels and the NVLW does not contain any misrepresentations regarding warranty coverage.

The catch-all claim fares no better.   To bring a claim under this provision, Plaintiffs must "show that [they] justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004).   Plaintiffs fail to allege that GM engaged in any wrongful conduct and cannot show that any harm resulted from the alleged misconduct.   In particular, Plaintiff Bossart never alleges that he viewed any representations or the NVLW before purchasing the vehicle; indeed, he purchased his vehicle from a dealer in New Hampshire and had it shipped to Pennsylvania.   CCAC ¶ 115.   This claim fails as a matter of law.

### K.   The Glazers' Ohio Consumer Sales Practices Act Claim Should Be Dismissed.

The Glazers' Ohio Consumer Sales Practices Act ("OCSPA") claim fails for numerous reasons.   *First*, as shown above, Plaintiffs have not adequately alleged that GM had knowledge of any purported wheel defect, which is fatal to their OCSPA claim.   *See Szep*, 2020 WL 5834876, at *10 ("Ohio's [CSPA] requires a defendant to have actual awareness (knowledge) of a defect.") (quotation marks omitted).

*Second*, the claim is facially time-barred by the OCSPA's two-year statute of

limitations.  Ohio Rev. Code § 1345.10(C).  Plaintiff Marianne Glazer alleges she purchased the vehicle in September 2017, CCAC ¶ 131, yet the Glazers did not file suit until May 6, 2020.  *See Holguin et al. v. Gen. Motors LLC*, No. 1:20-cv-00615-RGA (D. Del.), Dkt. No. 1.  Because the statute of limitations begins to run from the date of purchase, the Glazers' OCSPA claim expired in September 2019.  *Kondash v. Kia Motors Am., Inc.*, No. 1:15-CV-506, 2016 WL 11246421, at *20 (S.D. Ohio June 24, 2016) ("The Court finds that Plaintiff's [OCSPA claim] accrued at the time of sale and therefore is time-barred, as suit has been brought more than two years thereafter."); *Szep*, 2020 WL 5834876, at *10 (same).

*Third*, to the extent their claim is predicated upon alleged omissions, Ohio caselaw holds that "[m]ere non-disclosure of a defect, without more, does not fall within the purview of deceptive or unconscionable practices prohibited by the Act." *Radford v. Daimler Chrysler Corp.*, 168 F. Supp. 2d 751, 754 (N.D. Ohio 2001).

*Fourth*, Plaintiffs do not allege that they viewed any advertisements before purchasing their vehicle or that the dealership representative with whom they spoke made any representations, which is also fatal.  CCAC ¶ 607; *see In re Porsche Cars.*, 880 F. Supp. 2d at 870 (OCSPA requires allegations that plaintiffs "saw, heard, or were aware of" misrepresentation before purchase).

## L.   Plaintiff Turner's South Carolina Unfair Trade Practices Act Claim Fails as a Matter of Law.

Plaintiff Turner's putative class claim under the South Carolina Unfair Trade

46

Practices Act ("SCUTPA") must be dismissed because SCUTPA prohibits class actions. S.C. Code Ann. § 39-5-140 (SCUTPA plaintiff cannot bring action in "representative capacity"); *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 678 S.E.2d 430, 434 (S.C. 2009) (collecting cases).[26]

Additionally, Plaintiff Turner's individual claim fares no better because he has failed to adequately allege that GM had knowledge of any purported defect prior to his purchase, which dooms his SCUTPA claim. *See Collins Entm't Corp. v. Drew Distrib., Inc.*, 173 F.3d 849, 1999 WL 123596, at *5 (4th Cir. 1999) (Table). Indeed, Plaintiff Turner purchased his vehicle in September 2016—almost a year *before* the earliest complaint alleged in the CCAC. CCAC ¶¶ 140, 179(a). Nor has Plaintiff Turner pled any facts to show how GM's actions were "deceptive" given that his car purportedly experienced its first and only issue (a single cracked rim) months *after* his warranty expired, and he alleges no details concerning what supposedly precipitated the rim damage (or even whether he was driving the vehicle at the time).

---

[26] At least four South Carolina federal courts have held that the Supreme Court's decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), does not displace SCUTPA's class action bar. *Fejzulai v. Sam's W., Inc.*, 205 F. Supp. 3d 723, 729 (D.S.C. 2016); *In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 635 (D.S.C. 2015); *Stalvey v. Am. Bank Holdings, Inc.*, No. 4:13-CV-714, 2013 WL 6019320, at *4 (D.S.C. Nov. 13, 2013); *In re MI Windows & Doors, Inc. Prod. Liab. Litig.*, No. 2:11-CV-00167-DCN, 2012 WL 5408563, at *5 n.3 (D.S.C. Nov. 6, 2012).

