UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH BOSSART, et al., individually and
on behalf of all others similarly situated,

     Plaintiffs,                         Civil Action No. 20-CV-11057

vs.                                  HON. BERNARD A. FRIEDMAN

GENERAL MOTORS LLC,

     Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND
## DENYING IN PART DEFENDANT'S MOTION TO DISMISS

        This matter is presently before the Court on defendant's motion to dismiss

plaintiffs' amended class action complaint ("Am. Compl.") [docket entry 20].  Plaintiffs have

responded and defendant has replied.  Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall

decide this motion without a hearing.

        This is a consumer class action filed on behalf of a prospective class consisting

of persons across the country who "purchased or leased any 2015 to 2019 Chevrolet Corvette

Z06 or 2017 to 2019 Chevrolet Corvette Grand Sport ('Class Vehicles') designed, manufactured,

marketed, distributed, sold, warranted, and/or serviced by General Motors LLC ('GM' or

'[d]efendant')."  Am. Compl. ¶ 1.  Plaintiffs allege that

          the Class Vehicles (which are sub-models of the Corvette line)
          have wheels with inferior material which is cast, rather than
          forged, and is of insufficient strength, and in an insufficient
          quantity, to withstand the torque and power input from the
          drivetrain. On information and belief, GM also used less material
          than necessary in order to try to save un-sprung weight (i.e.,
          weight that is not borne by the vehicle's suspension). As a result,
          the rims are not strong enough and crack and deform under normal
          driving conditions.

As a result of the Wheel Defect, wobbling conditions, out of round conditions, and deformation of the rim flange occur which causes vibration perceptible to the driver through the body of the vehicle and through the steering wheel at various speeds. Cracks in the barrel cause a loss of air pressure and an unsafe condition and cause the rim to lose strength and become vulnerable to failure under loading conditions such as braking.

\*    \*    \*

Although GM was sufficiently aware of the Wheel Defect from preproduction testing, design failure mode analysis, calls to its customer service hotline, and customer complaints made to dealers, this knowledge and information was exclusively in the possession of GM and its network of dealers and, therefore, unavailable to consumers.

Despite access to aggregate internal data, GM has actively concealed the existence of the defect, telling customers, as cited below, that the wheels are not defective and that the cracked and deformed wheels are caused by potholes or other driver error, without any such evidence to support external causes.

GM sells the Class Vehicles with a 3-year, 36,000-mile bumper-to-bumper warranty. However, when class members bring their vehicles to GM's authorized dealerships requesting coverage for the Wheel Defect, GM is systematically denying coverage. As a result, Class Members are paying thousands of dollars out-of-pocket to repair, and if they purchase the replacements from GM, to replace the wheels with equally defective wheels.

*Id*. ¶¶ 5, 11-13. Plaintiffs add that the alleged wheel defect is material because it "poses a serious safety concern," as "cracked rims can cause the tire to fail and explode while driving," and because "consumers incur significant and unexpected repair costs." *Id*. ¶¶ 14-15.

The same alleged wheel defect was reported in an October 15, 2018, review of a 2017 Chevrolet Corvette Grand Sport, published by Car & Driver magazine. The review stated:

Shortly after its first trip to the test track . . . the Grand Sport showed signs of an ailment that would dog us throughout our time

2

with the car. At just under 6500 miles we discovered that three of
its wheels were bent. Two were repaired, but one was cracked and
had to be replaced. In all, that was an $1119 trip to the Corvette
cobbler, none of which was covered by warranty.

*Id*. ¶ 167 (quoting Am. Compl. Ex. 1). Similarly, plaintiffs state that many Class Vehicle

owners reported the alleged wheel defect, resulting vibrations, and high repair costs on the

online forum www.CorvetteForum.com, *see id*. ¶ 172 (quoting Am. Compl. Ex. 2), ¶ 179, and

to the National Highway Traffic Safety Administration's ("NHTSA") online forum. *See id*. ¶¶

176-78.

There are eighteen named plaintiffs in this case. Collectively, they are citizens

of and/or purchased their Class Vehicle in the states of California, Florida, Illinois,

Massachusetts, Michigan, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, South

Carolina, and Texas. *See id*. ¶¶ 17-18, 27, 29, 44-45, 50-51, 56-57, 68-69, 79-80, 87-88, 95-96,

102-03, 108-09, 114-15, 120-21, 130-31, 139-40, 145-46. Plaintiffs seek to represent a

nationwide class, consisting of "[a]ll persons and entities in the United States who purchased

or leased a Class Vehicle," as well as thirteen statewide subclasses.[1] *See id*. ¶ 199.

