UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH BOSSART, et al., individually and
on behalf of all others similarly situated,

    Plaintiffs,                                               Civil Action No. 20-CV-11057

vs.                                                               HON. BERNARD A. FRIEDMAN

GENERAL MOTORS LLC,

    Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND STAYING PLAINTIFF DERROL TURNER'S CLAIMS**

This matter is presently before the Court on defendant's motion to compel arbitration of plaintiff Derrol Turner's claims. (ECF No. 59). Defendant further requests that these claims be stayed pending arbitration. (*Id*., PageID.2276). Plaintiff Turner has responded to the motion (ECF No. 60) and defendant has replied (ECF No. 62). Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing. For the following reasons, the Court shall grant the motion and stay Turner's claims pending arbitration.

**I.**     **Background**

This is a consumer class action filed on behalf of a prospective class consisting of persons across the country who "purchased or leased any 2015 to 2019 Chevrolet Corvette Z06 or 2017 to 2019 Chevrolet Corvette Grand Sport ('Class Vehicles') designed, manufactured, marketed, distributed, sold, warranted, and/or serviced by General Motors LLC ('GM' or '[d]efendant')." (ECF No. 18, PageID.206-07, ¶ 1). Plaintiffs allege that, due to a wheel defect, Class Vehicle rims "are not strong enough and crack and deform under normal driving conditions." (*Id*., PageID.207, ¶ 5). Plaintiffs further allege that this defect can "cause the rim

to lose strength and become vulnerable to failure under loading conditions such as braking." (*Id.*, PageID.208, ¶ 6). Plaintiffs contend that although it knew of this defect, GM "actively concealed [its] existence" and "is systematically denying [warranty] coverage," forcing plaintiffs to "pay[] thousands of dollars out-of-pocket to repair, and if they purchase the replacements from GM, to replace the wheels with equally defective wheels." (*Id.*, PageID.209-10, ¶¶ 11-13).

The amended class action complaint names eighteen plaintiffs, proposes a nationwide class and thirteen statewide subclasses, and raises forty claims under both federal and state law. (*Id.*, PageID.267, ¶ 199). The claims fall within one of four categories: (1) unjust enrichment, (2) breach of express warranty, (3) breach of implied warranty, and (4) violation of consumer protection law. *Bossart v. Gen. Motors LLC*, No. 20-CV-11057, 2021 WL 5278191, at *3 (E.D. Mich. May 19, 2021).

On October 26, 2020, defendant filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (ECF No. 20). In a May 19, 2021, opinion and order, the Court denied defendant's motion as to all but plaintiffs' unjust enrichment claim (Count III). *Bossart*, 2021 WL 5278191, at *12.

II. **Defendant's Motion to Compel Arbitration**

In the instant motion, defendant seeks to compel the arbitration of plaintiff Derrol Turner's claims. Turner purchased his Class Vehicle in South Carolina in 2016. (ECF No. 18, PageID.236, ¶¶ 139-40). He asserts that he "seeks to hold GM liable for breach of GM's new vehicle limited warranty, implied warranties of merchantability, and fraudulent business practices." (ECF No. 60, PageID.2305). Defendant states that on May 16, 2022, pursuant to a

2

discovery request, plaintiff produced a copy of the purchase agreement for his Class Vehicle. (ECF No. 59, PageID.2266). Defendant notes that this "document shows that Plaintiff signed a contract on October 17, 2016 for the purchase of a new Chevrolet Corvette Grand Sport, which was sold to Plaintiff by Crews Chevrolet, an authorized GM dealer." (*Id*.). Defendant contends that this contract contains an arbitration provision that covers plaintiffs claims in this case – i.e., claims regarding the "purchase, lease, or condition of the vehicle." (*Id*., PageID.2266-67) (quoting ECF No. 59-1 (Purchase Agreement), PageID.1180). Although defendant concedes that it is not a signatory to the purchase agreement or arbitration provision, GM argues that it is entitled to enforce the agreement under the principle of equitable estoppel because "[i]f Plaintiff had not entered into the agreement to purchase his vehicle, he would have no claims against GM." (*Id*., PageID.2274-75). Moreover, defendant contends, plaintiff's purchase agreement "expressly delegates questions of the enforceability and scope of the arbitration provision to the arbitrator[,]" thereby precluding the Court from resolving any threshold question regarding arbitrability. (*Id*., PageID.2270-71) (citing ECF No. 59-1 (Purchase Agreement), PageID.1180). Finally, defendant requests that the Court stay plaintiff's claims pending arbitration, as required under the Federal Arbitration Act ("FAA"). (*Id*., PageID.2276).