**M.  Plaintiff Barker's Texas Deceptive Trade Practices Act Claim Fails for Multiple Reasons.**

Plaintiff Barker's Texas Deceptive Trade Practices Act ("DTPA") claim fails for the threshold reason that he does not comply with the DTPA's requirement that the consumer give "written notice at least 60 days" before filing a suit for damages "advising the person in reasonable detail of the consumer's specific complaint and the amount of economic damages."  Tex. Bus. & Com. Code Ann. § 17.505(a). Plaintiff alleges that he has sent the required letter, CCAC ¶ 693, but that letter is woefully insufficient because it was sent to GM on April 29, 2020 (one day before Plaintiffs filed the CCAC), did not state Plaintiff Barker's alleged damages, and lacked other details necessary for GM to consider potential settlement.  S*ee* Ex. I (Plaintiff Barker Demand Letter); *see also Silverado Truck & Diesel Repair, LLC v. Lawson*, No. 05-18-00540-CV, 2019 WL 1467966, at *5 (Tex. App. Apr. 3, 2019) ("The purpose of the DTPA notice provision is to discourage litigation and encourage settlements of consumer complaints.").  And Plaintiff Barker does not allege that he has satisfied the DTPA's class action notice requirement, which forecloses his putative class claim.  Tex. Bus. & Com. Code Ann. § 17.501(a) (consumer filing class action must send the consumer protection division a copy of the notice letter and complaint).

Even if this Court considers the merits of Plaintiff's DTPA claim, it should still be dismissed.  To prevail on a claim for failure to disclose under the DTPA, a

48

plaintiff must prove, among other things, that "the defendant knew information regarding the goods or services" and "there was an intent to induce the consumer to enter into the transaction through the failure to disclose." *Patterson*, 191 S.W.3d at 827. Here, Plaintiffs have not adequately alleged pre-purchase knowledge or an intent to induce for the reasons stated above. In fact, according to the CCAC, Plaintiff Barker purchased his vehicle *20 months before* a single complaint was sent to NHTSA or posted online. CCAC ¶¶ 146, 178–79.

Plaintiff Barker also cannot show that GM committed an unconscionable act by engaging in affirmative misrepresentations and omissions. CCAC ¶ 681. The NVLW did not contain any misrepresentations and, in any event, he does not allege that he viewed any affirmative misrepresentations prior to his purchase. *See Dzielak v. Whirlpool Corp.*, No. CV 12-89 (KM) (JBC), 2019 WL 6607220, at *26 (D.N.J. Dec. 5, 2019) (rejecting DTPA claim based on affirmative misrepresentation because there was no evidence that defendant misrepresented its product); *Morgan Bldgs. & Spas, Inc. v. Humane Soc'y of Se. Tex.*, 249 S.W.3d 480, 490 (Tex. App. 2008) (reliance an "essential element" under affirmative misrepresentation or omission theory). Finally, a contract (*i.e.*, the NVLW) governed Plaintiff Barker's transaction, and an "allegation of a mere breach of contract, without more, does not constitute a false, misleading or deceptive act in violation of the DTPA." *Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.*, 661 S.W.2d 933, 935 (Tex. 1983);

49

*Shakeri v. ADT Sec. Servs.*, 816 F.3d 283, 295 (5th Cir. 2016) (dismissing DTPA claim because "where the breach of the contract causes the harm, a plaintiff cannot maintain a claim for unconscionable conduct under the DTPA").

## VII.   Plaintiffs' Requests for Injunctive Relief Should Be Dismissed.

Plaintiffs' requests for equitable and injunctive relief fail for two reasons. First, Plaintiffs have an adequate remedy at law because their claimed injuries are redressable by a damages award.   *See Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995).   Second, Plaintiffs lack standing to seek prospective injunctive relief because they have not alleged that they are likely to be harmed by GM's alleged conduct in the future.   *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[W]e have repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient.").   Specifically, Plaintiffs have not alleged that they will ever purchase or lease a Corvette vehicle in the future. *See Szep*, 2020 WL 5834876, at *4 (plaintiff lacked standing to seek injunctive relief where he failed to allege "that he is likely to purchase or lease another GM vehicle that has a Gen IV Engine").

## <u>CONCLUSION</u>

For the foregoing reasons, GM respectfully requests that this Court grant its motion to dismiss.

Respectfully submitted this 26th day of October, 2020.

**KING & SPALDING LLP**

*/s/ Jacqueline Glassman*
Jacqueline Glassman (P54084)
1700 Pennsylvania Avenue, NW, 2nd Floor
Washington, DC 20006
Tel: (202) 737 0500
Fax: (202) 626 3737
jglassman@kslaw.com

Livia M. Kiser
Andrew J. Chinsky
353 N Clark Street, 12th Floor
Chicago, Illinois 60654
Tel: (312) 995 6333
Fax: (312) 995 6330
jglassman@kslaw.com
lkiser@kslaw.com
achinsky@kslaw.com

Susan M. Clare
Madison H. Kitchens
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Tel: (404) 572 4600
Fax: (404) 572 5100
sclare@kslaw.com
mkitchens@kslaw.com

*Attorneys for Defendant*
*General Motors LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, in compliance with Local Rule 5.1(a), that the foregoing pleading has been prepared using 14 point Times New Roman font, with margins of at least one inch on the top, sides, and bottom.

<u>*/s/ Jacqueline Glassman*</u>
Jacqueline Glassman
P54084

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which automatically sends e-mail notification of such filing to any attorneys of record.

This 26th day of October, 2020.


<u>*/s/ Jacqueline Glassman*</u>
Jacqueline Glassman
P54084