_____

[1] (1) "**California Subclass**: All individuals who purchased or leased any 2015 to 2019
model year Chevrolet Corvette Z06 or 2017 to 2019 model year Chevrolet Corvette Grand Sport
vehicle in the State of California"; (2) "**CLRA Subclass**: All members of the California Subclass
who are "consumers" within the meaning of California Civil Code § 1761(d)"; (3) "**Florida
Subclass**: All members of the Nationwide Class who are residents of Florida or who purchased
or leased their Class Vehicle in the State of Florida"; (4) "**Illinois Subclass**: All members of the
Nationwide Class who are residents of Illinois or who purchased or leased their Class Vehicle in
the State of Illinois"; (5) "**Massachusetts Subclass**: All members of the Nationwide Class who
are residents of Massachusetts or who purchased or leased their Class Vehicle in the
Commonwealth of Massachusetts"; (6) "**Michigan Subclass**: All members of the Nationwide
Class who are residents of Michigan or who purchased or leased their Class Vehicle in the State
of Michigan"; (7) "**New Hampshire Subclass**: All members of the Nationwide Class who are
residents of New Hampshire or who purchased or leased their Class Vehicle in the State
of New Hampshire"; (8) "**New Jersey Subclass**: All members of the Nationwide Class who are

The proposed classes, class representatives, and forty claims are as follows:

1. **Nationwide Class:** Breach of written warranty pursuant to the Magnuson-Moss Warranty Act ("MMWA") (Count I); breach of implied warranty under the MMWA (Count II); and unjust enrichment (Count III).

2. **CLRA Subclass (Barrington, Holguin):** Violation of the California Consumer Legal Remedies Act ("CLRA") (Count IV).

3. **California Subclass (Barrington, Holguin):** Violation of the California Unfair Competition Law (Cal. Bus. and Pro. Code § 17500 et seq.) (Count V); breach of implied warranty under the Song-Beverly Consumer Warranty Act (Count VI); and breach of express warranty (Count VII).

4. **Florida Subclass (Rochford):** Violation of the Florida Deceptive and Unfair Trade Practices Act (Count VIII); breach of express warranty (Count IX); and breach of implied warranty (Count X).

5. **Illinois Subclass (Mirenda):** Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count XI); breach of express warranty (Count XII); and breach of implied warranty of merchantability (Count XIII).

6. **Massachusetts Subclass (Lupis):** Violation of the Massachusetts Consumer Protection Act (Count XIV); breach of express warranty (Count XV); and breach of implied warranty (Count XVI).

7. **Michigan Subclass (Czajka, Kalkstein):** Violation of the Michigan Consumer Protection Act (Count XVII); breach of express warranty (Count XVIII); and breach of implied warranty of merchantability (Count XIX).

8. **New Hampshire Subclass (Goldberg, Smiths):** Violation of the New

---

residents of New Jersey or who purchased or leased their Class Vehicle in the State of New Jersey"; (9) "**New York Subclass**: All members of the Nationwide Class who are residents of New York or who purchased or leased their Class Vehicle in the State of New York"; (10) "**Pennsylvania Subclass**: All members of the Nationwide Class who are residents of Pennsylvania or who purchased or leased their Class Vehicle in the Commonwealth of Pennsylvania"; (11) "**Ohio Subclass**: All members of the Nationwide Class who are residents of Ohio or who purchased or leased their Class Vehicle in the State of Ohio"; (12) "**South Carolina Subclass**: All members of the Nationwide Class who are residents of South Carolina or who purchased or leased their Class Vehicle in the State of South Carolina"; and (13) "**Texas Subclass**: All members of the Nationwide Class who are residents of Texas or who purchased or leased their Class Vehicle in the State of Texas." Am. Compl. ¶ 199.

Hampshire Consumer Protection Act (Count XX); breach of express warranty (Count XXI); and breach of implied warranty of merchantability (Count XXII).

9.   **New Jersey Subclass (Chookazian):**  Violation of the New Jersey Consumer Fraud Act (Count XXIII); breach of express warranty (Count XXIV); and breach of implied warranty of merchantability (Count XXV).

10.   **New York Subclass (Williams):**  Violation of the New York Commercial Deceptive Acts or Practices Law (Gen. Bus. Law § 349) (Count XXVI) and the New York False Advertising Law (Gen. Bus. Law § 350) (Count XXVII); and breach of express warranty (Count XXVIII).

11.   **Pennsylvania Subclass (Bossart, Roth):**  Violation of the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law (Count XXIX); breach of express warranty (Count XXX); and breach of implied warranty of merchantability (Count XXXI).

12.   **Ohio Subclass (Galzers):**  Violation of the Ohio Consumer Sales Practices Act (Count XXXII); breach of express warranty (Count XXXIII); and breach of implied warranty of merchantability (Count XXXIV).

13.   **South Carolina Subclass (Turner):**  Violation of the South Carolina Unfair Trade Practices Act (Count XXXV); breach of express warranty (Count XXXVI); and breach of implied warranty (Count XXXVII).

14.   **Texas Subclass (Barker):**  Violation of the Texas Deceptive Trade Practices-Consumer Protection Act (Count XXXVIII); breach of express warranty (Count XXXVIX); and breach of implied warranty of merchantability (Count XL).