In response, plaintiff contends that, "[a]s stated in the plain language of the arbitration agreement, that agreement was between only Mr. Turner and Crews Chevrolet for any claims that might arise between Mr. Turner and Crews Chevrolet. GM is neither a party to that agreement, nor an intended third-party beneficiary." (ECF No. 60, PageID.2302). Plaintiff highlights the following text contained within the agreement:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this

3

> Arbitration Agreement, and the arbitrability of the claim or dispute), ***between you and us*** or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase, lease or condition of the vehicle, any retail installment sale contract or lease agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign [your] purchase, lease agreement or financing contract) shall, at ***your or our election***, be resolved by neutral, binding arbitration and not by a court action.

(*Id*., PageID.2305) (emphasis in original, quoting ECF No. 59-1 (Purchase Agreement), PageID.1180).  Plaintiff asserts that under the terms of the agreement, arbitrable disputes include *only* those between plaintiff and Crews Chevrolet and *only* plaintiff and Crews Chevrolet – not GM – may elect to pursue arbitration of those disputes. (*Id*., PageID.2303-04). Further, plaintiff argues, under South Carolina law, defendant has no ability to equitably compel arbitration in this case, as

> Plaintiff Turner does not rely on any terms of the Contracts with Crews Chevrolet in asserting his claims against GM, his claims against GM are not intimately founded and intertwined with the Contracts, . . .  Plaintiff does not allege substantially interdependent misconduct between GM and Crews Chevrolet[,] . . . [and] there is no injustice in requiring GM to defend itself in this Court against [his] claims.

(*Id*., PageID.2317) (internal quotation marks omitted).[1]

---

[1] In a footnote, plaintiff adds that "'a party may waive its right to compel arbitration if a substantial length of time transpired between the commencement of the action and the commencement of the motion to compel arbitration' and in the interim 'took advantage of the judicial system by engaging in discovery,' as GM has done here." (ECF No. 60, PageID.2313 n.2) (quoting *Rhodes v. Benson Chrysler-Plymouth, Inc.*, 647 S.E.2d 249, 251 (S.C. Ct. App. 2007)). Plaintiff does not, however, refute defendant's assertion that it only recently received plaintiff's purchase agreement through discovery.  Under the circumstances, the Court does not believe that defendant unnecessarily delayed or "too long postpone[d its] invocation of [its] contractual right to arbitration." *United States ex rel. Dorsa v. Miraca Life Scis., Inc.*, 33 F.4th 352, 358 (6th Cir. 2022).  Therefore, defendant has not waived its ability to compel arbitration in this case. *See id*.

### III. Legal Standard

"The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "The [Act] . . . places arbitration agreements on equal footing with other contracts and requires courts to enforce them according to their terms." *Id*. at 67-68 (citations omitted).

"When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). "Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Id*. The Sixth Circuit has also stated:

> When considering a motion to stay proceedings and compel arbitration under the [FAA], a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Id*.

The Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68-69. "Such an agreement, commonly known as a delegation clause, requires clear and unmistakable evidence that the parties agreed to have an arbitrator decide arbitrability." *Swiger v. Rosette*, 989 F.3d

501, 505 (6th Cir. 2021) (internal quotation marks and citations omitted). "A valid delegation clause precludes courts from resolving any threshold arbitrability disputes, even those that appear wholly groundless." *Id*. (internal quotation marks and citations omitted).

> However, as the Sixth Circuit has also explained:
>
> Attacking a delegation provision as invalid turns the question away from arbitrability of gateway issues to the validity of an arbitrator's authority to arbitrate arbitrability. It is circular to permit the arbitrator to address the validity of the arbitrator's authority to arbitrate arbitrability. If the validity of a delegation provision is challenged in response to a motion to compel arbitration, then the court, rather than the arbitrator, must address those challenges.

*Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022). "[I]n order to appropriately challenge the validity of a delegation clause, a party must [....] show that the delegation clause is itself unenforceable under some general principle of contract law, such as fraud, duress, or unconscionability." *Cunningham v. Ford Motor Co.*, No. 21-CV-10781, 2022 WL 2819115, at *6 (E.D. Mich. July 19, 2022). Moreover, the enforceability of a delegation clause must be challenged "specifically." *Becker*, 39 F.4th at 356. The Sixth Circuit has stated:

> That test is hard to meet . . . . Under this circuit's precedent, to prevail in [plaintiff's] position, a party must "show that the basis of their challenge is directed specifically to the delegation provision." *In re StockX Customer Data Sec. Breach Litiga.*, 19 F.4th 873, 886 (6th Cir. 2021) (cleaned up). A party fails to make this showing if its challenge to a delegation clause "simply recycle[s] the same arguments that pertain to the enforceability of the agreement as a whole." *Id*. Thus, a party's challenge to a delegation clause must rest, in part, on different factual or legal grounds than the ones supporting its challenge to the arbitration agreement as a whole.