For relief, plaintiffs request (1) class certification; (2) "[a] declaration that Defendant is financially responsible for notifying all Class Members about the defective nature of the wheels, including the need for periodic maintenance"; (3) compensatory, exemplary, and statutory damages; (4) any and all remedies available under the aforementioned statutes; (5) an order for disgorgement; (6) attorneys' fees and pre- and post-judgment interest; and (7) injunctive relief.  *See id.* ¶ 716.

In the instant motion, defendant seeks "to dismiss all claims in the [complaint] for failure to state a claim upon which relief can be granted," pursuant to Fed. R. Civ. P.

12(b)(6). To survive this motion, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Two principles underlie this standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.

*Id.* at 678-79 (2009) (internal quotation marks and citations omitted). For the following reasons, the Court shall grant defendant's motion in part and deny it in part.

## I. Express Warranty Claims (Counts VII, IX, XII, XV, XVIII, XXI, XXIV, XXVIII, XXX, XXXIII, XXVI, XXXVIX)

To state a claim for breach of express warranty, a plaintiff must allege that (1) the seller made an affirmation of fact or promise to the buyer which relates to the goods at issue, (2) the fact or promise was part of the basis of the bargain, and (3) the express warranty was breached. *See* U.C.C. § 2-313. Defendant concedes that it did make a promise to plaintiffs which formed part of the basis of their bargain – i.e., GM's New Vehicle Limited Warranty ("NVLW"). The question regarding this claim is whether plaintiffs have plausibly alleged that defendant breached the NVLW. In relevant part, the NVLW states:

**What Is Covered**

**Repairs Covered:** The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new, remanufactured, or refurbished parts.

**No Charge:** Warranty repairs, including towing, parts, and labor, will be made at no charge.

**Obtaining Repairs:** To obtain warranty repairs, take the vehicle to a Chevrolet dealer facility within the warranty period and request the needed repairs. Reasonable time must be allowed for the dealer to perform necessary repairs.

**Warranty Period:** The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

**Bumper-to-Bumper Coverage:** The complete vehicle is covered for 3 years or 36,000 miles, whichever comes first, except for other coverages listed here under "What Is Covered" and those items listed under "What Is Not Covered" later in this section.

\*   \*   \*

**What Is Not Covered**

**Tire and Wheel Damage or Wear:** Normal tire wear or wear-out is not covered. Tire wear is influenced by many variables such as road conditions, driving styles, vehicle weight, and tire construction. Uniform tire wear is a normal condition, and is not considered a defect. Road hazard damage such as punctures, cuts, snags, and breaks resulting from pothole impact, curb impact, or from other objects is not covered.

Def.'s Ex. G (2019 NVLW) at 4, 9-10.[2]

---

[2] Defendant attaches four versions of the NVLW to the instant motion – exhibits C (2015 NVLW), D (2016 NVLW), E (2017 NVLW), and G (2019 NVLW). The relevant terms are identical in all four versions.

Defendant contends that plaintiffs' express warranty claim should be dismissed because (1) "Plaintiffs' theory is clearly premised on an alleged design defect, not a defect due to materials or workmanship," Def.'s Br. at 10; (2) "Plaintiffs plead no facts establishing that their alleged tire and wheel issues were caused by something other than 'normal wear' and '[r]oad hazard damage' that the NVLWs exclude from coverage," *id.* at 11-12; (3) various plaintiffs failed to notify defendant of the alleged vehicle issues, failed to present their vehicles to an authorized dealer for repairs, and/or altered their Class Vehicles with non-GM parts or through non-GM repairs, all of which would void GM's warranty coverage, *see id*. at 13-16; and (4) certain plaintiffs failed to allege that they were within the warranty's stated mileage and/or time limit when they sought the relevant repairs. *See id.* at 16-17.

Some courts have interpreted defendant's NVLW to cover only those repairs that are necessitated by defects related to material or workmanship, and not those related to design defects, *see Szep v. Gen. Motors LLC*, 491 F. Supp. 3d 280, 291-92 (N.D. Ohio 2020), while others have understood the warranty to cover repairs related to all three sources of defect – material, workmanship, and design. *See McKee v. Gen. Motors LLC*, 376 F. Supp. 3d 751, 757 (E.D. Mich. 2019). The NVLW states that it covers "repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." Def.'s Ex. G (2019 NVLW) at 4. The divergence in interpretation arises from the phrase "due to materials or workmanship" and ambiguity as to what this phrase modifies, i.e., the warranty coverage or the third exception to the warranty coverage. Defendant contends that the former is the correct reading, thus barring any warranty claims based on design. *See* Def.'s Br. at 8-10.