*Id*. "Only a specific challenge to a delegation clause brings arbitrability issues back within the court's province." *Swiger*, 989 F.3d at 505.

IV.     Analysis

In the present case, plaintiff contends that because defendant is not a party to or an intended beneficiary of the purchase agreement, it cannot enforce the arbitration provision or delegation clause therein.  Faced with the very same question regarding a non-signatory's ability to enforce an arbitration agreement, the Sixth circuit recently noted that it

> presents a logical conundrum because [e]ven with a delegation clause, courts must determine whether a contract exists at all, and [i]f the nonsignatories are not parties to the contract, then the Plaintiff has no agreement with them.  But [w]hether a nonsignatory can enforce the arbitration agreement is a question of the enforceability of the arbitration clause, as to that defendant.

*Id.* at 507 (internal quotation marks and citations omitted).  As in *Swiger*, the question before this Court is narrow:  "It's not about the *merits* of the case.  It's not even about *whether* the parties have to arbitrate the merits.  Instead, it's about *who should decide* whether the parties have to arbitrate the merits."  *Id*. (emphasis in original).  The Sixth Circuit has concluded that when an arbitration agreement contains a valid delegation clause, "whether a [a non-signatory] can enforce [an] arbitration agreement . . . presents a question of arbitrability" for the arbitrator. *Id*. (compiling cases).

Plaintiff attempts to distinguish the present case from *Swiger* by noting that the plaintiff in *Swiger* "fail[ed] to specifically challenge the [relevant] delegation clause," thereby limiting the Sixth Circuit's analysis in that case.  (ECF No. 60, PageID.2309 n.1).  However, here too, plaintiff's arguments do not address the validity of the delegation clause, nor are they distinct from his challenges to the arbitration agreement as a whole.  Rather, he simply contends that, "Plaintiff Turner and GM never agreed to arbitrate this dispute nor did they agree to delegate threshold questions of arbitrability to an arbitrator" – i.e., because GM is a non-party,

it cannot compel arbitration of these claims. (*Id.*, PageID.2306). However, as another judge in this district recently explained:

> *Swiger* makes clear that under these circumstances – *i.e.*, where a plaintiff has signed a contract with an arbitration provision and a delegation clause and where a non-party to the contract seeks to compel the plaintiff to arbitrate claims that bear some relation to the contract – the question is not whether the plaintiff specifically intended that the non-party could enforce the delegation clause. Rather, the sole question is whether the delegation clause clearly and unmistakably delegates questions of arbitrability to the arbitrator.

*Cunningham*, 2022 WL 2819115, at *6. *See also Becker*, 39 F.4th at 356 ("Although [plaintiff] challenges the 'existence' of any agreement—either an arbitration agreement or a delegation provision—between himself and [defendant], the question '[w]hether a non-signatory can enforce [an] arbitration agreement is a question of the *enforceability* of the arbitration clause, as to that defendant.'") (emphasis in original, quoting *Swiger*, 989 F.3d at 507).

The delegation clause in this case states in relevant part: "Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Agreement, and the arbitrability of the claim or dispute) . . . shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action." (ECF No 59-1 (Purchase Agreement), PageID.2280). This clause clearly and unmistakably delegates questions of arbitrability to the arbitrator. The arbitrator must therefore "decide whether [plaintiff Turner's] claims against [GM] are subject to arbitration even though [GM] is not a party to the [purchase agreement]." *Cunningham*, 2022 WL 2819115, at *6 (citing *Swiger*, 989 F.3d at 507). Accordingly,

8

IT IS ORDERED that defendant's motion to compel arbitration of plaintiff Derrol Turner's claims (ECF No. 59) is granted.

IT IS FURTHER ORDERED that Turner's claims are stayed pending arbitration pursuant to 9 U.S.C. § 3.

IT IS FURTHER ORDERED that the arbitrator shall issue an opinion regarding Turner's claims within six months of the date of this order. The parties shall notify the Court promptly thereafter.

                                                  s/Bernard A. Friedman
                                                  BERNARD A. FRIEDMAN
Dated:  August 19, 2022              SENIOR UNITED STATES DISTRICT JUDGE
          Detroit, Michigan