The Court disagrees with defendant's interpretation. As another judge of this Court recently stated,

> GM's preferred reading inserts a comma into the [NVLW]. But the Warranty does not contain GM's proffered comma.[6] Rather, the Warranty's plain language demonstrates that the phrase "related to materials or workmanship" modifies "normal characteristics of the vehicle" and not "any vehicle defect." The [NVLW] therefore covers "any vehicle defect" except for slight noise, vibrations, or manufacturing defects related to "normal characteristics of the vehicle."
>
> _____
> [6] For example, GM's interpretation would read: "covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle[,] related to materials or workmanship." Or even, "covers repairs to correct any vehicle defect[—]not slight noise, vibrations, or other normal characteristics of the vehicle[—]related to materials or workmanship."

*McKee*, 376 F. Supp. 3d at 757 (alterations in footnote in original). The Court agrees with *McKee* and therefore rejects defendant's suggestion that the warranty's coverage is limited to defects caused by material or workmanship. As written, the NVLW covers "any defect" except those attributable to "slight noise, vibrations, or other normal characteristic of the vehicle due to materials or workmanship."

Defendant further argues that the express warranty claims of certain plaintiffs should be dismissed for failing to allege specifically that their claims arose within the NVLW's three-year, 36,000-mile coverage period. First, defendant points to plaintiff Turner, the proposed representative for the South Carolina subclass, who alleges that he purchased his Class Vehicle in September 2016, but did not notice the wheel defect until January 24, 2020, *see* Am. Compl. ¶¶ 140-41, approximately four months after the expiration of the warranty. Second, defendant notes that plaintiffs Mirenda and Barker, proposed representatives for the Illinois and

Texas subclasses, respectively, sought repairs within the three-year warranty period, but do not allege that their Class Vehicles were within the warranty's mileage limit at that time. *See id.* ¶¶ 50-55, 145-51. Third, defendant notes that plaintiffs Holguin and Kalkstein, proposed representatives for the California and Michigan subclasses, respectively, allege that they initially sought repairs at a GM dealership within the express warranty period, but later returned outside of the warranty period because, despite repairs, the wheel problem persisted. *See id.* ¶¶ 33, 42, 92-93.

In response, plaintiffs contend that they sufficiently allege that the NVLW's time and mileage limitations are "unconscionable and/or that GM is equitably estopped from asserting such limits. . . . [because] GM was aware of the Defect, possessed superior and exclusive knowledge of the Defect, and actively concealed that knowledge while refusing to provide repairs or replacement wheels under warranty." Pls.' Resp. Br. at 9.

The Court concludes that, based on the facts alleged, plaintiffs' claims should not be dismissed for failure to seek repairs within the NVLW's time and milage limits. Plaintiffs Mirenda, Barker, Holguin, and Kalkstein sufficiently allege that they brought their Class Vehicles to a GM dealership within the warranty period. While questions of fact remain (i.e., whether the repair requests made by plaintiffs Mirenda and Barker were made within the warranty's mileage limit, and what specific kinds of repairs were sought by plaintiffs Holguin and Kalkstein at their subsequent visits to the GM dealership, as opposed to their initial visits), these questions should be addressed at a later time, after the parties have had an adequate opportunity to conduct discovery. As to plaintiff Turner, who expressly alleges that he sought repairs outside of the three-year warranty period, "courts have found that the doctrine of

unconscionability can be applied to limitations on the period in which a purchaser is permitted to bring a warranty claim, particularly in cases where plaintiffs' claims are premised on the discovery of a latent defect." *Sadler v. Pella Corp.*, 146 F. Supp. 3d 734, 751 (D. S.C. 2015) (collecting cases). "If a court as a matter of law finds any clause of a contract to have been unconscionable at the time it was made, the court may refuse to enforce the unconscionable clause, or so limit its application so as to avoid any unconscionable result." *Simpson v. MSA of Myrtle Beach, Inc.*, 644 S.E.2d 663, 668 (S.C. 2007). Because the circumstances surrounding the parties' contract formation, particularly defendant's pre-sale knowledge of the wheel defect, if any, must be fleshed out before the Court can assess the merits of plaintiffs' unconscionability argument, the Court concludes that it is premature to dismiss Turner's claim at this early stage in the litigation on the grounds defendant suggests.

Finally, defendant contends that certain plaintiffs fail to comply with the NVLW's notice, presentment, and coverage requirements. *See* Def.'s Br. at 13-16. To the extent that notice was required under the terms of the NVLW, *see* Def.'s Ex. G (2019 NVLW) at 32, the Court finds that plaintiffs plausibly allege notice, as each named plaintiff allegedly brought the wheel defect to the attention of a GM dealer and was denied warranty coverage. *See* Pls.' Resp. Br. at 8 n.9; Am. Compl. ¶¶ 21, 33, 46, 63, 75, 81, 93, 100, 104, 110, 116, 125, 137. While defendant contends that the warranty coverage for certain Class Vehicles was voided by wheel repairs at non-GM repair shops, *see* Def.'s Br. at 15-16, the NVLW requires more than repairs or alterations to void its coverage. In relevant part, the NVWL states that it "does not cover any damage or failure resulting from modification or alteration to the vehicle's original equipment." Def.'s Ex. G (2019 NVLW) at 18. Nothing in the complaint indicates that the wheel alterations

or modifications caused the Class Vehicles' damage or failure. Rather, the Class Vehicles were allegedly exhibiting the wheel defects prior to alteration. Consequently, the alterations mentioned in the complaint do not provide a basis for dismissing plaintiffs' claims. For these reasons, the Court concludes that all of plaintiffs' claims of breach of express warranty survive defendant's motion to dismiss.

## II. Implied Warranty Claims (Counts VI, X, XIII, XVI, XIX, XXII, XXV, XXXI, XXXIV, XXXVII, XL)

Defendant next argues that "Plaintiffs' implied warranty claims . . . should be dismissed because Plaintiffs do not allege a persistent defect that renders their vehicles unmerchantable." Def.'s Br. at 17. In addition to this blanket argument, defendant contends that certain plaintiffs' implied warranty claims should be dismissed because they "lack privity with GM and allege only economic damages," *id.* at 21, while others should be dismissed "because they do not allege they presented their vehicles for repair within the warranty period." *Id.* at 22.

For a good to be considered "merchantable" it must be "fit for the ordinary purposes for which such goods are used." U.C.C. § 2-314. This Court has previously stated that "[m]erchantable is not a synonym for perfect. The warranty of merchantability is that goods are of average quality in the industry." *Rosenbaum v. Toyota Motor Sales, USA, Inc.*, No. 16-CV-12645, 2016 WL 9775018, at *2 (E.D. Mich. Oct. 21, 2016). Courts "reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purposes." *McGee v. Mercedes-Benz USA, LLC*, No. 19cv513-MMA, 2020 WL 1530921, at *5 (S.D. Cal. Mar. 30

2020) (internal quotation marks and citation omitted).

Defendant relies on *Blissard v. FCA US LLC*, No. 18-02765, 2018 WL 6177295, at *7 (C.D. Cal. Nov. 9, 2018), for the proposition that if a defect's symptoms can "be addressed through repair or replacement of an isolated component," then the vehicle is merchantable. Defendant contends that because wheels are a replaceable component and because various plaintiffs fail to allege that the defect persisted post-replacement, plaintiffs' claims for breach of implied warranty fail. *See* Def.'s Br. at19-20.

The plaintiffs in *Blissard* alleged that a defective heating and cooling system rendered "the vehicles difficult or impossible to drive in cold-weather conditions" and, thus, unmerchantable. *Blissard*, 2018 WL 6177295, at *8. The court deemed the heating/cooling defect "a mere annoyance" and "not something that interfere[d] with Plaintiffs' ability to drive [their] cars[s]." *Id.* In the instant case, by contrast, plaintiffs' alleged wheel defect caused the cars to "wobble" and "vibrat[e] perceptibl[y]," and caused the wheel rim "to lose strength and become vulnerable to failure under loading conditions such as breaking." Am. Compl. ¶ 6. The alleged defect also caused wheels to warp, bend and crack, *see id.* ¶ 8, which "can cause the tire to fail and explode while driving." *Id.* ¶ 14. As pled, the defect plausibly renders the Class Vehicles unsafe, unfit for their ordinary purpose, and below average expectations and quality.

Defendant next argues that "Plaintiffs Rochford, Mirenda, Czajka, Kalkstein, and the Glazers cannot bring implied warranty claims because . . . [i]n their respective states–Florida, Illinois, Michigan, New York, and Ohio–plaintiffs must allege privity between the purchaser and manufacturer for implied warranty claims based on economic damages." Def.'s Br. at 21. Defendant adds that "[u]nder these states' laws, purchasing a vehicle from an

authorized dealer, as Plaintiffs did here, does not satisfy the privity requirement." *Id.*

In response, plaintiffs contend that "Rochford, Mirenda, Kalkstein and the Glazers all fall within exceptions to the privity requirements in their respective states, such as the third-party beneficiary exception for authorized dealers." Pls.' Resp. Br. at 13. As to plaintiff Czajka, plaintiffs argue that "vertical privity no longer is required in Michigan to pursue a breach of implied warranty claim." *Id.*

Based on the facts alleged in the complaint and the arguments raised in the parties' briefs, the Court concludes that plaintiffs' implied warranty claims survive this challenge as well. "Under Michigan law, plaintiffs are not required to allege privity to successfully state a claim for breach of the implied warranty of merchantability." *Francis v. Gen. Motors, LLC*, No. 19-CV-11044, 2020 WL 7042935, at *9 (E.D. Mich. Nov. 30, 2020) (internal quotation marks omitted). As to the privity requirements in Illinois, New York, and Ohio,

> fact questions, which cannot be resolved at the pleading stage, preclude early disposition of the privity defense. Under Illinois law, fact questions arise where a manufacturer has issued an express limited warranty extending to all buyers or owners which preclude adjudication of a privity defense at the pleading stage. In Ohio, privity may be established similarly upon proof of the issuance of an express limited warranty. . . .
>
> New York recognizes a third-party beneficiary exception to the privity requirement, which is particularly apposite in the context of cases involving a manufacturer with an extensive established network of authorized dealers that sell its cars. Resolving the applicability of that exception also is a fact-intensive exercise not amenable to resolution at the pleading stage.

*Id.* (collecting cases, internal citations omitted).

Finally, "[u]nder Florida law, while privity is generally necessary for breach of

express warranty claims, courts have relaxed this requirement where the express warranty was clearly intended to cover subsequent purchasers." *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 611 (E.D. Mich. 2017) (internal quotation marks omitted). Plaintiffs contend that "pursuant to the specific language in the express warranties issued by GM, both [express and implied warranties] are intended to extend to all owners and *subsequent* owners of the Class Vehicles." Pls.' Resp. Br. at 16 (emphasis in original); *see also* Def.'s Ex. G (2019 NVLW) at 4. Defendant does not refute this assertion. For these reasons, the implied warranty claims of plaintiffs Rochford, Mirenda, Czajka, Kalkstein, and the Glazers survive defendant's motion to dismiss.

Defendant's third and final challenge to plaintiffs' implied warranty claims addresses the claims of those plaintiffs who presented their Class Vehicles for repair outside of the express warranty period. Defendant states that "[t]he NVLW expressly provides that 'any implied warranty . . . applicable to this vehicle is limited in duration to the duration of this written warranty.'" Def.'s Br. at 22 (emphasis omitted) (quoting Def.'s Ex. G (2019 NVLW) at 13). Defendant contends that the implied warranty claims of plaintiffs Mirenda, Turner, Barker, Holguin, and Kalkstein should all be dismissed because they do not allege that they sought repairs within the NVLW's coverage period. *See id*.

As with the express warranty claims of these five plaintiffs, the Court concludes that their implied warranty claims survive defendant's motion to dismiss. Although questions of fact remain as to vehicle milage or the nature of the repairs requested, plaintiffs Mirenda, Barker, Holguin, and Kalkstein all sufficiently allege that they sought repairs at a GM dealer within the NVLW coverage period. As to plaintiff Turner, because the wheel defect was latent

15

and questions of fact remain regarding defendant's pre-sale knowledge of the defect, the Court concludes that it would be premature to dismiss Turner's implied warranty claim at this stage in the litigation. For these reasons, the Court concludes that plaintiffs' implied warranty claims may proceed.

### III. Unjust Enrichment (Count III)

Defendant next contends that the Court should dismiss plaintiffs' unjust enrichment claims for two reasons. "First, . . . unjust enrichment is not available where there is an adequate remedy at law." Def.'s Br. at 23. "Second, Plaintiffs Czajka, Kalkstein, Chookazian, Bossart, Roth, the Glazers, and Barker did not confer a benefit on GM. Under the laws of their respective states–Michigan, Ohio, Pennsylvania, New Jersey, and Texas–unjust enrichment requires the plaintiff to allege facts showing that the plaintiff conferred a *direct* benefit on the defendant." *Id*. at 24 (emphasis in original).

This Court has previously stated that "[a]s an equitable remedy, unjust enrichment is not available where there is an adequate remedy at law." *In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liability Litig.*, 664 F. Supp. 2d 752, 763 (E.D. Mich. 2009). "Courts have regularly dismissed unjust enrichment claims filed against automobile manufacturers where a valid, enforceable express warranty covers the same subject matter as plaintiffs' unjust enrichment claims." *In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618, 634-35 (E.D. Mich. 2019) (collecting cases). Because GM's NVLW covers the express warranty claims raised in the complaint, plaintiffs' unjust enrichment claim must be dismissed.

## IV. Magnuson-Moss Warranty Act Claims (Counts I, II)

Defendant next contends that plaintiffs' MMWA claims should be dismissed for two reasons. First, defendant argues that because the complaint fails to name 100 plaintiffs, this Court lacks jurisdiction over these claims. *See* Def.'s Br. at 22. Second, defendant asserts that "[b]ecause Plaintiffs' warranty claims fail under state law, their MMWA claims necessarily fail too." *Id*. at 23.

The MMWA states that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). A complaint asserting a claim under this statute must name at least 100 plaintiffs. *See* § 2310(d)(3)(c).

Given the Court's decision not to dismiss plaintiffs' express and implied warranty claims, the Court concludes that plaintiffs' claims under the MMWA survive defendant's motion to dismiss as well. While the instant complaint lists only eighteen named plaintiffs, the Court believes it would be premature to dismiss plaintiffs' MMWA claims at this early stage in litigation, as the Court has yet to address class certification.

## V. Consumer Protection Claims (Counts IV, V, VIII, XI, XIV, XVII, XX, XXIII, XXVI, XXVII, XXIX, XXXII, XXXV, XXXVIII)

Defendant next argues that all of plaintiffs' consumer protection claims should be dismissed because plaintiffs have failed to sufficiently allege GM's knowledge of the defect prior to sale ("pre-sale" or "pre-purchase" knowledge).[3] *See* Def.'s Br. at 27. Defendant further

---

[3] Neither defendant nor plaintiffs dispute the fact that in order to violate each of the fourteen state consumer protection statutes raised in the complaint, the seller must have

argues that each claim should be dismissed for reasons specific to each state statute. In addition to pre-sale knowledge, defendant argues that plaintiffs fail to adequately allege reliance (under the California and Pennsylvania statutes), *see id*. at 32-34, 45; or deceptive, misleading, or unfair acts or omissions, as well as causation (under the Florida, Illinois, Massachusetts, Michigan, New Jersey, and New York statutes). *See id*. at 34-37, 38-44 46-47, 49. Defendant also challenges the ability of certain plaintiffs to raise claims under the laws of the state in which they live, *see id*. at 37-38, 40-41, or the state in which they purchased their Class Vehicle. *See id*. at 40. These plaintiffs do not live in the state of purchase, and defendant contends that the laws at issue either apply only to the location of purchase or only to state citizens. Finally, defendant contends that certain plaintiffs are barred from raising their claims by statutes of limitations (under the CLRA and Ohio statute), *see id*. at 34, 45-46, prohibitions against class claims (under the South Carolina statute), *see id*. at 46-47, or notice requirements (under the Texas statute). *See id*. at 48.

In response, plaintiffs contend that "Rule 9 allows knowledge to be alleged generally where specific details are in the possession of the defendant. Moreover, Plaintiffs plausibly allege that GM's awareness of the Defect came from several discrete sources, which, taken together, support an inference of knowledge." Pls.' Resp. Br. at 23 (citation omitted).

---

possessed actual and/or inferred pre-sale knowledge of the defect. *See* Def.'s Br. at 27, Pls.' Resp. Br. at 23-26. *See also* California Consumer Legal Remedies Act § 1770(23)(B); California Business and Professions Code § 17500; Florida Deceptive and Unfair Trade Practices Act §§ 501,204(1), 501.207(c), 501.2075; Illinois Consumer Fraud and Deceptive Business Practices Act § 505/2; Massachusetts Consumer Protection Act § 2(b); Michigan Consumer Protection Act § 443.903(e), (s); New Hampshire Consumer Protection Act § 358-A:2(VII); New Jersey Consumer Fraud Act § 56:8-2; New York Gen. Bus. Law §§ 349-50; Pennsylvania Unfair Trade Practices Act and Consumer Protection Law § 201-2(4)(vii); Ohio Consumer Sales Practices Act § 1345.02(B)(2); South Carolina Unfair Trade Practices Act § 39-5-20; Texas Deceptive Trade Practices-Consumer Protection Act § 17.45(9).

Plaintiffs argue that a reasonable inference may be drawn that GM possessed pre-sale knowledge of the defect in light of its internal testing along with the many consumer complaints and warranty repair requests. *See id.* at 23-24. Plaintiffs also refute each of defendant's statute-specific arguments, asserting that plaintiffs' allegations create a plausible inference that they relied on defendant's representations, *see id.* at 27-28, 44; that defendant committed deceptive, misleading, or unfair acts or omissions that caused plaintiffs' injuries, *see id.* at 30, 32-33, 36, 39-42, 47; and/or that plaintiffs' claims fall within the statute of limitations. *See id.* at 29, 45. As to the plaintiffs who do not reside in the state of purchase, plaintiffs contend that the facts alleged allow these plaintiffs to raise claims under their respective statutes (i.e., their claims bear sufficient ties to the states at issue). *See id.* at 33-34, 36-39. Finally, plaintiffs argue that "Rule 23 supplants . . . procedural rules" under the South Carolina statute that pretend to disallow class actions, *see id.* at 46, and that the plaintiff raising a consumer protection claim under the Texas statute provided more than the requisite notice. *See id.* at 48.

Plaintiffs catalogue forty-four consumer complaints that were submitted to prominent third party forums, including www.CorvetteForum.com and the NHTSA website, as well as a review in Car & Driver magazine that includes "wheel woes" as a subheader. *See* Am. Compl. ¶¶ 7, 172-74, 178; *see also* Am. Compl. Ex. 1. The consumer complaints include the following, among many others:

> **Date of Incident:** July 20, 2017
> **Date Complaint Filed:** September 21, 2017
> **NHTSA/ODI ID:** 11024830
> **Summary:** The . . . dealership inspected my Corvette and informed me that all four wheels are bent and cannot balance them properly. . . . I attest that I have never driven my Corvette on rough, gravel or dirt roads. I do believe this is a very serious problem that Chevrolet and GM should address before someone

has a terrible accident because of these wheels!

**Date of Incident:** August 19, 2017
**Date Complaint Filed:** September 20, 2017
**NHTSA/ODI ID:** 11024700
**Summary:** Both left wheels on my 2017 Grand Sport bend in normal driving over normal roads. In researching the issue, this seems to be a recurring problem with the stock wheels on 2017-2018 Corvette Grand Sports and 201-[20]18 Corvette Z06s. . . . GM is now claiming they won't fix/replace the rear wheel. Car vibrates because of the bent wheel.

**Date of Incident:** June 11, 2018
**Date Complaint Filed:** July 5, 2018
**NHTSA/ODI ID:** 11109750
**Summary:** Both rear wheels developed cracks approximately two inches long from the inside edge toward the middle of the wheel. The cracks in both wheels were similar in size and location. Mileage when noticed was 24,000. Numerous reports of the same issue are being reported on Corvette related web sites.

*Id*. ¶ 178(a), (b), (g). Plaintiffs further allege that

[a]s an experienced manufacturer, GM conducts tests, including pre-sale durability testing, on incoming components, including the wheels, to verify the parts are free from defect and align with GM's specifications. Thus, GM knew or should have known that the subject wheels were defective and prone to put drivers in a dangerous position due to the inherent risk of the defect.

Additionally, GM should have learned of this widespread defect from the sheer number of reports received from dealerships and from customer complaints directly to GM. GM's customer relations department collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

Defendant's warranty department similarly analyzes and collects data submitted by its dealerships in order to identify trends in its vehicles. It is Defendant's policy that when a repair is made under warranty the dealership must provide GM with detailed documentation of the problem and the fix employed to correct it.

*Id*. ¶¶ 182-84.

Under Fed. R. Civ. P. 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Sixth Circuit has interpreted "Rule 9(b) as requiring plaintiffs to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendant[]; and the injury resulting from the fraud." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2020). However,

> a court must also consider the policy favoring simplicity in pleading, codified in the "short and plain statement of the claim" requirement of [Rule] 8. . . . Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony. On the other hand, a district court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions.

*Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006).

Given the number and nature of the consumer complaints catalogued by plaintiffs, combined with the general allegations regarding GM's testing and data gathering processes, the Court concludes that plaintiffs have sufficiently met their burden under Rule 9. Although the Court recognizes that some of the consumer complaints were submitted after certain named plaintiffs purchased their Class Vehicles, plaintiffs have included enough information in the complaint to survive defendant's motion to dismiss. Likewise, plaintiffs have alleged sufficient facts to overcome defendant's statute-specific challenges. Plaintiffs include short and plain statements as to their reliance on defendant's misrepresentations or omissions, the causal relationship between this reliance and their injury, and the propriety of the claims raised. The facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft*, 556 U.S. at 678. Further, issues such as reliance, causation, and compliance with limitations periods are inherently fact-specific and do not lend themselves to resolution on a motion to dismiss.

### VI. Request for Injunctive Relief

Finally, defendant contends that plaintiffs' request for injunctive relief should be dismissed. In the complaint, plaintiffs seek an order

> enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling Defendant to issue a voluntary recall for the Class Vehicles . . . ; compelling Defendant to remove, repair, and/or replace the Class Vehicles' defective wheels with suitable alternative product(s) that do not contain the defects alleged herein; enjoining Defendant from selling the Class Vehicles with the misleading information; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed[.]

*Id*. ¶ 176(c).

Defendant argues that this claim for relief should be dismissed for two reasons. "First, Plaintiffs have an adequate remedy at law because their claimed injuries are redressable by a damages award. Second, Plaintiffs lack standing to seek prospective injunctive relief because they have not alleged that they are likely to be harmed by GM's alleged conduct in the future." Def.'s Br. at 50 (citation omitted). In response, plaintiffs argue that they seek injunctive relief under the California, Michigan, and Ohio consumer protection statutes "as explicitly permitted by those statutes," and that they meet the threshold for Article III standing as to the requested relief because there is "a sufficient likelihood" that they "will again be wronged in a similar way." Pls.' Resp. Br. at 49 (emphasis omitted).

At this early stage in the litigation, the Court concludes that defendant's instant challenge regarding remedies is premature. Defendant is free to raise the issue of injunctive relief if plaintiffs prevail on the merits.

**VII. Conclusion**

For the reasons stated above,

IT IS ORDERED that defendant's motion to dismiss is granted in part and denied in part as follows: Defendant's motion is granted as to plaintiffs' unjust enrichment claim. Defendant's motion is denied as to (1) plaintiffs' MMWA claims; (2) plaintiffs' express warranty claims; (3) plaintiffs' implied warranty claims, (4) plaintiffs' consumer protection claims, and (5) plaintiffs' request for injunctive relief.

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
Dated: May 19, 2021                    SENIOR UNITED STATES DISTRICT JUDGE
       Detroit, Michigan